IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  15-cr-00149-RM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. RAUL CARAVEO,
2. PAMILA LUCERO,
3. SABRINA CARAVEO,
4. EUGENE CHAVEZ**,**
5. CAROLINA ARAGON,
6. **CRISTINA PORTILLOS,**
7. CONRAD ARCHULETA, and
8. NANCY GUZMAN,

    Defendants.

## GOVERNMENT'S *JAMES* PROFFER

    The United States of America (the government), by Martha A. Paluch, and Bryan D. Fields, Assistant United States Attorneys, submits this *James* proffer in response to Defendant Cristina Portillos's (defendant) *James* motion, Doc. 268.

    1.    In its Response to Defendant Portillos's Motion for James Hearing, doc. 297, the government proposed filing this *James* proffer, allowing the defendant to file written challenges to the government's evidence of the conspiracy's existence and to particular statements contained in the log, and after review of these pleadings, having the Court determine whether a ruling on the admissibility of the proposed Rule 801(d)(2)(E) statements could be made without a hearing.  On February 16, 2016, the Court agreed with this proposed procedure and ordered that the government file its

*James* proffer by February 26, 2016.

2.     The government notes that it may attempt to offer at trial additional statements, not currently in the government's possession or of which the government is not currently aware, which may be discovered in the course of trial preparation. If such statements are discovered pre-trial, the government will request leave to file a supplemental list of additional out-of-court statements it intends to offer at trial.

**I.     THE LAW CONCERNING RULE 801(d)(2)(E)**

3.     According to the Federal Rules of Evidence, "[a] statement is not hearsay if [it] is offered against a party and is . . . a statement by a coconspirator of a party during the course of and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Statements are admissible pursuant to Rule 801(d)(2)(E) if a court finds, by a preponderance of the evidence, three things: (1) that a conspiracy existed; (2) that the declarant and the defendants against whom the statement is offered were members of the conspiracy; and (3) that the statement was made in the course of and in furtherance of the conspiracy. *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996); *United States v. Burnell*, 336 F. App'x 775, 777 (10th Cir. 2009) (unpublished) (citing *United States v. Sinclair*, 109 F.3d 1527, 1533 (10th Cir. 1997)).[1]

4.     In making these determinations, a court is not bound by the Rules of Evidence. *See* Fed. R. Evid. 104(a), 1101(d)(1). "[T]he district court has the discretion to consider any evidence, not subject to a privilege, including both the alleged co-conspirator statements and any other hearsay evidence, whether or not that evidence

---

[1] Although the cases discussed in this pleading addressed conspiracies charged under statutes other than the conspiracy statute charged here – Title 18, United States Code, Section 1349 – their analyses of Rule 801(d)(2)(E) issues should be fully applicable here.

would be admissible at trial." *United States v. Owens*, 70 F.3d 1118, 1124 (10th Cir. 1995).

     5.     To determine the first factor, whether a conspiracy existed, a court may consider the hearsay statement itself along with independent factors tending to establish the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 181 (1987); *United States v. Hernandez*, 829 F.2d 988, 995 (10th Cir. 1987). The government is not required to show that a formal or explicit agreement existed, *United States v. Arutunoff*, 1 F.3d 1112, 1116 (10th Cir. 1993), but it must provide evidence of four things: (1) an agreement between two or more people to break the law; (2) knowledge by those people of the essential objectives of the conspiracy; (3) knowing and voluntary participation in the conspiracy; and (4) interdependence among the conspirators, *United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007). The element of illegality of the conspiracy's purpose need not be demonstrated by independent evidence but may be proven by the conspirators' own statements. *United States v. Bucaro*, 801 F.2d 1230, 1232 (10th Cir. 1986).

     6.     To determine the second factor, the connection of the declarant and the defendants to the conspiracy, a court may presume that a defendant is a knowing participant in a conspiracy when she acts in furtherance of the conspiracy's objective. *See United States v. Tranakos*, 911 F.2d 1422, 1430 (10th Cir. 1990); *United States v. Savaiano*, 843 F.2d 1280, 1294 (10th Cir. 1988). Only "slight evidence" is needed to make this determination. *United States v. Medoza-Salgado*, 964 F.2d 993, 1006 (10th Cir. 1992).

     7.     Once a defendant joins a conspiracy, statements made by coconspirators

even before the defendant joined are admissible against that defendant. *United States v. Brown*, 943 F.2d 1246, 1255 (10th Cir. 1991). The government is not required to prove that a conspirator knows all other conspirators, *United States v. Evans*, 970 F.2d 663, 669-70 (10th Cir. 1992), nor that a conspirator knew of or participated in every aspect of the conspiracy, *United States v. Eads*, 191 F.3d 1206, 1210 (10th Cir. 1999). A coconspirator statement is also admissible even if the declarant is uncharged, *Champagne Metals v. Ken Mac Metals, Inc.*, 458 F.3d 1073, 1081 n.5 (10th Cir. 2006); *United States v. Durland*, 575 F.2d 1306, 1308 (10th Cir. 1978), or if it was made outside the presence of the defendant(s) against whom it is being offered. *United States v. Cotton*, 646 F.2d 430, 433 (10th Cir. 1981).

8.   In determining the third factor, that the statement was made during the course of and in furtherance of the conspiracy, several rules apply. First, the focus is on whether the declarant's intent in making the statement was to advance the conspiracy, not whether the statement actually advanced the conspiracy. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc). To determine this, the court must examine the nature of the statement and its context. *Id.* at 1579. Second, there is no requirement that the statement be made by one conspirator to another. *United States v. Williamson*, 53 F.3d 1500, 1519 (10th Cir. 1995); *United States v. LeRoy*, 944 F.2d 787, 789 (10th Cir. 1991); *United States v. Falls*, 90 F. App'x 351, 356 (10th Cir. 2004) (unpublished). Statements made to a government agent, for example, are admissible if they were made to further the conspiracy. *Williamson*, 53 F.3d at 1519; *LeRoy*, 944 F.2d at 789. Third, a statement may be admissible, even if subject to alternative interpretation, if a reasonable interpretation of the statement is consistent with an intent

to promote the conspiracy.  *United States v. Lampley*, 127 F.3d 1231, 1244 (10th Cir. 1997); *Garlington v. O'Leary*, 879 F.2d 277, 286 (7th Cir. 1989).  Examples of statements made in furtherance of a conspiracy include but are not limited to:

    a.    Statements which in any way promote the objective(s) of a conspiracy.  *United States v. Rutland,* 705 F.3d 1238, 1252 (10th Cir. 2013); *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (citing *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986));

    b.    Statements which reveal the existence of a conspiracy.  *United States v. Garcia*, 994 F.2d 1499, 1505 (10th Cir. 1993); *United States v. Mayberry*, 896 F.2d 1117, 1121 (8th Cir. 1990);

    c.    Statements to new or prospective members of a conspiracy which explain the conspiracy.  *United States v. Turner*, 871 F.2d 1574, 1581 (11th Cir. 1989); *United States v. Monroe*, 866 F.2d 1357, 1363 (11th Cir. 1989);

    d.    Statements which are intended to recruit potential coconspirators or to otherwise induce others to assist in carrying out the objectives of the conspiracy.  *Perez*, 989 F.2d at 1578; *United States v. Lujan*, 936 F.2d 406, 411 (9th Cir. 1991); *United States v. Heinemann*, 801 F.2d 86, 95 (2d Cir. 1986);

    e.    Statements which identify a conspirator or the role of a conspirator.  *Rutland*, 705 F.3d at 1252; Townley, 472 F.3d at 1273 (citing *United States v. Handy*, 668 F.2d 407, 408 (8th Cir.1982)); *Williamson*, 53 F.3d at 1519;

    f.    Statements which explain important events in the conspiracy.  *Rutland*, 705 F.3d at 1252; *Townley*, 472 F.3d at 1273 (citing *United States v. Smith*, 833 F.2d 213, 219 (10th Cir.1987));

    g. Statements which are designed to give directions to facilitate the objectives of the conspiracy. *United States v. Massa*, 740 F.2d 629, 638 (8th Cir. 1984), *alternative holding abrogated on other grounds*, *United States v. Inadi*, 475 U.S. 387, 391 (1986)); *United States v. Baines*, 486 F. Supp. 2d 1288, 1297 (D. New Mexico 2007);

    h. Statements which are designed to advise coconspirators of the progress of the conspiracy and keep them abreast of activities associated with the conspiracy. *Townley*, 472 F.3d at 1273 (citing *United States v. Gomez*, 810 F.2d 947, 953 (10th Cir. 1987)); *Smith*, 833 F.2d at 219; *Perez*, 989 F.2d at 1578;

    i. Statements which are intended to assure the listener of a conspirator's ability to consummate a particular transaction. *Rutland*, 705 F.3d at 1252; *United States v. Echeverry*, 759 F.2d 1451, 1457 (9th Cir. 1985);

    j. Statements which are designed to gain the trust of other conspirators or potential conspirators, to reassure trustworthiness, or to allay suspicions or fears. *Townley*, 472 F.3d at 1273; *Williamson*, 53 F.3d at 1520; *Gomez*, 810 F.2d at 953;

    k. Statements which are intended to control damage to the conspiracy. *United States v. Doerr*, 886 F.2d 944, 951 (7th Cir. 1989); *United States v. Van Daal Wyk*, 840 F.2d 494, 499 (7th Cir. 1988); *United States v. Griggs*, No. 08-cr-00365-MSK, 2012 WL 628595, at *5 (D. Colo. Feb. 27, 2012);

    l. Statements which prompt the listener to respond in a way that facilitates carrying out the activities of the conspiracy. *Perez*, 989 F.2d at 1578; *United States v. Rahme*, 813 F.2d 31, 35 (2d Cir. 1987);

      m.    Statements which conceal the objective of the conspiracy. *Rutland*, 705 F.3d at 1252-53; *Doerr*, 886 F.2d at 951;

      n.    Statements which are intended to enhance a coconspirator's usefulness to the conspiracy. *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988);

      o.    Statements which set in motion acts that are an integral part of the conspiracy. *United States v. Paris*, 827 F.2d 395, 400 (9th Cir. 1987); and

      p.    Statements which constitute "puffing," *United States v. Krevsky*, 741 F.2d 1090, 1095 (8th Cir. 1984), or "boasting," *United States v. Johnson*, 872 F.2d 612, 615 (5th Cir. 1989); *United States v. Santiago*, 837 F.2d 1545, 1549 (11th Cir. 1988), in promotion of the conspiracy.

Although not all of these examples may have relevance to this case, the size of this list is illustrative of the broad interpretation given to statements in furtherance of a conspiracy.

    9.    If the Court finds that any of the people identified as conspirators in this proffer were not knowing participants in the conspiracy, those people should be considered agents of the conspirators. As agents, their statements and acts are admissible against all knowing participants in the conspiracy or scheme. *United States v. Krohn*, 573 F.2d 1382, 1386-87 (10th Cir. 1978).

## II.    PROFFERED EVIDENCE CONCERNING THE CONSPIRACY

    10.    The evidence described below will demonstrate that the conspiracy charged in Count 1 of the Superseding Indictment began in or around April 2008 and continued through in or about May 2014. The charged defendants were all members of

the conspiracy, but joined the conspiracy at different times.

11.     The sources of information relied upon for this proffer include 1) reports and transcripts of interviews of some of the defendants, and of witnesses ("INT"), 2) tax returns sent by some of the defendants to the IRS, 3) audio of telephone calls recorded by the Department of Corrections ("DOC") that occurred between incarcerated co-defendants Raul Caraveo, Eugene Chavez, Conrad Archuleta and the remaining defendants, and the transcripts of certain of these calls, 4) JPay records pertaining to deposits made in incarcerated co-defendants Raul Caraveo, Eugene Chavez, Conrad Archuleta's prison accounts, and 5) phone records.  Although this proffer describes the majority of the significant aspects of and acts associated with the conspiracy, it does not purport to describe every aspect of the conspiracy or every act taken in furtherance of it.

### A.     Overview of the Conspiracy to File False Claims for Refund

12.     The members of the conspiracy worked together and assisted each other at different times during the course of the conspiracy in the filing of false claims for refund submitted to the IRS for tax years 2005 through 2013.  This conspiracy was carried out in the following manner:

a.     Colorado DOC inmate Raul Caraveo, the defendant's co-conspirator, obtained the identifying information of fellow inmates and inmates' relatives to include names, dates of birth, and social security numbers.  Caraveo and fellow DOC inmate and co-conspirator Eugene Chavez used this information to generate false Form 1040A tax returns, listing the names of inmates and their relatives as either the primary tax payer or as a dependent of that alleged tax payer, and entering false wage and income information on the Forms 1040A.  Co-conspirator Conrad Archuleta, who was

also a DOC inmate, recruited his wife, Nancy Guzman, into the conspiracy to provide assistance from outside of prison.

      b.    The conspirators submitted to the IRS Form 1040A tax returns for the years 2005 through 2013 with similar characteristics, such as requesting refunds generated by the Earned Income Tax Credit, requesting paper refund checks mailed to approximately a dozen addresses, and claiming wages between approximately $7,300 and $8,950.

      c.    At different times in the scheme, Pamila Lucero, Sabrina Caraveo, and Carolina Aragon mailed blank copies of Form 1040A returns to co-conspirator Raul Caraveo and other inmates for use in the scheme.

      d.    In most instances, Raul Caraveo and Eugene Chavez would fill out the Form 1040A returns and mail them from prison to Pamila Lucero, Sabrina Caraveo, or Carolina Aragon. At other times, Raul Caraveo, Eugene Chavez, and other inmates would provide missing information for the returns over the phone or by mail to Pamila Lucero, Sabrina Caraveo, or Carolina Aragon, and direct them to add that information to the returns. Pamila Lucero, Sabrina Caraveo, or Carolina Aragon would mail the returns to the IRS Service Center for processing.

      e.    The defendant and Pamila Lucero, Sabrina Caraveo, Carolina Aragon, and Nancy Guzman provided addresses for receipt of the refund checks. Some co-conspirators used their own addresses and some co-conspirators obtained addresses to be used for receipt of the refund checks from individuals who the conspirators believed could be trusted to notify a conspirator when a refund check arrived at the individual's address.

    f. The defendant agreed to participate in the conspiracy by allowing her address to be listed on numerous false Form 1040A returns submitted to the IRS and by receiving numerous refund checks at her address, which checks were later cashed by co-coconspirator Pamila Lucero.

    g. Conrad Archuleta asked his wife and co-conspirator Nancy Guzman to receive refund checks at her home address in Pueblo, Colorado.  Nancy Guzman agreed, and then received instructions from Conrad Archuleta, Sabrina Caraveo and Pamila Lucero as to how the scheme worked.  Conrad Archuleta also relayed information from Raul Caraveo and Eugene Chavez to Nancy Guzman about the scheme.

    h. To prevent discovery of the conspiracy, Raul Caraveo used code words when he talked to his co-conspirators during DOC telephone calls he knew would be recorded.  For example, Caraveo referred to tax returns as "pictures," "flicks," and "postcards," added the area code 719 to the beginning of social security numbers to make it appear as though these numbers were telephone numbers, and referred to the refund amounts listed on the returns as "extensions."

    i. Raul Caraveo and at times Eugene Chavez prepared false power of attorney forms that they mailed to Sabrina Caraveo, Pamila Lucero, or Nancy Guzman for use in cashing the refund checks made out to inmates and their relatives.

    j. Once the refund checks were cashed by Pamila Lucero, Sabrina Caraveo, Carolina Aragon, or Nancy Guzman, Raul Caraveo or another co-conspirator instructed these women on how to divide the money.  The money was primarily divided between Raul Caraveo, Eugene Chavez, Pamila Lucero, Sabrina Caraveo, and

Carolina Aragon.

   k. Pamila Lucero, Sabrina Caraveo, Carolina Aragon, and Nancy Guzman deposited money at different times into the prison accounts held by one or more of the following:  Raul Caraveo, Eugene Chavez, Conrad Archuleta, or other inmates.

  13. As to the defendant's participation in this conspiracy, the Supreme Court in *Bourjaily* held that "there is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy."  483 U.S. at 180.  Indeed, only "slight evidence" is required to connect the defendant and the declarant to the conspiracy.  *See, e.g., Medoza-Salgado*, 964 F.2d at 1006.  Evidence of the defendant's connection to the conspiracy includes, but is not limited to, the following:

   a. Thirty-six false tax returns were submitted to the IRS listing the defendant's 1044 Baltic Street address as the address for an inmate implicated in this conspiracy.  Nine refund checks[2] were mailed to the defendant's address.  All nine of these checks were cashed by Pamila Lucero.  Lucero's phone records confirm communication between Lucero and the defendant close in time to the cashing of eight of the nine refund checks.

   b. In her statement to IRS Special Agent Tony Romero, the defendant stated she had been friends with Lucero since high school, and was "the only person who was allowed to go with her [Lucero] to have visitation with her son" in Delta, Colorado.  Doc. 201, Ex. C (Portillos Interview) at INT_00001341 to INT_00001342.

---

[2]  Five more refunds in the form of non-IRS offsets were generated from false returns listing the defendant's address.

    c. On July 31, 2010, the defendant traveled with Lucero to Delta for visitation with Lucero's son.  During the trip, Caraveo called Lucero's cell phone.  Lucero told Caraveo that the defendant was in the car.  Caraveo then told Lucero to tell the defendant "she's been a good worker so I'm gonna give her a little bonus."  DOC_00000581 (Discovery Disk #3, call on 7/31/10 at 1:06 p.m.).  Lucero relayed the message to the defendant who responded, "I like bonuses."  *Id.*  Caraveo then directed Lucero to pay the defendant $250.  *Id.*

    d. On August 6, 2010, Caraveo called Lucero while Lucero was with the defendant.  Caraveo asked Lucero if anything had arrived at "Christie's."  Lucero responded:  "Yeah, we got letters for that crazy name."  Caraveo then sought confirmation that they were talking about the same false return, asking "Epafine (phonetic)," to which Lucero answered, "Yup."  DOC_00000581 (Discovery Disk #3, call on 8/6/10 at 2:17 p.m.).  Three returns for Epifanio Aragon were mailed to the IRS listing the defendant's Baltic Street address.  IRS_00001385, IRS_00001691, IRS_00001925.[3]  In this same call, Caraveo told Lucero to put the defendant on the phone.  Once the defendant was on the line, Caraveo expressed his gratitude for the defendant's participation in the conspiracy: "Finally get to say what's up to one of the motherfucking integral parts of the M-O-B."  DOC_00000581 (Discovery Disk #3, call on 8/6/10 at 2:17 p.m.).  M-O-B stands for Members of Blood, which was the code name Caraveo used to describe the tax fraud conspiracy.  DOC_00002801, DOC_00002195, and DOC_00000581 (Discovery Disc #2, call on 10/2/09, at 9:27pm).  After praising the defendant's role and confirming her status as a member of the M-O-B, Caraveo

---

[3] A total of 36 tax returns were submitted to the IRS listing the defendant's Baltic Street address, for an intended loss of $98,499.

12

explicitly thanked her: "Hey, thanks a lot for everything, alright?" DOC_00000581 (Discovery Disk #3, call on 8/6/10 at 2:17 p.m.). The defendant, aware now of her "integral" role and status, responded: "Oh, no. Yeah, I agree." *Id.* Caraveo then thanked the defendant again, which the defendant acknowledged with "Okay, thanks." *Id.* During additional recorded calls between Caraveo and Lucero, Lucero told Caraveo that the defendant was present while the tax fraud scheme was being discussed.

   e. Further evidence of the defendant's intentional participation in the conspiracy come from the defendant's interview with Agent Romero. During the interview, Agent Romero asked the defendant whether co-conspirator Lucero "ever mentioned the names Raul Caraveo, RC or Eugene Chavez." The defendant, aware that acknowledging her prior contact with Caraveo would link her to the conspiracy, deliberately withheld information about the previously described telephone contacts. Instead, the defendant told Agent Romero that "Eugene sounds familiar. I think she [Lucero] dated a Eugene." Doc. 201, Ex. C at INT_00001375. When Romero gave the defendant an opportunity to clarify by asking an even broader question — whether the defendant knew *anyone* in prison in 2010 — the defendant continued to dissemble, falsely telling Agent Romero, "No, my kid's dad is the only one I've ever known in prison and he's out." *Id.* at INT_00001352. *See United States v. Caldwell*, 560 F.3d 1214, 1220 (10th Cir. 2009) (noting that inference of guilty knowledge can be drawn from false exculpatory statements).

   f. The defendant's active, knowing, participation in the conspiracy is also confirmed by telephone calls between her co-conspirators after they became aware of the IRS's efforts to investigate their ongoing scheme. For example, Lucero told

13

Caraveo, during calls recorded in 2012 while the conspiracy was ongoing, that Lucero told her "girls" to say "nada nada" and "just say something was up with your mail or something." DOC_00000581 (Discovery Disk #5, calls on 11/2/12 at 5:47 p.m. and 11/9/12 at 4:52 p.m.). In her interview with Agent Romero, the defendant did just what Lucero asked her to do. In response to questions about the mail showing up at her Baltic street address, the defendant told Romero that she gets "a lot of IRS mail that isn't mine and I'm not sure why." Doc. 201, Ex. C at INT_00001345. *See United States v. Wolf*, 839 F.2d 1387, 1393, 394-95 (10th Cir. 1988) (finding no error in admission of statements of coconspirator that concealed the conspiracy while it was ongoing so that the conspirators could make continued efforts to achieve their objectives); *Mares v. United States*, 383 F.2d 805, 810 (10th Cir. 1967) (same).

### B. Description of Statements in Furtherance of the Conspiracy

14.     The chart attached to this proffer, entitled *James* Log, summarizes coconspirator statements made in furtherance of the conspiracy charged in Count 1 of the Superseding Indictment and described in this proffer. The letters following the 801(d)(2)(E) entries in the "Bases for Admission" column refer to the subparagraphs of paragraph 8 above, which identify purposes for which the coconspirator statements may be offered.

15.     The statements in the log highlighted in green ink represent the portions of the statements the government intends to admit pursuant to Rule 801(d)(2)(e). However, to provide context for many of these statements, government counsel included in the log entries statements which are not hearsay under the Rules of Evidence. For example, statements made by a defendant are not hearsay when offered

14

against her, Fed. R. Evid. 801(d)(2)(A).  If declarants testify (as is expected in the case of Sabrina Caraveo, Carolina Aragon, Conrad Archuleta, Nancy Guzman, and unindicted co-conspirator Melanie Palumbo), their prior statements may not be hearsay.  *See* Fed. R. Evid. 801(d)(1).  Other hearsay exceptions may also apply to the listed statements.  *See* Fed. R. Evid. 803.

16.     The government may offer some of these statements, or at least some portion of the statements, as verbal acts or directions rather than as assertions of fact. *See, e.g.*, DOC_00000581, Disk #2 (4/27/10 call from Caraveo to Lucero, at 3:05 of the call, Caraveo:  "Alright hey so uh…the B-M eight……uh you and then this to take care of that girl too right?"  "Well . . . Cristine or whatever….take seven"), and *id.* (6/28/10 call from Caraveo to Lucero, 11:27 of the call, Caraveo: "do that one to the home girl Cristy").  As such, these statements would not be covered by the hearsay rules.  *See* Fed. R. Evid. 801(a); *United States v. Jackson*, 88 F.3d 845, 847-48 (10th Cir. 1996).  Questions are also generally not hearsay because they are not intended as assertions. *Jackson*, 88 F.3d at 848.  *See, e.g.*, DOC_00000581, Disk #3 (8/15/10 call from Caraveo to Lucero, at 2:01 of the call, Caraveo:  "Okay, so what's Cristy's?"  Lucero: It's 1044 . . . Baltic Street . . . B-A-L-T-I-C and then 80903").  Finally, portions of some of the statements will be offered simply to prove that the statements were made, not to prove the truth of the matters asserted.  *See* Fed. R. Evid. 801(c); *see generally* John W. Strong, *McCormick on Evidence* § 249 (5th Ed., 2003 Supp).  *See, e.g.*, DOC_00000581, Disk #5 (11/2/12 call from Caraveo to Lucero, at 1:00 of the call, Lucero:  "they're asking if they knew anyone in prison . . . they haven't talked anything, they just left a . . . the card. Cristina hasn't got back").

Respectfully submitted this 23rd day of February, 2016.

                JOHN F. WALSH
                United States Attorney

                s/ Martha A. Paluch
                MARTHA A. PALUCH
                BRYAN D. FIELDS
                Assistant U.S. Attorneys
                1225 17th Street, Suite 700
                Denver, CO 80202
                Telephone 303-454-0100
                Facsimile 303-454-0402
                Martha.paluch@usdoj.gov
                Bryan.fields@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 23rd day of February, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Mr. Martin Stuart
Counsel for Raul Caraveo
mstuart@portmanstuart.com

Mr. John Schlie
Counsel for Pamila Lucero
johnhenry@schlielawfirm.com

Ms. Marci Gilligan
Counsel for Sabrina Caraveo
labranche@ridleylaw.com

Mr. Thomas Ward
Counsel for Eugene Chavez
tward@wardlawdenver.com

Mr. Robert Pepin
Counsel for Carolina Aragon
Robert_Pepin@fd.org

Mr. John Mosby
Counsel for Cristina Portillos
john_mosby@msn.com

Mr. David Owen, Jr.
Counsel for Conrad Archuleta
davidowen@lodopc.com

Mr. John Sullivan, III
Counsel for Nancy Guzman
jfslaw1@aol.com

s/ *Mariah Tracy*
Mariah Tracy
Legal Assistant
United States Attorney's Office
1225 17th Street, Suite 700
Denver, CO 80202
303 454-0100
Fax: 303 454-0402
Mariah.tracy@usdoj.gov