IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 15-cr-00149 - RM

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

6.  CRISTINA PORTILLOS,

        Defendants.

_____

**DEFENDANT PORTILLOS' RESPONSE
AND OBJECTIONS TO THE GOVERNMENT'S JAMES PROFFER**
_____

Comes now, Defendant Cristina Portillos, by and through her undersigned counsel, John Mosby, and respectfully submits her response and objections to the Government's James Proffer. (Docs 349 & 374).

*Standard for Rule 801 (d)(2)(E)*

To satisfy the requirements of Rule 801(d)(2)(E), in order to admit statement of co-conspirators, the Court must determine that; (1) a conspiracy existed; (ii) the declarant and defendant were both members of the conspiracy; and (iii) the statements were made in the course of and in furtherance of the conspiracy.  *U.S. v. Urena, 27 F.3d 1487, 1490 (10th Cir. 1994).*  The Government must demonstrate each of the above elements by a preponderance

of the evidence. *Bourjaily v. U.S. 483 U.S. 171, 175 (1987).* When making an 801 (d)(2)(E) determination, the Court must not only examine the statement, "the court must examine the nature of the statement and its contexts." *United States v. Perez*, 989 F.2d 1574, 1579 (10th Cir. 1993)(en banc).

Moreover, 801 (d)(2)(E) requires that a co-conspirator's statement must be "in furtherance" of the conspiracy. The Tenth Circuit has held, "[w]e applied the "in furtherance" test narrowly in *United States v. Wolf,* 839 F.2d 1387 (10th Cir.), *cert. denied,* 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988), when we held that statements are not in furtherance of the conspiracy if they are "mere narratives", that is '"statements relating to past events, even those connected with the operation of the conspiracy where the statement serves no immediate or future conspiratorial purpose. *Id.* at 1393'" U.S. v. Perez, 989 F.2d 1579 (10th Cir. 1993).

A conspiracy exists when: (1) the defendant agrees with another person to violate the law; (ii) the defendant knows of the essential objective of the conspiracy; (iii) the defendant knowingly and voluntarily participates in actions that further the conspiracy objective; and (iv) there is interdependence among the conspirators. *U.S. v. Edwards, 69 F.3d 419, 430 (10th Cir. 1995) Also,* United States v. Lopez–Gutierrez, *83 F.3d 1235 (10th Cir.1996).* When the government attempts to prove the existence of a conspiracy by circumstantial evidence, each

link in the inferential chain must be clearly proven. *United States v. Schorr,* 462 F.2d 953, 959 (5th Cir.1972).

The Tenth Circuit has stated that, we must, however, be mindful that guilt is still individual and personal in conspiracy cases - it is not a matter of mass application. *United States v. Watson, supra* at 1337 (citing United States v. Butler, *494 F.2d 1246, 1256 (10th Cir.1974)).*

It is not enough, however, for the government to show only " 'mere association' " with conspirators known to be involved in crime. *United States v. Dickey,* 736 F.2d 571, 585 (10th Cir.1984) (citation omitted), *cert. denied,* 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985)("Mere association with conspirators, even with knowledge of their involvement in crime, is insufficient to prove participation in their conspiracy.") *Id.*

## *Argument*

### *The Government has not established Defendant's membership in the conspiracy.*

Defendant makes a general objection that the Government has not established that Defendant was a member of the conspiracy.  The Government's evidence does not establish that Defendant ever agreed to violate the law or knew the essential objectives of the conspiracy.

The Government's facts in the Superseding Indictment state:

> "Cristina Portillos was paid for allowing her address to be used on numerous false Form 1040A returns submitted to the IRS, and received numerous refunds checks at her address which she forwarded on to Pamila Lucero." *Id., p. 4.*

The Government should be required to prove for 801(d)(2)(E) purposes the facts as alleged in the Superseding Indictment.

Defendant's membership in the conspiracy must be proven before Rule 801 (d)(2)(E) is satisfied. *U.S. v. Edwards, 69 F.3d 419, 430 (10th Cir. 1995).* To establish membership in the conspiracy, the Government alleges, inter alia, as follows;

> (f) The defendant agreed to participate in the conspiracy by allowing her address to be listed on numerous false Form 10400A returns submitted to the IRS and by receiving numerous refund checks at her address, which were later cashed by co-conspirator Pamila Lucero. (*Response, Doc. 349, p. 10).*

The Government has not established or presented evidence that Defendant knowingly entered any agreement to allow her address to be used in violation of the law. The Government has presented no evidence that Portillos was aware that tax refund checks came to her address or that Pamila Lucero cashed said checks. The Government's evidence does not establish that Defendant was a member of the conspiracy.

As independent evidence, the Government states that Lucero's "phone records, "confirm… communications between Lucero and the defendant close in

time to the cashing of eight of the nine refund checks." It is important to not that all the phone records establish is Portillos' association with Lucero. The phone records do confirm that Portillos was never present when Lucero cashed a tax refund check.

The Government offers inferential evidence of Portillos' membership in the conspiracy. When the government attempts to prove the existence of a conspiracy by circumstantial evidence, each link in the inferential chain must be clearly proven. *United States v. Schorr,* 462 F.2d 953, 959 (5th Cir.1972). The Government's evidence fails to establish the four elements of a conspiracy. United States v. Lopez–Gutierrez, *83 F.3d 1235 (10th Cir.1996).* Accordingly, because the Government has not established that Defendant's membership in the conspiracy, Defendant objects to all co-conspirators statements, unless stated otherwise in Exh A, attached hereto.

### *Portillos' Specific Objections to statements dated July 31, 2010 and statement dates August 6, 2010.*

Defendant specifically objects to the statements dated July 31, 2010 and August 6, 2010. The Government also attempts to use these statements to establish Portillos' membership in the conspiracy and Defendant requests that this Court considers the following in its determination of whether Defendant was a member of the conspiracy.

As will be discussed, infra, when these two statements are placed in context, the statements serve no immediate or future conspiratorial purpose and do not satisfy the requirements of Rule 801 (d)(2)(E).  See,  *United States v. Perez*, 989 F.2d 1574, 1579 (10th Cir. 1993)(en banc)( "the court must examine the nature of the statement and its contexts."

### Statements dated July 31, 2010 @1:06 PM & 9:15 PM

The Government proffers Raul Caraveo's July 31, 2010, statement made to Pamila Lucero regarding giving Defendant a bonus as evidence of Portillos connection to the conspiracy. *(Resp. at p. 12).* The Government takes this statement out of context.

On July 31, 2010, Portillos was driving, along with her children and Pamila Lucero, to Delta, Colorado.  Defendant had never spoken to Caraveo and there is no evidence she knew Caraveo.

Caraveo called Lucero on her cell phone during the trip. After Lucero tells Caraveo that Portillos is with her, he tells Lucero to "tell her [Portillos] to take a picture [of her tits] for me." (Exh. B, p. 2, l. 22) Lucero passes on Caraveo's request to Portillos, notwithstanding that Portillos' children are in the car.

During this conversation Caraveo discusses the bonus *twice* and both times tell Lucero to tell Portillos that she is going to get a little bonus. (Compare, Id., p. 3, l. 23 – p. 4, l. 10  & p. 7). The Government's proffer statement only

recounts the first time. The first time, Lucero doesn't immediately tell Portillos. Caraveo then elevates his voice, and says "Yeah, Tell her that. tell her." (id. P. 4, l. 2-3). Lucero then tells Portillos, "Raul said he's going to give you a bonus since you've been a good worker." The Government omits Portillos' response, which is, *"He's going to give me a what?" Lucero then repeats, "A bonus."* There is no reference by Lucero up to this point as to what the "bonus" is for or why Caraveo would be giving it to Portillos. Lucero then changes the conversation to discuss other things.

The second time Caraveo mentions the bonus, he tells Lucero to "just slide Christina there 250." (id. P. 7, l. 2) Again, Caraveo directs Lucero to "Tell her that's her little bonus on GP just for, you know, helping us out and shit." (Id., p. 7, l. 4-5). This second time Caraveo tell Lucero to tell Portillos what the bonus is for Lucero adroitly and intentionally changes the subject. Lucero never tells Portillos about the 250 and more importantly does not tell Portillos that Caraveo says that the "bonus" is for *"helping us out and shit." (Emphasis added).* There is no evidence, as the Government alleges, that Portillos ever knows what the bonus is for, how much it is or that it has anything to do with the tax fraud scheme.

When placed in context, The July 31, 2010, statement regarding a "bonus" does not establish Portillos' connection to the conspiracy. Lucero did not repeat or pass on Caraveo statement to Portillos the second time when he mentioned the purpose of the bonus.

There is no evidence that Portillos knew that the statement was related to the conspiracy. The statement serves no immediate or future conspiratorial purpose. When placed in context, this statement is not in furtherance of the conspiracy and does not satisfy the requirements of 801 (d)(2)(E).

### Statement dated August 6, 2010

The Government proffer a statement made on August 6, 2010. Caraveo speaks to Portillos for the first time on Pamila Lucero's cell phone. (Resp. p. 12 "d"). Again, the Government has not placed this statement in its proper context.

On August 6, 2010, Lucero is again with Portillos. Caraveo calls Lucero on her cell phone. Caraveo tells Lucero to hand the phone to Portillos. Without any formal introduction, Caraveo's first words are; "Finally get to say what's up to one of the motherfucking integral part of the M-O-B."

The Government asserts that this statement again proves Portillos connection to the conspiracy, because it alleges that Caraveo is thanking her for her involvement in the scheme. However, when the nature of the statement is understood and it is place in context, this statement has nothing to do with the conspiracy.

In order to place this statement in context, one must refer to an earlier taped conversation between Lucero and Caraveo. On July 23, 2010, Caraveo called Lucero. They discussed Lucero's personal relationship with Eugene Chavez. Chavez is a co-conspirator and he and Caraveo were prison inmates together at

that time. (Exh. C, p. 1-4)

Caraveo had introduced Lucero to Chavez. He told her she should start a personal phone relationship with Chavez. Lucero tell Caraveo she is upset because Chavez did not call her the previous day. To console Lucero, Caraveo states, "… he loves you on a different level. He felt, like romantically and shit." (Exh. C, p. 4, l. 23-25).

It is during this conversation, that Lucero informed Caraveo that "Aunt (sic) Christina and the kids are going" to Delta with me on July 31, 2010. (Id., p. 8, l.12-23). Lucero had previously told Caraveo that he should date Portillos when he gets released from prison. When Lucero mentions Portillos, Caraveo says he wants to talk to her the next time she is with Lucero.(Id., p. 7-9). Caraveo then discusses with Lucero how he going to approach Portillos when they talk for the first time. The following colloquy occurs:

> MR. CARAVEO:  Who's going?
>
> MS. LUCERO:  Me and (sic) Christina and the kids.
>
> ***
>
> MR. CARAVEO:  Is (sic) Christina with you?
>
> MS. LUCERO:  No. She's at work.
>
> MR. CARAVEO:  Oh. Well, when you're with her next time, I want to talk to her.
>
> MS. LUCERO:  Okay. (Id. P. 9, l. 3-9).

> MR. CARAVEO: All I'm going to tell her is, What up, baby girl? So everything's good? You like --
>
> MS. LUCERO: (Inaudible).
>
> MR. CARAVEO: You like working for the fucking M-O-B? She's, like, Yeah. I'll be, like, Show me your gratefulness. Just show me some pictures of one tit. She's going to be, like, that nigger's crazy.
>
> MS. LUCERO: You're terrible.
>
> MR. CARAVEO: No, I wouldn't – I won't tell her that, man. I don't (Inaudible). (Id., p. 9, l. 10-19).

The conversation then returns to Lucero discussing her relationship with Chavez.

Returning to August 6, 2010, Caraveo speaks to Portillos for the first time. Caraveo makes the statement to Portillos, as he told Lucero, about her "working for the fucking "M-O-B." When Caraveo told Lucero on July 23, 2010, what he was going to first say to Portillos, it had nothing to do with him thanking Portillos nor did it relate to the conspiracy in any way. Caraveo was attempting to "hit" on Portillos in order to start a personal relationship with her by saying something he knew would be regarded as "crazy."

More relevant is Portillos' response. She says only what she has to say to end the conversation and get off the phone. The only words Portillos spoke during the August 6, 2010 conversation were "Oh, no. Yeah, I agree" - "yeah" and

"Okay thanks."

When taken in context, the evidence supports that Portillos was caught off guard by Caraveo's statements - which was his intent – and Portillos was clueless as to what Caraveo was talking about when he mentioned "M-O-B." The Government offers no evidence to suggests that Portillos knew the meaning of M-O-B.

The Government's representation that Caraveo was "express[ing] his gratitude for the defendant's participation in the conspiracy" is totally out of line with the facts once the matter is placed in context. When placed in context, Caraveo was trying to start a relationship with Portillos. As Caraveo stated, he wanted Portillos to think, this "nigger crazy." (Exh. C, p. 9, l. 13 – 16).

The August 6, 2010 statement is not "[e]vidence of the defendant's connection to the conspiracy." (Resp at p. 11). The statement has nothing to do with advancing the tax fraud scheme. The statement is not in furtherance of the conspiracy under Rule 801 (d)(2)(E) nor is it evidence of Portillos' connection to or membership in the conspiracy.

### Defendant's statements to Agent Romero do not establish membership in the Conspiracy.

The Government argues that Defendant intentionally concealed her knowledge that she knew Raul Caraveo from Agent Romero and that this is evidence of "defendant's intentional participation in the conspiracy." Agent

Romero asked her if she knew the name "Raul Caraveo." Portillos did not remember Caraveo, and could not name him.  In hundreds of conversations between Lucero and Caraveo, especially those where Defendant was present, Caraveo's last name was never mentioned.

However, there is no dispute that Portillos told Agent Romero that she knew the name Eugene Chavez.  Defendant's mentioning of co-conspirator Chavez demonstrates that she was not trying to hide her knowledge of members of the conspiracy.

Finally, the Government states that Defendant's telling Agent Romero that "she gets, 'a lot of IRS mail that isn't mine and I'm not sure why'" is yet another attempt to conceal her participation in the conspiracy.  This argument makes no sense, Defendant admitted that she received IRS mail that was not hers. Once again the Government takes what Portillos said out of context. Defendant stated the following to Agent Romero:

> SA ROMERO: Okay.  And the reason that I want to talk to you is I want to find out how do they [tax refund checks] come to be sent to your house? What do you --
>
> MS. PORTILLOS: Well, I don't know and I get a lot of IRS mail that isn't mine and I'm not sure why.
>
> SA ROMERO: Okay.
>
> MS. PORTILLOS: Actually I just had a whole bunch show up recently that I just returned to sender when I get them. Now I am not home a lot.

> SA ROMERO: So you say currently there's still IRS mail coming to you?
>
> MS. PORTILLOS: Yes, it gets me ticked off. I actually chewed out the post office over it because I had my -- my father-in- law living with me and then he moved out. (Exh. D, pgs. 8-9)

Portillos truthfully acknowledged getting IRS mail that was not hers. Portillos said she contacted the post office about this mail.  There is no evidence that she was following Lucero's suggestions. Agent Romero never asked her when she contacted the Post Office. Contrary to Agency Romero's representation, this does not establish her participation of membership in the conspiracy.

## Conclusion

The Government has not carried its burden to establish that Defendant was a member of the conspiracy.  The Government's evidence does not establish, inter alia, that (ii) the declarant[s] and defendant were both members of the conspiracy.  *U.S. v. Urena, 27 F.3d 1487, 1490 (10th Cir. 1994).*  At most, the Government's evidence shows mere association by Portillos with members of a conspiracy. "Mere association with conspirators, even with knowledge of their involvement in crime, is insufficient to prove participation in their conspiracy. *Dickey* at 585; *Kendall* at 1432." *U.S. v. Fox, 902 F.2d 1508, 1514 (10th Cir. 1990).*

Because the Government has not established that Defendant was a

member of the conspiracy, Defendant objects to the Government's James Proffers in general, unless stated otherwise in Exh. A, attached hereto. Defendant has also stated her specific objections the statements dated July 31,2010 and August 6, 2010.

Respectfully submitted,

s/John Mosby

John Mosby
621 17th Street, Suite 2445
Denver, Colorado 80293
(303) 623-1355

Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this March 15, 2016, a true and correct copy of the foregoing was served via the Court's ECF system to:

Martha A Paluch,
Assistant U.S. Attorney

Martin Stuart , Esq.
Attorney for Raul Caraveo

John Schlie, Esq.
Attorney for Pamila Lucero

Marci Gilligan, Esq.
Attorney for Sabrina Caraveo

Thomas Ward , Esq.
Attorney for Eugene Chavez

Robert Pepin, Esq.
Attorney for Carolina Aragon

Defendant Cristina Portillos

s/John Mosby