# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Raymond P. Moore

Criminal Case No. 15-cr-00149-RM

United States of America,

      Plaintiff,

v.

Cristina Portillos,

      Defendant.

## JURY INSTRUCTIONS

## INSTRUCTION NO. 1

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges, you are the other. I am the judge of the law. You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration. It is also my duty, now, at the end of the trial, to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case - for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then, I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return. These instructions will be given to you for use in the jury room, so you need not and may not take notes.  Instead, listen carefully.

**INSTRUCTION NO. 2**

As I have said before, you, as jurors, are the judges of the facts. But in determining what actually happened - that is, in reaching your decision as to the facts - it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule of law I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. You should not read into these instructions, or into anything else I may have said or done, any suggestion as to what your verdict should be. That is entirely up to you.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

**INSTRUCTION NO. 3**

If any reference by me or by counsel to matters of testimony or exhibits does not coincide with your own recollection of that evidence, it is your recollection which should control during your deliberations and not the statements of the Court or of counsel.

You are the sole judges of the evidence received in this case.

## INSTRUCTION NO. 4

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And any comments or questions by me are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked.  I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

## INSTRUCTION NO. 5

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accordance with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

**INSTRUCTION NO. 6**

The intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way of directly scrutinizing the workings of the human mind. In determining the issue of what a person knew or what a person intended at a particular time, you may consider any statements made, or acts done, by that person and all other facts or circumstances received in evidence which may aid in your determination of that person's knowledge or intent.

You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial.

## INSTRUCTION NO. 7

The government has the burden of proving Ms. Portillos guilty beyond a reasonable doubt. The law does not require a defendant to prove that she is not guilty or to produce any evidence at all. A defendant is not even required to cross-examine government witnesses. A defendant in a criminal trial must be presumed to be not guilty. And that presumption may only be overcome by evidence sufficient to satisfy the government's burden. The government has the burden of proving a defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant "not guilty."

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of a defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning a defendant's guilt. A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find her guilty. If, on the other hand, you think there is a real possibility that she is not guilty, you must give her the benefit of the doubt and find her not guilty.

**INSTRUCTION NO. 8**

In deciding whether the government has proved the guilt of Ms. Portillos beyond a reasonable doubt, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with either the government or the defense? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which the witness testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection - like failure of recollection - is not uncommon.

The testimony of the defendant should be weighed and her credibility evaluated in the same way as that of any other witness.

**INSTRUCTION NO. 9**

The testimony of a witness may be discredited or impeached by showing that the witness previously has been convicted of a felony, that is, of a crime punishable by imprisonment for a term of years or of a crime of dishonesty.  A prior conviction does not mean that a witness is not qualified to testify, but is merely one circumstances that you may consider in determining the credibility of the witness.  You may decide how much weight to give any prior felony conviction or crime of dishonesty that was used to impeach a witness.

## INSTRUCTION NO. 10

You have heard the testimony of Special Agent Anthony Romero and Josephine Roybal. If, before this trial, he or she made a statement that may be different from his or her testimony here in court, you may use the earlier statement to help you decide how believable his or her testimony in this trial was. You cannot use his or her earlier statement as proof of anything else. You can only use it as one way of evaluating his or her testimony here in court.

## INSTRUCTION NO. 11

The government called as witnesses alleged co-conspirators or accomplices who were, or in the case of Melanie Palumbo could have been, named as co-defendants in the superseding indictment. The government has entered into plea agreements with these actual or potential co-defendants providing for the dismissal of some charges, for the agreement not to file additional charges, and for a government recommendation for a lesser sentence than these persons might otherwise receive. Plea bargaining is lawful and proper, and the rules of this Court expressly provide for it.

An alleged co-conspirator or accomplice, including one who has entered into a plea agreement with the government, is not prohibited from testifying. On the contrary, the testimony of an alleged co-conspirator or accomplice may, by itself, support a guilty verdict. But you should receive this type of testimony with caution and weigh it with great care. You should never convict a defendant upon the unsupported testimony of an alleged co-conspirator or accomplice, unless you believe that testimony beyond a reasonable doubt.

And always be aware that the fact that an alleged co-conspirator or accomplice has entered a guilty plea to an offense charged in the superseding indictment, or in the case of Melanie Palombo to a related offense charged in a separate document, is not evidence of the guilt of any other person – specifically, it is not evidence of guilt with respect to Cristina Portillos.

## INSTRUCTION NO. 12

Evidence has been presented about a statement attributed to the defendant alleged to have been made to law enforcement after the commission of the crimes charged in this case but not made in court. Such evidence should always be considered by you with caution and weighed with care. You should give any such statement the weight you think it deserves, after considering all the circumstances under which the statement was made.

In determining whether any such statement is reliable and credible, consider factors bearing on the voluntariness of the statement. For example, consider the age, gender, training, education, occupation, and physical and mental condition of the defendant, and any evidence concerning her treatment while under interrogation if the statement was made in response to questioning by government officials, and all the other circumstances in evidence surrounding the making of the statement.

After considering all this evidence, you may give such weight to the statement as you feel it deserves under all the circumstances. If you determine that the statement is unreliable or not credible, you may disregard the statement entirely.

**INSTRUCTION NO. 13**

Your decision on the facts of this case should not be determined by the number of witnesses testifying for or against a party.  You should consider all the facts and circumstances in evidence to determine which of the witnesses you choose to believe or not believe.  You may find that the testimony of a smaller number of witnesses on one side is more credible than the testimony of a greater number of witnesses on the other side.

## INSTRUCTION NO. 14

The defendant has offered evidence of her reputation for good character. You should consider such evidence along with all the other evidence in the case.

Evidence of good character may be sufficient to raise a reasonable doubt whether the defendant is guilty, because you may think it improbable that a person of good character would commit such a crime. Evidence of a defendant's character, inconsistent with those traits of character ordinarily involved in the commission of the crime charged, may give rise to a reasonable doubt.

You should also consider any evidence offered to rebut the evidence offered by the defendant.

You should always bear in mind, however, that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

**INSTRUCTION NO. 15**

You are here to decide whether the government has proved beyond a reasonable doubt that Ms. Portillos is guilty of the crimes charged. The defendant is not on trial for any act, conduct, or crime not specifically charged in the indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crime charged.  The fact that another person also may be guilty is no defense to a criminal charge.

The question of the possible guilt of others should not enter your thinking as you decide whether this defendant has been proved guilty of the crime charged.

## INSTRUCTION NO. 16

If you find the defendant guilty, it will be my duty to decide what the punishment will be.

You should not discuss or consider the possible punishment in any way while deciding your

verdict.

**INSTRUCTION NO. 17**

During this trial, you heard audio recordings of certain conversations.  You were also shown transcripts of those recorded conversations. Additional recordings and transcripts have been admitted into evidence.

Keep in mind that the transcripts are not evidence.  They were shown and are being made available to you only as a guide to help you follow what was being said.  The recordings themselves are the evidence.  Whether during the presentation in court or during the course of your deliberations, if you notice any differences between what you heard or hear on the recordings and what you read or read in the transcripts, you must rely on what you hear, not what you read.  If you cannot hear or understand certain parts of the recordings, you must ignore the transcript as far as those parts are concerned.

**INSTRUCTION NO. 18**

Certain charts and summaries have been shown to you to help explain the evidence in this case. Their only purpose is to help explain the evidence. These charts and summaries are not evidence or proof of any facts.

## INSTRUCTION NO. 19

The superseding indictment, a copy of which will be provided to you along with these instructions, reads as follows:

### COUNT 1

### RAUL CARAVEO, PAMILA LUCERO, SABRINA CARAVEO, EUGENE CHAVEZ, CAROLINA ARAGON, CRISTINA PORTILLOS, CONRAD ARCHULETA, and NANCY GUZMAN

### (18 U.S.C. § 286 – Conspiracy to File False Claims for Refund)

#### A.  Introduction

1.  Defendants Raul Caraveo, Pamila Lucero, Sabrina Caraveo, Eugene Chavez, Carolina Aragon, Cristina Portillos, Conrad Archuleta, and Nancy Guzman, as well as an unindicted co-conspirator, during the time periods charged in this Indictment, were all residents of the State and District of Colorado.

2.  The Internal Revenue Service ("IRS") was and is an agency of the United States Department of the Treasury responsible for administering and enforcing the tax laws of the United States of America.

#### B.  The Conspiracy

3.  Beginning on or about February 10, 2008, and continuing until on or about May 5, 2014, the exact dates being unknown to the Grand Jury, in the State and District of Colorado, and elsewhere, defendants Raul Caraveo, Pamila Lucero, Sabrina Caraveo, Eugene Chavez, Carolina Aragon, Cristina Portillos, Conrad Archuleta, Nancy Guzman, and an unindicted co-conspirator, and others known and unknown to the Grand Jury, knowingly agreed, combined, and conspired with each other to defraud the United States by obtaining and

aiding in obtaining the payment and allowance of false, fictitious and fraudulent claims filed in the names of other individuals by submitting or causing to be submitted false claims for income tax refund to the United States Department of Treasury through the IRS.

### C. Manner and Means of the Conspiracy

4.      The conspiracy was accomplished, in part, through the following manner and means:

5.      Various defendants worked together, and/or with others known and unknown to the grand jury, in the filing of false tax returns for the purpose of obtaining IRS refund checks to which they were not entitled, in the following ways:

A.      Raul Caraveo, while incarcerated within the Colorado Department of Corrections (DOC), obtained the identifying information of fellow inmates and inmates' relatives to include names, dates of birth, and social security numbers. Caraveo and fellow DOC inmate Eugene Chavez used this information to generate false Form 1040A tax returns, listing the names of inmates and their relatives as either the primary tax payer or as a dependent of that alleged tax payer, and entering false wage and income information on the Forms 1040A. Fellow inmate Conrad Archuleta enlisted assistance in the scheme from his wife Nancy Guzman as described below.

B.      The conspirators submitted to the IRS tax returns for the years 2005 through 2013 with the following characteristics/similarities:

- All of the returns were Forms 1040A
- All listed unsubstantiated income

- All requested tax refunds generated by the Earned Income Tax Credit (EITC)
- All requested paper refund checks
- All listed one dependent
- All listed an occupation of either Student/Labor or Student/Tutor
- All claimed wages between approximately $7,300 and $8,950 depending on the tax year used for the Form 1040A
- All requested refunds were between approximately $2,491 and $3,052

C.  At different times in the scheme, Pamila Lucero, Sabrina Caraveo, and Carolina Aragon mailed blank copies of Form 1040A returns to Raul Caraveo and other inmates for use in the scheme.

D.  In most instances, Raul Caraveo and Eugene Chavez would fill out the Form 1040A returns and mail them from prison to Pamila Lucero, Sabrina Caraveo, or Carolina Aragon.

E.  At other times, Raul Caraveo, Eugene Chavez, and other inmates would provide missing information for the returns to Pamila Lucero, Sabrina Caraveo, or Carolina Aragon, and direct them to add that information to the returns.

F.  The conspirators prepared almost all of the false returns using one of approximately a dozen addresses provided by Pamila Lucero, Sabrina Caraveo, Carolina Aragon, Cristina Portillos, Nancy Guzman, and an unindicted co-conspirator. The conspirators obtained addresses to be used for receipt of the refund checks from individuals who the

conspirators believed could be trusted to notify a conspirator when a refund check arrived at the individual's address. Cristina Portillos was paid for allowing her address to be used on numerous false Form 1040A returns submitted to the IRS, and received numerous refund checks at her address which she forwarded on to Pamila Lucero. Conrad Archuleta asked his wife Nancy Guzman to receive refund checks at her home address in Pueblo, Colorado. Nancy Guzman agreed, and then received instructions from Conrad Archuleta, Sabrina Caraveo and Pamila Lucero as to how the scheme worked. Conrad Archuleta also relayed information from Raul Caraveo to Nancy Guzman about the scheme. Nancy Guzman cashed two refund checks and kept a portion of the funds for herself. She provided the remainder of the funds to Sabrina Caraveo. In some instances, a cooperating inmate provided the address of a relative that the conspirators would use on the false Form 1040A return(s) prepared for that inmate. When this happened, in most instances, the cooperating inmate would instruct his relative to contact one of the conspirators for further instructions once a refund check arrived.

G. Once the packages of returns were completed, Pamila Lucero, Sabrina Caraveo, or Carolina Aragon would mail them to the IRS Service Center for processing.

H. To prevent discovery of the conspiracy, Raul Caraveo used code words when he talked to his co-conspirators during telephone calls he knew would be recorded. For example, Caraveo referred to tax returns as "pictures," "flicks," and "postcards," added the area code 719 to the beginning of social security numbers, and referred to the refund amounts listed on the returns as "extensions."

I. Raul Caraveo and at times Eugene Chavez prepared false power of attorney forms that they mailed to Sabrina Caraveo, Pamila Lucero, or Nancy Guzman for use in cashing the refund checks made out to inmates and their relatives.

23

J.  Once the refund checks were cashed by Pamila Lucero, Sabrina Caraveo, Carolina Aragon, or Nancy Guzman, Raul Caraveo or another co-conspirator instructed these women on how to divide the money.  The money was primarily divided between Raul Caraveo, Eugene Chavez, Pamila Lucero, Sabrina Caraveo, and Carolina Aragon.

K.  Pamila Lucero, Sabrina Caraveo, Carolina Aragon, and Nancy Guzman deposited money at different times into the prison accounts held by either Raul Caraveo, Eugene Chavez, Conrad Archuleta or other inmates.

L.  At different times during the course of this conspiracy, various defendants were involved in the submission of and causing to be submitted over 250 false claims for income tax refund to the United States Department of Treasury through the Internal Revenue Service, to include the following:

| Date Received by IRS | Tax Year | Refund Requested | Refund Received | Initials of Name On Return |
|---|---|---|---|---|
| | | | | |

All in violation of Title 18, United States Code, Section 286.

**COUNTS 2 – 39**
**(18 U.S.C. § 287 – False Claim for Refund**
**18 U.S.C. § 2(a) – Aid and Abet)**

6.      The Grand Jury realleges and incorporates paragraphs 1-2 herein.

7.      On or about and between February 10, 2008, and continuing until on or about May 5, 2014, in the State and District of Colorado, and elsewhere, the defendants named in the counts listed below, made and presented, and aided and abetted in making and presenting, to the United States claims for payment of fraudulent tax refunds in the amounts enumerated for each count listed below with the knowledge that such claims were false, fictitious, and fraudulent. The defendants listed below made the false claims, and aided and abetted in making the false claims, by mailing U.S. Individual Income Tax

Return, Forms 1040A, in the names of other individuals for the years and amounts listed below to the

United States Department of the Treasury through the Internal Revenue Service:

| Count | Defendants Involved | Date Received by IRS | Tax Year | Refund Requested | Refund Received | Initials of Name on Return |
|-------|---------------------|----------------------|----------|------------------|-----------------|----------------------------|
|       |                     |                      |          |                  |                 |                            |

All in violation of Title 18, United States Code, Section 287, and Title 18, United States Code,

Section 2(a).

**INSTRUCTION NO. 20**

A separate crime is charged in each count of the superseding indictment. You must separately consider the evidence on each count and return a separate verdict.

Your verdict as to any one count, whether it is guilty or not guilty, should not influence your verdict as to any other count.

## INSTRUCTION NO. 21

The superseding indictment charges that the crimes charged were committed on or about certain dates.  The government must prove beyond a reasonable doubt that the defendant committed the crimes charged reasonably near the dates charged in the indictment.

**INSTRUCTION NO. 22**

An indictment is only a formal method used by the government to accuse a defendant of a crime.  It is not evidence of any kind against the defendant.  The defendant is presumed to be innocent of the crime charged.

Defendant Cristina Portillos has pleaded "Not Guilty" to the superseding indictment and therefore, denies that she is guilty of the charges contained in the superseding indictment.

**INSTRUCTION NO. 23**

Count 1of the superseding indictment in this case is based upon a federal statute known

as Title 18, United States Code, Section 286. That statute makes it a crime to conspire to commit

certain offenses. The statute provides in pertinent part as follows:

Whoever enters into any agreement, combination, or conspiracy to defraud the United
States, or any department or agency thereof, by obtaining or aiding to obtain the payment
or allowance of any false, fictitious or fraudulent claim … [shall commit an offense
against the United States.]

**INSTRUCTION NO. 24**

To find Ms. Portillos guilty of the conspiracy charged in Count 1 of the superseding indictment, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*, the defendant agreed with at least one other person to obtain or aid in obtaining the payment or allowance of any false, fictitious, or fraudulent claim;

*Second*, the defendant knew the essential objective of the conspiracy;

*Third*, the defendant knowingly and voluntarily participated; and

*Fourth,* there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

### INSTRUCTION NO. 25

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose. It is a kind of "partnership in criminal purposes" in which each member becomes the agent or partner of every other member. The evidence may show that some of the persons involved in the alleged conspiracy are not on trial. This does not matter. There is no requirement that all members of a conspiracy be charged or tried together in one proceeding.

The evidence need not show that the members entered into an express or formal agreement. Nor does the law require proof that the members agreed on all the details. But the evidence must show that the members of the alleged conspiracy came to a mutual understanding to try to accomplish a common and unlawful plan.

If you are convinced that the charged conspiracy existed, then you must next determine whether the defendant was a member of that conspiracy, that is, whether the defendant knew at least the essential goals of the conspiracy and voluntarily chose to be part of it. The law does not require proof that the defendant knew all the other members of the conspiracy or knew all the details about how activities were to be carried out. A person may belong to a conspiracy for a brief period of time or play a minor role. On the other hand, proof is not sufficient if it merely shows that the defendant knew about the existence of the conspiracy or was associated with members of the conspiracy. Rather, the evidence must show the defendant knowingly joined the conspiracy with the intent to advance its purposes.

You are also required to find that interdependence existed among the members of the conspiracy. This means that the members intended to act for their shared mutual benefit. To satisfy this element, you must conclude that the defendant participated in a shared criminal purpose and that her actions constituted an essential and integral step toward the realization of that purpose.

**INSTRUCTION NO. 26**

The word knowingly as used in these instructions means to act voluntarily and

intentionally, and not because of mistake or accident.

## INSTRUCTION NO. 27

The remaining counts of the superseding indictment which contain charges against Ms. Portillos (Counts 10, 12, 14-17, and 30) are based upon a federal statute known as Title 18, United States Code, Section 2. That statute makes it a crime intentionally to help someone else commit a crime. The statute provides in pertinent part as follows:

Whoever …aids, abets, counsels, commands, induces or procures [the] commission [of an offense against the United States] … [shall commit an offense against the United States.]

The superseding indictment charges Ms. Portillos with aiding and abetting others with respect to the making and presenting of false claims for refunds to the United States. That crime is based upon a federal statute known as Title 18, United States Code, Section 287, which provides in pertinent part as follows:

Whoever makes or presents to … any department or agency [of the United States], any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, [shall commit an offense against the United States.]

## INSTRUCTION NO. 28

To find Ms. Portillos guilty of aiding and abetting the making and presenting of false claims as charged in each of Counts 10, 12, 14-17, and 30 of the superseding indictment, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*, someone else committed the charged crime (making and presenting a false claim), and;

*Second*, the defendant intentionally associated herself in some way with the crime and intentionally participated in it as she would in something she wished to bring about. This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help him or her.

The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.

**INSTRUCTION NO. 29**

To find that "someone else" committed the crime of making and presenting a false claim, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*, a person or persons other than defendant knowingly made and presented to the Internal Revenue Service a false or fraudulent claim against the United States; and

*Second*, that person or persons knew that the claim was false or fraudulent.

It is not necessary to show that the government agency or department was, in fact, actually deceived or misled.

To make a claim, a person or persons need not directly submit the claim to an employee or agency or department of the United States. It is sufficient if the person or persons submit the claim to a third party knowing that the third party will submit the claim or seek reimbursement from the United States or from a department or agency thereof.

## INSTRUCTION NO. 30

In a moment the court security officer will escort you to the jury room where each of you will be provided a copy of the instructions that I have just read. Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a presiding juror who will help to guide your deliberations and will speak for you here in the courtroom.

To reach a verdict, whether it is not guilty or guilty, as I have told you before, all of you must agree. Your verdict must be unanimous. Your deliberations in coming to that verdict will be secret. You will never have to explain your verdict to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong. But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges – judges of the facts. For ~~the sole~~ each count of the indictment, you must decide whether the government has proved the defendant guilty beyond a reasonable doubt.

A form of verdict has been prepared for your convenience.

[Explain the Verdict Form]

[Explain the Indictment]

The presiding juror will write the unanimous answer of the jury in the space provided for each count of the indictment, either not guilty or guilty. At the conclusion of your deliberations, the presiding juror should date and sign the verdict.

36

If you need to communicate with me during your deliberations, the presiding juror should write the message and give it to the court security officer.  I will either reply in writing or bring you back into the court to respond to your message.  Under no circumstances should you reveal to me the numerical division of the jury.

You will note from the oath to be taken by the court security officer, that he/she too, as well as all other persons, are forbidden to communicate in any manner with any member of the jury on any subject touching on this case.

Although you will now go to the jury room, please wait until the exhibits, instructions, indictment and verdict form have been brought back to you before beginning your deliberations. And with that, members of the jury please retire to the jury room.