IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 15-cr-00149-RM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

6.    CRISTINA PORTILLOS
    Defendant.

---

## DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

---

Come now the Defendant, Cristina Portillos, by and through her attorney of record, John Mosby, and respectfully files the following Objections to the June 24, 2016, Presentence Investigation Report. ("PIR").

### First Objection - Designation

On page 3, "Identifying Data" the PIR mistakenly designates Cristina Portillos as Hispanic Origin:   Non-Hispanic origin."    This is in error. Defendant is of Hispanic Origin.

### Second Objection - Paragraph 19 - Defendant did not fill out any tax forms

In Defendant's sentencing statement, it asserts that in a call "Lucero tells Caraveo that "Cristina" filled out a form and pulled up a form (sic) up at work." (ECF-Doc 458, p. 5).  There is no evidence that Defendant Portillos filled out a

1

IRS forms during the scheme. The PIR adopts, in toto, the government's Sentencing Statement (ECF 458)(Govt. Ex. 201 E), in which the government makes this new allegation. In that call, Lucero tells Caraveo that she is preparing and sending in the Steele IRS tax form. The government's sentencing statement relating to this issue is not supported by the evidence.

Neither the government nor PIR offers any "description/Quotation" or evidence or the exact words used from Govt. Exh. 201E. (Compare, for example, PIR §§ 14 and 36, where the government details the exact language of the subject call). The totality of the evidence at trial is that Portillos' "participation" in the conspiracy was no different from that of Lucero's other friends or friends and relatives of co-defendants who received checks at their address. The evidence is that basically a limited group of individuals filled out the tax forms. The only individuals, who were not incarcerated, who filled out forms mailed by Raul Caraveo to Pamila Lucero was Pamila Lucero.

The government, without ruling out that Pamila Lucero did what she told Caraveo she would do, fill out the Steele tax form and send it to the IRS, asserts that Portillos filled out the form. The government's bare assertion that Defendant filled out one tax return form and its inclusion in the PIR should be rejected.

### Third Objection - Paragraphs 25 – 28; loss amount

Defendant objects to the PIR's determination of "loss." With respect to Portillos' Role in the Scheme and loss, Agent Romero's Special Agent Report states;

> Loss to Government
>
> PORTILLOS participation in the scheme resulted in the preparation and submission of thirty-six (36) false returns to the IRS totaling $98,499 in false claims as a result, ten (l0) refunds checks, totaling $23,294 were issued and sent to PORTILLOS home address in Colorado Springs, Colorado. All 10 checks were then forwarded to and cashed by LUCERO. *(Attachment 1, p.18).*

The government cannot carry its burden to present evidence that "… Defendant's knew or, under the circumstances, reasonably should have known, was a potential result of the offense" was losses between $250,000 and over $500,000 in refunds See, U.S.S.G. § 2B1.1 cmt. n. 3(iv).

The **reasonably foreseeable** pecuniary harm that resulted from the offense for Defendant Portillos is represented by the amount stated in Agent Romero's Special Agent's Report. Based upon the Special Agent's Report, the amount of actual loss is $23,294.00 for Defendant Portillos.

### Fourth Objection - Paragraph 60 - Defendant is entitled to a designation of a minimal participant or a minor role in the offense adjustment.

With respect to Defendant's role in the scheme, Agent Romero's Special Agent's Report stated;

> Role in Scheme
>
> In 2010 PORTILLOS was approached by LUCERO and agreed to participate in the scheme by receiving tax refund checks at her home address in Colorado Springs, Colorado. PORTILOS was aware of what the scheme entailed and knew about LUCERO's involvement with CARAVEO. PORTILLOS received financial compensation from LUCERO for each check that she received. *(Attachment 1, p.18).*

The conspiracy started in February 2008. Agent Romero's Special Agent Report states that Defendant's participation started in 2010. That participation lasted for less than a year. This was around the time Lucero moved back to Colorado Springs, CO from Delta, Colorado. Defendant had no involvement in the scheme in 2011 or 2012. Agent Romero's representation of Defendant's role in the scheme in his Special Agent's Report is consistent with his testimony at trial.

The evidence supports that Defendant Portillos' role was limited or minor. Evidence supports that Portillos and Lucero had been friends since high school and kept in communication all during the time Lucero lived in Delta, Colorado. When the scheme started, Lucero only used her friends addresses who lived in and around Delta Colorado.

When Lucero moved to Colorado Springs, the evidence was that she continued using her Delta friends' addresses. However, at no time while Lucero lived in Delta, did she ever used Portillos' address or involve Portillos in the scheme. The evidence is that Defendant's knowledge of or participation in the

scheme did not extended beyond 2010 or only after Lucero moved back to Colorado Springs, when, as the jury found, Lucero started using Defendant's address in the scheme.

*Defendant's played minor role or her participation was minimal*

Each witness called at trial testified that they did not know the Defendant. With respect to Defendant's communication with Raul Caraveo, there was only the *one* phone call between Defendant and Raul Caraveo where the scheme was discussed. This was in 2010. There was only a total of four (4) calls where Portillos spoke to Caraveo. (The dates are; 8/6/10; 1/5/12; 4/9/12 and 7/26/12). None of the three calls in 2012 involved or had anything to do with the scheme. All four of these calls were the result of Lucero giving Portillos her cell phone, usually at Caraveo's direction. Portillos never requested to speak to Caraveo.

*Defendant participated in the scheme was for one year*

Further evidence of the limited role Defendant played is the evidence of her short involvement in the scheme. Defendant engaged in no activity involving the scheme during 2011 and 2012.

Defendant participated only through Pamila Lucero. On March 22, 2012, Agent Romero contacted and visited with Pamila Lucero at her home regarding the scheme. Shortly after that date, Raul Caraveo contacted Carolina Aragon to do what Lucero had done in the past. Defendant's participation in the scheme was essentially limited to one year - 2010.

5

*Defendant's role was minor*

The PIR found that Defendant has a "minor role in the offense conduct." (PIR, § 118). A defendant may receive a minor role adjustment if her part in the offense renders here significantly less culpable than an average participant. *Id.* § 3B1.2 cmt. n. 3(A). This finding is appropriate when Defendant's conduct and participation in the conspiracy is compared to her co-defendants.

The Guidelines comment at §3B1.2. "Mitigating Role" states,

> Based on the defendant's role in the offense, decrease the offense level as follows:
>
> (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
>
> (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
>
> In cases falling between (a) and (b), decrease by 3 levels.
> Commentary
>
> (C) Fact-Based Determination. -The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.
>
> In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:
>
> *§3B1.2 GUIDELINES MANUAL November 1, 2015*
>
> (i)  the degree to which the defendant understood the scope and structure of the criminal activity;

>   (ii)   the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.
>
> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline. The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity."

The government's stated reason for rejecting this finding is that,

> "… the volume of recorded DOC calls played during the defendant's trial establishing her extensive involvement in this conspiracy and her attempt to conceal that involvement, the government disputes that probation office's assertion that the defendant may be entitled to a minor role in the offense adjustment."   (See, ECF – Doc. 522, n. 1).

The proper comparison is not to the volume of calls "played during the defendant's trial," but a comparison of Portillos' participation and conduct with the participation and conduct of the other co-conspirators.   The government does not make such a comparison.   Instead, the government relies upon the volume of recorded DOC calls played during the trial.   In this case, a finding of a "minimal

7

participation" would be appropriate when Defendant's conduct is compared to that of co-defendants.

## Conclusion

Defendant's reasonable foreseeable intended loss was approximately $95,000.00 and the actual loss was $23,294.00. The Court should credit the PIR with respect to its finding that there are grounds for a variance. (See, PIR, § 118). Finally, the Court should find that the evidence does not support the PIR adopted government's position that Defendant filled out one tax return forms.

Respectfully submitted,

s/ John Mosby
John Mosby
Attorney for Defendant
621 17th Street, Ste. 2445
Denver, CO 80293
303.623.1355
John_Mosby@msn.com

8

## CERTIFICATE OF SERVICE

  I hereby certify that on this 11th day of July, 2016, I electronically filed, via the Court ECF system, the foregoing document entitled, Defendant's Objections to Presentence Investigation Report was duly served via electronic filing upon:

<u>Via ECF email:</u>
Melissa Roberts
Senior United States Probation Officer

<u>Via ECF email:</u>

Martha Paluch, AUSA
Bryan Fields, AUSA

<u>Via email to:</u>
Cristina Portillos

                s/ <u>John Mosby</u>
                 John Mosby