CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.

## THEORY OF THE INVESTIGATION

Raul M. Caraveo (CARAVEO) is a prisoner currently housed at the Limon correctional facility in Limon, Colorado. CARAVEO has a history of tax fraud and is currently serving a 13-year sentence for the preparation and filing of false income tax returns from 2002 through 2006. CARAVEO was taught how to prepare false federal income tax returns by another inmate while he was incarcerated at the Colorado State Mental Hospital (CSMH) at Pueblo (Colorado). CARAVEO began serving his sentence with the Colorado Department of Corrections (DOC) in October 2008. He was initially housed at the Sterling Correctional Facility (SCF) in Sterling Colorado. It was during this time, from October 2008 through September 2010, that CARAVEO orchestrated a federal income tax refund scheme with the assistance of another SCF inmate, Eugene Chavez (CHAVEZ). CARAVEO was also assisted by his wife Sabrina Caraveo (S. CARAVEO), and two acquaintances Pamila Lucero (LUCERO) and Carolina Aragon (ARAGON). The scheme continued until September 2010 when prison officials became aware of his activities and moved CARAVEO to another DOC facility. Once he was moved to the Colorado State Penitentiary in September 2010 CARAVEO's contact with his co-conspirators was restricted and his mail was monitored. In early 2012 the restrictions were eased and CARAVEO, now at the Crowley County Correctional Facility in Crowley Colorado, resumed the scheme. At this time he became estranged from S. CARAVEO which resulted in limited assistance with the scheme. LUCERO and ARAGON, an acquaintance from his time at the CSMH, then provided assistance.

## HOW THE SCHEME WORKED

CARAVEO obtained identifying information (Name, Date of Birth, and Social Security Number) from inmates and in some instances their family members. In some instances inmates who participated were promised money for their cooperation but were not told that the information provided would be used by CARAVEO to prepare false federal income tax returns.

5

Attachment 1, Objections to Presentence Investigation Report

**CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.**

The identifying information was used by CARAVEO to generate false Forms 1040A.
Specifically, the name and social security number were used as either the primary taxpayer or a
dependent listed on the return. CARAVEO was supplied blank copies of the Forms 1040A by S.
CARAVEO, LUCERO, and ARAGON. The blank Forms would be sent via U.S. Postal Service
mail to the DOC facility CARAVEO was in at the time. None of the returns filed as part of this
scheme had any documentation, such as Forms W2, to substantiate the wages and withholding
claimed on the return. All returns requested a tax refund that was generated by the Earned
Income Tax Credit (EITC), a refundable tax credit. Returns were filed for the tax years 2006
through 2012 and contained identical wages, deductions, credits, and refund amounts for each
year respectively. The only differing information per year was the primary and dependent's
identifying information. The returns in question had the following characteristics.

- All of the returns filed were 1040As
- All had unsubstantiated income
- All requested paper checks
- All had EITC
- All listed one dependent
- All listed an occupation as either Student/Labor or Student/Tutor
- The wages claimed were between $7,550 and $8,350 depending on the tax year the Form
  1040A was prepared for.

In most instances the Forms 1040A that were mailed to the co-conspirators were complete,
however, there were occasions when the returns CARAVEO sent would only contain the
calculations which resulted in a tax refund. The missing information would be added by one of
his co-conspirators once they took receipt of the parcel. The identifying information added to the
false returns was usually on a separate sheet accompanying the false return. Regardless, each
package sent to the co-conspirators typically contained 3 years of Forms 1040A per individual
used. The co-conspirator would then complete the Forms, if needed, and then send packages
containing 3 years of false returns to and IRS Service Center for processing. The packages were
primarily sent to the Austin Texas IRS service center.

Attachment 1, Objections to Presentence Investigation Report

IRS_00002421

CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.

Once the package was sent to the IRS service center CARAVEO, would have one of the co-conspirators periodically call the IRS 1-800 information phone number to check on the status of the false returns being processed. This information was also checked by the co-conspirators on-line through the IRS website. CARAVEO knew that once the IRS accepted a return it typically took a refund check 6 weeks to arrive. He would keep a log of the dates the returns were sent, the information used to prepare the returns, and the dates of processing in a bible he kept with him at the SCF.

Each false return was prepared using one of approximately one dozen addresses that had ties to S. CARAVEO, LUCERO, or ARAGON. In some instances a cooperating inmate would provide the address of a relative which CARAVEO would use on the false Forms 1040A prepared for the inmate. When this happened the cooperating inmate would instruct his relative to contact one of the co-conspirators for further instructions once the refund check(s) arrived. Typically they were instructed to cash the checks and forward the money to one of CARAVEO's co-conspirators, which happened on two occasions, or forward the checks to one of the co-conspirators who would then cash the checks.

In addition to the false Forms 1040A, CARAVEO or CHAVEZ prepared false power of attorney Forms, which they mailed to LUCERO, S. CARAVEO, or ARAGON in order to cash the refund checks. Checks were typically cased at a check cashing business, convenience store, or bar close to where the co-conspirator lived. For LUCERO this occurred either in the Colorado cities of Delta, Montrose, or Colorado Springs. ARAGON and S. CARAVEO used locations in Pueblo, Colorado to cash refund checks.

Once the refund checks were cashed CARAVEO would give instructions to the co-conspirator on how to divide the money. These conversations took place during phone calls that CARAVEO made to S. CARAVEO, LUCERO, and ARAGON. Typically a large portion of each cashed refund check would go to S. CARAVEO. The remaining money was divided between CARAVEO, CHAVEZ, LUCERO, and ARAGON. In some instances money would be wired to the inmate whose identification was used on the false Form 1040A that generated the refund

7

Attachment 1, Objections to Presentence Investigation Report

IRS_00002422

```
CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.
```

check. Money was sent to CARAVEO, CHAVEZ, and other DOC inmates either by Western Union, MoneyGram, or JPay.

## CC-CONSPIRATORS

### PAMILA LUCERO

Background

LUCERO met CARAVEO in 1998 when she was institutionalized at CMHI. CARAVEO, also a CMHI patient at the time, was housed in the same co-ed section of the hospital. The two have always had a platonic relationship that continues to present day. LUCERO has always been and continues to be loyal to CARAVEO. When LUCERO was released from CMHI in 2004 she stayed in touch with CARAVEO. Information obtained during the course of this investigation shows that LUCERO was also involved in CARAVEO'S prior tax refund scheme that originated at CMHI in 2002.

Role in the Scheme

---

[1] The number of elapsed days since the beginning the calendar year.

Attachment 1, Objections to Presentence Investigation Report

IRS_00002423

**CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION. DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.**

LUCERO became involved with the current scheme in December 2008 when she agreed to cash federal tax refund checks for CARAVEO. She was aware of how the scheme worked from her prior involvement with CARAVEO's tax scheme at CMHI. In return for her participation in the current scheme LUCERO would be paid a % of each check that she cashed. LUCERO took direction from both CARAVEO and CHAVEZ. Communication occurred either through U.S. Postal Service mail or via a pay phone CARAVEO and CHAVEZ had access to in prison. CARAVEO developed a code he used when discussing the scheme with his co-conspirators. Typically false returns were referred to as "pictures" or "flicks." An individual's SSN that was used to prepare a false return was referred to a "phone number" and the amounts generated by each return were called "extensions." Additionally, LUCERO's role also included receiving returns from both CHAVEZ and CARAVEO. If necessary, LUCERO would add additional information, per CARAVEO or CHAVEZ's direction, before mailing to the IRS service center for processing. LUCERO was also tasked with finding addresses that could be used on the false returns. A majority of the returns filed used the addresses of individuals she knew in the cities of Delta and Colorado Springs Colorado. A large % of the refund checks generated as a result of CARAVEO's scheme were mailed to one of the addresses with ties to LUCERO. Upon receipt of IRS correspondence or an income tax refund check the individual would then notify LUCERO so that she could make arrangements to have it mailed to her or pick it up in person. Once she took possession of a tax refund check LUCERO would cash it at a check cashing business using a false Power of Attorney form that was sent to her by CARAVEO or CHAVEZ. LUCERO would then distribute the cash per CARAVEO's direction. Funds would be sent to CARAVEO and CHAVEZ either through Western Union wire transfers or cash deposits into his prisoner J-Pay account. LUCERO's role as a co-conspirator continued through August 2014 when she acted as an intermediary between CARAVEO and ARAGON.

Loss to the Government

CARAVEO's scheme resulted in the submission of 259 Forms 1040A to the IRS. 96 of the false returns submitted to the IRS listed addresses that were obtained by LUCERO. LUCERO took receipt of 56 illegally obtained income tax refund checks and cashed them. The total amount of the 56 refund checks she cashed was $140,913.02.

9

Attachment 1, Objections to Presentence Investigation Report

IRS_00002424

**CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.**

Result of Investigative Contact by IRS

LUCERO was contacted by investigating agents in 2012 and again in 2014. During both occasions she admitted to having cashed 56 tax refund checks but denied involvement in any income tax refund scheme. LUCERO claimed she had no knowledge that the checks she cashed were generated by the submission of false income tax returns. LUCERO also denied receiving any form of compensation for the cashing of the tax refund checks. LUCERO said that she was helping friends of hers who were incarcerated and was doing so at their direction, which was provided via letters they mailed her. LUCERO said that the letters directed her whom to send the money to once she cashed the refund checks. LUCERO also said that she was able to cash the check by producing the Power of Attorney Forms that were sent to her to the check casher. Evidence obtained during the course of the investigation directly contradicts LUCERO's statements.


## SABRINA CARAVEO


Background

CARAVEO met his future wife in 2002 while he was institutionalized at CMHI. At the time S. CARAVEO was dating Darcy Arceneaux who was an acquaintance of CARAVEO. During this time S. CARAVEO became aware that CARAVEO was having federal income tax refund checks mailed to the address she shared with Arceneaux. In 2003 S. CARAVEO broke off her relationship with Arceneaux and began dating CARAVEO. It was during this time that CARAVEO told her he was "making money from Uncle Sam." CARAVEO told her that he was filing false income tax returns and cashing the tax refund checks that the returns generated. In 2003 S. CARAVEO became an active participant in the scheme when she agreed to let CARAVEO use her address to receive the refund checks. Additionally, S. CARAVEO agreed to take possession of the refund checks that were mailed to her home and then forward them to another co-conspirator per CARAVEO's direction. For her involvement S. CARAVEO was paid approximately $800 to $900 for each check she received. Beginning in 2003 and continuing through 2004, CARAVEO was allowed to leave CMHI on a regular basis as long as a staff member accompanied him. Typically CMHI staff member Gerald Madrid, who was also a co-

Attachment 1, Objections to Presentence Investigation Report

IRS_00002425

CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.

conspirator in the tax scheme, would accompany CARAVEO.  On November 22, 2004
CARAVEO and S. CARAVEO were married.  The two had a child on May 4, 2006 when S.
CARAVEO gave birth to their son, Xavier.  CARAVEO remained close to his wife throughout
the years talking on the phone several times a day until early 2012.  It was at this time that S.
CARAVEO began an intimate relationship with another woman.  This relationship lasted for
approximately 2 years until the spring of 2014.  CARAVEO and S. CARAVEO have remained
married but the relationship was destroyed when she left CARAVEO to begin a romantic
relationship with the other woman.  The two briefly reconciled on March 2014 when S.
CARAVEO was going through difficult times.  In spite of CARAVEO being able to provide her
financial assistance the reconciliation was short lived.

 Role in the Scheme

On December 18, 2008 S. CARAVEO became involved in CARAVEO's current income tax
refund scheme when she located and agreed to send him the discovery material from his state tax
refund fraud case.  The discovery material contained blueprints as to how to prepare false returns
that would generate sizeable income tax refunds.  The following week S. CARAVEO agreed to
check the status of false returns that had been filed via the IRS information phone number per
CARAVEO's direction.  Between December 2008 and October 2010, S. CARAVEO was
involved in CARAVEO's income tax refund scheme.  In return for her participation in the
scheme S. CARAVEO received a large portion of each refund check that was cashed.  S.
CARAVEO took direction from CARAVEO and regularly communicated with LUCERO.
Communication occurred either through U.S. Postal Service mail or via a pay phone CARAVEO
had access to in prison.  CARAVEO developed a code he used when discussing the scheme with
his co-conspirators.  Typically false returns were referred to as "pictures" of "flicks."  An
individual's SSN that was used to prepare a false return was referred to a "phone number" and
the amounts generated by each return were called "extensions."  S. CARAVEO role included
receiving returns from CARAVEO and if necessary adding additional information to the Forms
1040A prior to mailing them to the IRS service center for processing.  S. CARAVEO provided
her address, her cousin's (Melanie Palumbo) address and her brother's (Alvin Molina Jr.)
address to CARAVEO to be used in the preparation of false Forms 1040A.  S. CARAVEO also
retrieved income tax checks as they arrived at the homes of inmates per CARAVEO's direction.

11

Attachment 1, Objections to Presentence Investigation Report

IRS_00002426

**CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION. DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.**

Once she had the checks she would forward them to her cousin, Melanie Palumbo, to be cashed. Once the checks were cashed S. CARAVEO would send money to CARAVEO via Western Union wire transfers or cash deposits into his prison J-Pay account. *Estimate how much was paid to S. CARAVEO. Obtain info from phone log.*

Loss to the Government

CARAVEO's scheme resulted in the submission of 259 Forms 1040A to the IRS. 19 of the false returns submitted to the IRS listed addresses that were obtained by S. CARAVEO. The false claims submitted in the 19 returns totaled $51,494. The 19 returns submitted resulted in the issuance and cashing of 4 refund checks totaling $11,395. Additionally, S. CARAVEO admitted to preparing 9 false returns at the direction of CARAVEO. The preparation and submission of the returns to the IRS resulted in the issuance of 2 tax refund checks totaling $5,656.

Result of Investigative Contact by IRS

S. CARAVEO was contacted by investigating agents in July 2014 during which time she admitted to her involvement in CARAVEO's tax scheme. S. CARAVEO is currently cooperating with the government.

EUGENE CHAVEZ

Background

CHAVEZ was a childhood friend of CARAVEO. The two reconnected when CARAVEO was incarcerated at SCF in October 2008. CHAVEZ at the time was serving a 12 year sentence for attempted murder. In 2009 the two became cellmates at which point CHAVEZ became involved in CARAVEO's income tax refund scheme. It was during this time that CHAVEZ was introduced to LUCERO. In late 2009 the two began a romantic relationship that lasted until 2011.

Role in the Scheme

Attachment 1, Objections to Presentence Investigation Report

IRS_00002427

**CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION. DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.**

CHAVEZ communicated with LUCERO relaying instructions from CARAVEO concerning the preparation and filing of false tax returns in addition to the cashing of refund checks. CHAVEZ also relayed CARAVEO's instructions as to how to divide the proceeds generated by the cashing of the refund checks. It's believed that in 2010 CHAVEZ was also preparing false returns that were then sent to LUCERO to be mailed to the IRS. During 2009 and 2010 CHAVEZ received thousands of dollars in Western Union wire transfers and J-Pay deposits from LUCERO. The dates the funds were sent to CHAVEZ coincided with instructions given to LUCERO by CARAVEO as how to divide the income tax funds. Evidence obtained during the course of this investigation shows that CHAVEZ continued his involvement with CARAVEO's scheme through April 2014 when he regularly checked the status of returns that had been submitted to the IRS. Additionally, CHAVEZ was in regular contact with ARAGON to pass along tax-scheme related information from CARAVEO.

Loss to the Government

CARAVEO's scheme resulted in the submission of 259 Forms 1040A to the IRS. During the time that both CARAVEO and CHAVEZ were cellmates at SCF, December 2008 through October 2010, a total of 199 returns were submitted totaling $538,717 in false claims. Of the 199 returns a total of 70 refund checks were issued totaling $183,150.02. Lastly, during the time CHAVEZ and CARAVEO were cellmates deposits and wire transfers were made to the account of CHAVEZ totaling $14,330.10

Result of Investigative Contact by IRS

In August 2014 CHAVEZ was contacted by investigating agents. CHAVEZ denied both knowledge of and involvement in this tax scheme.

CAROLINA ARAGON

Background

Attachment 1, Objections to Presentence Investigation Report

IRS_00002428

CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.

ARAGON met CARAVEO in 2001 when she was a nurse at CMHI. CARAVEO was a patient at the time and was housed in the forensic ward where ARAGON was assigned to work. ARAGON said that over time the two developed a friendship and that CARAVEO protected her from violent inmates on more than one occasion. In 2007 ARAGON lost touch with CARAVEO when he was transferred to the Pueblo County jail. The two reconnected in July 2012 when CARAVEO had become estranged from his wife. It appears that ARAGON reached out to LUCERO in the spring of 2012 in order to get in touch with CARAVEO. LUCERO relayed the message to CARAVEO who then took the appropriate steps to be able to call ARAGON from the Crowley County Correctional Facility where he was being housed in at the time.

Role in the Scheme

On August 4, 2012 ARAGON agreed to help CARAVEO with the tax scheme. Recorded phone calls between the two indicate that ARAGON was fully aware that she was being asked to participate in an illegal tax refund scheme. ARAGON was aware of the scheme from her time at CMHI when CARAVEO was a patient. In numerous phone calls between July 28, 2012 and August 4, 2012 CARAVEO and Aragon discussed the fallout that occurred once law enforcement was alerted to the existence of the CMHI tax scheme. ARAGON's initial participation involved receiving parcels from CARAVEO that contained multiple false Forms 1040A. She would then mail the false returns to an IRS service center in Ogden, Utah or Austin, Texas. ARAGON also provided her home address to be used on false income tax returns. Typically ARAGON would mail 3 years of false returns for each individual whose identifying information CARAVEO had used. She would then make regular inquiries to the IRS to obtain the status of returns that had been submitted. Once the refund check was issued, ARAGON coordinated with the individual whose address was used on the false return to obtain and cash the check(s). She would then divide the funds per CARAVEO's direction and wire him money via MoneyGram. ARAGON's involvement in the tax scheme continued until May 2014 when she was contacted by investigating agents.

Loss to the Government

During the time ARAGON was involved with CARAVEO's scheme a total of 28 false returns were submitted to the IRS with false claims totaling $81,053. All 28 returns were submitted

Attachment 1, Objections to Presentence Investigation Report

IRS_00002429

CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.

during a time when LUCERO was no longer mailing returns to the IRS. The only individual
who could have performed this for CARAVEO was ARAGON. Of the 28 returns, 9 used
ARAGON's 341 Alma Street address in Pueblo Colorado. As a result of ARAGON's
involvement 3 refund checks were issued totaling $9,504. ARAGON cashed 2 of the 3 refund
checks.

Result of Investigative Contact by IRS

During her initial interview, ARAGON admitted to having knowledge of CARAVEO's tax
scheme and actively participating in it by mailing false Forms 1040A for CARAVEO, obtaining
status updates on the submitted returns, and cashing refund checks that had been issued as a
result of the submission of the false returns. ARAGON also admitted to having deposited funds
into CARAVEO's prisoner J-Pay account using money obtained as a result of the cashing of the
tax refund checks. ARAGON communicated with other individuals connected to the tax
scheme, including LUCERO and the girlfriend of an inmate, Karen Ferguson, in order to
coordinate the cashing of refund checks. Lastly, ARAGON allowed her address to be used in the
preparation of false Forms 1040A. ARAGON is currently cooperating with the government.

MELANIE PALUMBO

Background

Melanie Palumbo (PALUMBO) is the second cousin of S. CARAVEO. PALUMBO was first
introduced to CARAVEO by S. CARAVEO in 2004 when the two were dating and CARAVEO
was a patient at CMHI. In 2006 PALUMBO and CHAVEZ met and had a brief romantic
relationship. Later that year CHAVEZ was convicted of aggravated robbery and sent to prison.
At the time PALUMBO was unaware that CHAVEZ and CARVEO knew one another. Also in
2006 and later in 2007 PALUMBO was involved in the tax scheme that would eventually send
CARAVEO to prison. PALUMBO had agreed to let CARAVEO use her home address for the
purpose of income tax fraud. PALUMBO allowed CARAVEO to use her address on false
income tax returns which resulted in the issuance of refund checks which were sent to her home
address. Once she took receipt of the checks PALUMBO would hand them over to S.

Attachment 1, Objections to Presentence Investigation Report

IRS_00002430

CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.

CARAVEO. PALUMBO reconnected with CHAVEZ in late 2008 when CARAVEO, recently sentenced to prison for tax fraud, was sent to SCF where CHAVES was also an inmate. The two became cellmates in early 2009 at which point CARAVEO enlisted CHAVEZ to help with filing false income tax returns. In 2009 PALUMBO lived at 2429 East Evans Avenue in Pueblo, Colorado.

### Role in Scheme

On December 11, 2008 CHAVEZ asked PALUMBO to become involved in the tax refund scheme he was helping CARAVEO operate from SCF. PALUMBO agreed to allow CHAVEZ and CARAVEO to use her home address. By putting PALUMBO's address on false income tax forms any refund check that was generated, as a result of the false return, would be sent to PALUMBO's East Evans Ave address in Pueblo, Colorado. Once a refund check was received PALUMBO would deposit the checks into her Wells Fargo Bank checking account and later withdrawal the cash. PALUMBO was then instructed to give a majority of the money to S. CARAVEO and keep approximately $500 for herself.

### Loss to Government

PALUMBO deposited 2 checks into her Wells Fargo checking account and later withdrew the funds totaling $4,700. The checks in question were prepared as a result of CARAVEO's scheme using the identifying information for a DOC inmate who was imprisoned with CARAVEO at SCF in 2009.

### Result of Investigative Contact by IRS

PALUMBO was contacted by and agreed to cooperate with IRS-CI on August 21, 2014. During her initial interview PALUMBO admitted to having been in CARAVEO's current tax scheme and the prior scheme he was convicted for in 2007. PALUMBO admitted to having been in contact with CARAVEO, CHAVEZ, and S. CARAVEO in 2009 and 2010. PALUMBO also admitted to cashing 2 refund checks which the scheme generated in 2009.

### NANCY GUZMAN

Attachment 1, Objections to Presentence Investigation Report

IRS_00002431

CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.

Background

Nancy Guzman (GUZMAN) is the wife of Colorado DOC inmate Conrad Archuleta. Archuleta
was incarcerated with both CARAVEO and CHAVEZ at SCF in 2009 and 2010. During the
middle part of 2010 Archuleta was CARAVEO's cellmate. In February 2010 Guzman became
involved in CARAVEO's income tax scheme when she allowed false returns prepared by
CARAVEO to list her home address. GUZMAN's involvement continued through the end of
September 2010 at which time her husband, CARAVEO, and CHAVEZ were removed from
SCF and transported to different Colorado DOC facilities.


Role in Scheme

GUZMAN allowed CARAVEO to use her home address when he prepared false income tax
returns in 2010. As a result of her participation fourteen (14) false returns were prepared using
GUZMAN's home address (604 E. Mesa Ave. Pueblo, CO 81006). The fourteen returns
submitted to the IRS resulted in the issuance of one (1) income tax refund to GUZMAN's
address for $3,248. Guzman received a total of three (3) refund checks in September 2010. At
GUZMAN then met with LUCERO and received instruction on how to cash the refund checks.
GUZMAN cashed the refund check, kept $800 for herself, sent her husband $200 and
CARAVEO $150, and then gave S. CARAVEO the remaining amount. GUZMAN gave the
second refund checks to S. CARAVEO and received no compensation once it was cashed.
GUZMAN destroyed the third refund check because she became concerned when the scheme
was discovered by DOC and her husband was placed in segregation.


Loss to Government

GUZMAN's participation in CARAVEO's scheme resulted in the submission of fourteen (14)
false tax returns listing false claims totaling $37,951. This resulted in loss to the government
totaling $3,248. Testimony provided by GUZMAN indicated that she received three (3) refund
checks. However, only one (1) refund check sent to GUZMAN's address was recovered during
this investigation.


Result of Investigative Contact by IRS

17

Attachment 1, Objections to Presentence Investigation Report

IRS_00002432

CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.

GUZMAN was contacted by IRS-CI on January 5, 2015 at which time she agreed to meet at a later time to be interviewed. GUZMAN was interviewed on January 28, 2015 at which time she cooperated fully with the investigation.

## CHRISTINA PORTILLOS

### Background

Christina Portillos (PORTILLOS) and LUCERO have been friends since high school. PORTLLOS was aware of LUCERO's involvement with CARVEO's scheme and had at times spoken with CARAVEO on the phone.

### Role in Scheme

In 2010 PORTILLOS was approached by LUCERO and agreed to participate in the scheme by receiving tax refund checks at her home address in Colorado Springs, Colorado. PORTILOS was aware of what the scheme entailed and knew about LUCERO's involvement with CARAVEO. PORTILLOS received financial compensation from LUCERO for each check that she received.

### Loss to Government

PORTILLOS participation in the scheme resulted in the preparation and submission of thirty-six (36) false returns to the IRS totaling $98,499 in false claims. As a result, ten (10) refunds checks totaling $23,294 were issued and sent to PORTILLOS home address in Colorado Springs, Colorado. All 10 checks were then forwarded to and cashed by LUCERO.

### Result of Investigative Contact by IRS

PORTILLOS was interviewed on December 7, 2012 at which time she denied all knowledge and involvement in the tax refund scheme being orchestrated by CARAVEO and LUCERO.

Attachment 1, Objections to Presentence Investigation Report

IRS_00002433

**CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION. DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.**

RAUL H CARAVEO

a. The claims described in this report as violations of Title 18 U.S.C. § 287 consisted of federal income tax returns (Forms 1040A, U.S. Individual Income Tax Returns) for tax years 2005 through 2013. The total of the false claims submitted as a result of CARAVEO's tax scheme totaled $698,367. ████████████████████

b. During the course of the investigation 259 items were identified as tax returns presented to the IRS, an agency of the United States Treasury Department, for the purpose of making a claim for a refund of federal income taxes. The returns were analyzed together as part of a scheme by the Ogden Fraud Detection Center (FDC) because the returns had the following characteristics.

- All were paper returns
- All income was listed as HSH (Household Employee) and as such was unsubstantiated
- All returns filed were 1040As
- All claimed 1 dependent, primarily nieces and nephews
- All refunds were Earned Income Tax Credit (EITC)
- All claimed an occupation as either Student/Labor or Student/Tutor
- 72 of the 95 individuals whose identifying information was used to prepare the false returns were Colorado Department of Corrections inmates
- The form fields contained the individual inmate's name and listed one of seven addresses located in the Colorado cities of Delta, Denver, Colorado

19

Attachment 1, Objections to Presentence Investigation Report

CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.

Springs, and Pueblo.

- None of the tax returns reflected a tax return preparer
- All of the tax returns reflected wages but did not have a Form W-2, or suitable substitute, attached as required when filing a paper return.
- All Wage, EITC, and refund amounts were identical with respect to the tax year, 2005 through 2013 ███████ █ ████████████████

c. A review of the dates on which returns were received by the IRS, as shown on ████████████, shows a pattern utilized by CARAVEO. False returns were typically filed in groups for the 3 tax years prior to the year of filing ███████████

d. One of the scheme's co-conspirators (S. CARAVEO, LUCERO, or ARAGON) would then follow CARAVEO's direction which including mailing the false returns to the IRS. █████████████

e. S. CARAVEO first became aware of CARAVEO's illegal tax scheme when she started dating him in 2004. CARAVEO told her that he "made money from Uncle Sam" by filling out tax Forms. At the time she, agreed to let CARAVEO use her address which allowed him to have refund checks the false returns generated sent to her house ██████████████ █████ ██████████

f. During recorded conversations of prison telephone calls, CARAVEO and S. CARAVEO talked about the preparation and filing of the returns with the IRS. Several hundred conversations took place between October 2008 and March 2014. Some of the more notable conversations included:

  - December 18, 2008. S. CARAVEO tells CARAVEO that she had located the discovery paperwork from his 2007 state criminal charges. CARAVEO then asks her to send the documents to him. Included in the documents were copies of false tax returns that he would go on to use for the tax refund scheme he would start while at the Sterling Correctional

20

Attachment 1, Objections to Presentence Investigation Report

IRS_00002435

CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.

Facility ████████████    ████████    ████████████

████████████████████████████████████

- January 9, 2009. CARAVEO gives LUCERO a series of social security numbers. He wants her to call the IRS information number to find out the status of the false returns being processed. ██████████ ██ ██████

  ██████

- January 16, 2009. CARAVEO and S. CARAVEO discuss CHAVEZ and Melanie Palumbo's involvement in the scheme. The two talk about Palumbo receiving $400 for each refund check she's involved in either receiving and or processing. Also talk of trying to cut CHAVEZ out of his share of recently arrived refund checks that were mailed to Palumbo's house. ████████████████

- January 29, 2009. CARAVEO expresses his concern to S. CARAVEO that Palumbo is using her real name when making J-Pay deposits into his and other inmates' accounts. CARAVEO tells S. CARAVEO that this could cause problems. ████████████████████

- March 17, 2009. CARAVEO tells S. CARAVEO that he was questioned by SCF staff that day concerning the financial transactions occurring in his prison account. The staff asked him who "beans" was and why he talked to that person in code. ████████████████

- March 22, 2009. CARAVEO asks S. CARAVEO if she's been saving any of the tax refund money in her bank account. S.CARAVEO tells him no alluding to her not wanting to leave a "paper trail." ██████████

  ████████

- March 27, 2009. LUCERO tells CARAVEO that she is going to approach her friend Tonya (Barrett) to see if they can use her address in the scheme.

Attachment 1, Objections to Presentence Investigation Report

IRS_00002436

> **CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
> DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.**

This would enable refund checks to be sent to the home she shares with another friend of LUCERO, Jennifer Leff. ███████████

- April 22, 2009.  CARAVEO and LUCERO talk about how to divide a batch of refund checks that recently arrived.  The two refer to a list containing numbers that both have access to.  CARAVEO dictates which number is to get funds and how much.  The two also talk about the CMHI scheme. ██████████████

- June 2, 2009.  LUCERO informs CARAVEO that a $2,800 refund check had just arrived at one of her Delta, Colorado locations.  CARAVEO instructs her how to disburse the funds including $200 going to CHAVEZ. ██████████████

- June 18, 2009.  S.CARAVEO informs CARAVEO that she was able to cash a refund check that Palumbo recently received.  CARAVEO tells her to make $100 deposits into both his and CHAVEZ's accounts. ████ ██████████████

- July 8, 2009.  Reference to 2 refund checks LUCERO received 2 days prior.  CARAVEO wants her to wire him $200,  wire an inmate named "Rapue" $500, and keep the remaining amount for herself. ████████ ██████████.  During a call later that day S. CARAVEO tells CARAVEO that LUCERO sent her a certified letter but she wasn't home to sign for the package.  CARAVEO tells S. CARAVEO that the parcel will contain $1,800 cash. ████████████

- July 23, 2009.  CARAVEO asks LUCERO if the Columbia Street location in Delta Colorado is still a good address to use on returns.  LUCERO tells him it is still good and to use it. ██████████████

Attachment 1, Objections to Presentence Investigation Report

IRS_00002437

**CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION. DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.**

- August 13, 2009. S.CARAVEO tells CARAVEO that Michelle Mann received and forwarded 2 refund checks to her for cashing. Mann lives on Eaton Street in Delta, Colorado. CARAVEO instructs S.CARAVEO to cash the checks and send both him and CHAVEZ $300 each. S. CARAVEO tells him she prefers to use MoneyGram to wire money. ████████████████████████████

- August 27, 2009. LUCERO, now out of jail, is living in Olathe, Colorado. LUCERO's husband has 2 refund checks that arrived while she was in prison that CARAVEO tells her she needs to retrieve. LUCERO tells him there is a place where she's living now that will be able to cash the refund checks. LUCERO tells CARAVEO that previously her boyfriend who works at Rent a Center was cashing the checks for her. ████████████ ████████████

- September 18, 2009. S.CARAVEO traveled to Delta to retrieve the refund checks from Michelle Mann. She tells CARAVEO that she was able to cash all but one of the refund checks. ████████████████████ ██████

- September 20, 2009. CARAVEO instructs S. CARAVEO to pay him $500 and CHAVEZ $400 from the refund check money she recently acquired. ████████████████████████

- September 22, 2009. S. CARAVEO has been instructed by CARAVEO to make deposits into several inmate accounts. She is nervous and unsure how to do so. CARAVEO tells her to use LUCERO's procedure which is to get other people she knows to make the deposits for her. ████████ ████████████████████

- October 6, 2009. S. CARAVEO tells CARAVEO that Palumbo received 4 refund checks. S. CARAVEO tells CARAVEO that she needs for him to

Attachment 1, Objections to Presentence Investigation Report

IRS_00002438

**CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION. DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.**

send her POA Forms so she can cash the checks. Mention of the use of invisible ink. Also talk of S. CARAVEO needing to find a new location to cash the checks at. █████████████████████

- October 14, 2009. S. CARAVEO was able to cash 2 refund checks by depositing them into the bank account of a friend of hers. CARAVEO instructs her to send him $500 and CHAVEZ $400. ██████████
█████████████

- January 1, 2010. LUCERO tells CARAVEO that she was transferred to a live representative when she called the IRS information line. This concerned her, she doesn't feel comfortable talking to a live person to find out the status of returns being processed. CARAVEO tells her to use the IRS web site instead. ████████████████████

- January 14, 2010. CARAVEO tells S. CARAVEO he has some new returns ready to be sent out. They talk about the address that will be used. At 18:15 the two talk about where the returns were supposed to be sent. Mention of a lesbian couple (Jennifer Leff and Tonya Barrett)....and how the refund checks they're waiting for are supposed to be arriving there.
████████████████████

- March 22, 2012. LUCERO is concerned, the IRS (S/A Romero) visited on Monday. Tells Raul in code it's about the false returns and refund checks. LUCERO infers she lied to investigators. LUCERO assures CARAEO they IRS doesn't have nothing....just an investigation. CARAVEO tells LUCERO she shouldn't have talked to the investigators without a lawyer. CARAVEO wants LUCERO to text S. CARAVEO to let her know what's going on. ████████████████████

████████████████████

Attachment 1, Objections to Presentence Investigation Report

IRS_00002439

**CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION. DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.**

a. The claims filed as a result of the scheme orchestrated by CARAVEO were false, fictitious and fraudulent on their face because the inmate identities used to file the claims were obtained by CARAVEO for the sole purpose of filing false tax returns. In many instances the inmates whose identities CARAVEO used to prepare the false returns had been incarcerated during the years the returns were filed for ▮▮▮▮▮▮

b. Each return submitted, as a result of CARAVEO's scheme, was identical with respect to year being filed. The wage amounts, EITC deduction, occupation, and refund amounts were identical ▮▮▮▮▮▮

c. CARAVEO obtained identifying information from inmates he was incarcerated with at the time. In some instances the inmates were promised a small fee for the use of his name, date of birth, and SSN. At no time did CARAVEO tell the inmate that he would use their information to prepare and submit several false income tax returns. The inmates whose information CARAVEO used, without being given permission to file income tax returns, included.

- Brown, Spencer A.E. ▮▮▮▮▮▮
- Dallas, Jerome R ▮▮▮▮
- Espinal ,George R ▮▮▮
- Gallardo, Lawrence J ▮▮▮
- Garcia JR, Joseph D ▮▮▮
- Gary, Mario C
- Giron, Donnie R. ▮▮▮
- Hannam, Adam E. ▮▮▮
- Maez, Richard G ▮▮▮
- Mousseau, Matthew J. ▮▮▮
- Pierce, Victor A ▮▮▮
- Roebuck, David ▮▮▮
- Romero, Joshua R. ▮▮▮

25

Attachment 1, Objections to Presentence Investigation Report

IRS_00002440

CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.

- Sullivan, Connor M. ████
- Trujillo, Richard D████
- Winder, Craig C. ████

████████████████████████████████

a. The false returns that were prepared as a result of CARAVEO's scheme showed a pattern of false information that included fabricated or inflated total wage figures (described as "HSH" or "household help" income generally between $7,300 and $8,400) that qualified clients for maximum or near maximum EITC amounts. Additionally, the returns listed dependents that were in actuality Colorado Department of Corrections inmates. The returns also listed repeating occupations such as "student" and "Laborer" ████████

████████████████

██ ████████████████████████

a. CARAVEO was unable to send the false returns directly to the IRS while he was incarcerated in The Colorado Department of corrections. This was due to the return address being a DOC facility, which would raise a red flag with the IRS, and the volume of falsified returns he was filing. It's not illegal to file a return if you're imprisoned. It is illegal, however, to file multiple returns with false information. It was for this reason that CARAVEO enlisted the help of several people who were not in prison. CARAVEO would send these individuals (S. CARAVEO, LUCERO or ARAGON) packages containing multiple Forms 1040A. The Forms had been prepared using the identifying information of individuals CARAVEO was incarcerated with at the time. In some instances the individual he was sending the returns to (S. CARAVEO, LUCERO or ARAGON) would have to add additional information such as an address that would ensure a refund check, were it to be issued, would be easy to be retrieve. The individuals who conspired to help with CARAVEO's scheme were:

- Sabrina Caraveo (CARAVEO's Wife)
- Pamila Lucero (CARAVEO's Friend)

26

Attachment 1, Objections to Presentence Investigation Report

IRS_00002441

CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.

- Carolina Aragon (CARAVEO's Friend)
- Eugene Chavez (Fellow DOC Inmate)
- Melanie Palumbo (Cousin of S. CARAVEO)
- Nancy Guzman (Wife of SCF Inmate)
- Christina Portillos (Friend of LUCERO)

b. Beginning in late 2008 CHAVEZ acted as an intermediary between CARAVEO and S. CARAVEO's cousin Melanie Palumbo. CHAVEZ and Palumbo had once been involved in a romantic relationship and reconnected when CARAVEO arrived at the SCF in late 2008. CHAVEZ called Palumbo on a regular basis to have her perform tasks related to the tax scheme. On December 11, 2008 CHAVEZ contacted Palumbo and discussed the tax scheme he was involved with. During the call CHAVEZ told Palumbo that he was going to send her a form 1040A that he needed her to complete. For her participation CHAVEZ said he'd compensate Palumbo financially beginning with a $500 payment ██████████████████████ During her August 2014 interview Palumbo admitted to having been involved in the tax scheme by receiving tax Forms from CHAVEZ and "piggybacking" the returns to the IRS. Piggybacking refers to the re-mailing of a package because certain parcels, such as tax returns addressed to the IRS, are not allowed to be sent directly from DOC inmates ███████████

b. S. CARAVEO would then follow CARAVEO's direction which included mailing the false returns to the IRS ██████████████

c. S. CARAVEO has admitted to sending blank Forms 1040A to other inmates at SCF beginning in early 2009. S. CARAVEO did so with full knowledge that the Forms 1040A would then be given to CARAVEO who would then prepare false Forms 1040A in order to obtain tax refunds. CARAVEO was continuing the refund scheme that he began during his time at CMHI ██████████████ █ ██████████

d. On December 15, 2008, during a recorded phone call, CARAVEO asked LUCERO if she would be willing to cash tax refund checks for him. CARAVEO told her she would be

Attachment 1, Objections to Presentence Investigation Report

IRS_00002442

CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.

paid a % of each check she was able to cash.  LUCERO agreed to help. ████████

████████████

e.  On August 4, 2012 during a recorded phone conversation CARAVEO asked ARAGON if
    she would be willing to take receipt of and mail false returns for him in addition to
    preparing false returns.  ARAGON agreed to help ████████████████████
    During a May 2014 interview ARAGON admitted to being in contact with co-
    conspirators CARAVEO, CHAVEZ, and LUCERO ████████████  ARAGON also
    admitted to taking receipt of packages sent to her form CARAVEO containing tax
    returns.  She would then mail the returns to one of the IRS Service Centers.  ARAGON
    would also regularly call the IRS information line to obtain updates as to the status of
    false returns that had been filed ██████████████████

████████████████████████████████████████████████

a.  Appendix B contains a list of the returns associated with the violations recommended in
    this report.  72 of the 95 individuals whose identifying information was used to prepare
    the false returns were Colorado Department of Corrections inmates ████████████

    ██████████

b.  Each return submitted as a result of CARAVEO's scheme was identical with respect to
    year being filed.  The wage amounts, EITC deduction, occupation, and refund amounts
    were identical ████████

c.  S. CARAVEO verified that CARAVEO was the individual whose handwriting was on a
    majority of the Forms 1040A that were submitted to the IRS beginning in late 2008.

    ████████████████

████████████████  ████████

████████████████████████

█  ████████████████████████████████

Attachment 1, Objections to Presentence Investigation Report

IRS_00002443

**CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION. DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.**

PAMILA JEAN LUCERO

&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;

&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;

a. On December 15, 2008, during a recorded telephone conversation with CARAVEO, LUCERO agreed to participate in the tax refund scheme. CARAVEO told her during the call that she would be paid a percentage of each tax refund check she cashed. &#9608;&#9608;&#9608;&#9608;&#9608;&#9608;

&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;

a. CARAVEO's scheme resulted in the submission of 259 Forms 1040A to the IRS. 96 of the false returns submitted to the IRS listed addresses that were obtained by LUCERO. LUCERO took receipt of 56 illegally obtained income tax refund checks and cashed them. The total amount of the 56 refund checks she cashed was $140,913.02. &#9608;&#9608;&#9608;&#9608;&#9608;&#9608;

&#9608;&#9608;&#9608;

&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;

&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;

a. During the course of this investigation 259 items were identified as tax returns presented to the IRS for the purpose of making a claim for a refund of federal income taxes. The tax returns listed similar addresses and refund amounts. Additionally, none of the tax returns reflected a tax return preparer. All of the tax returns reflected wages but did not have a Form W-2, or suitable substitute, attached as required when filing a paper return. Nearly all of the returns claimed the Earned Income Credit. Ninety-six (96) of the false returns listed a home address on page 1 of the Form 1040A with ties to LUCERO. LUCERO was friends with each of the individuals living at the addresses listed. &#9608;&#9608;&#9608;

&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;&#9608;

34

Attachment 1, Objections to Presentence Investigation Report

**CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION. DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.**

█████████████████████████

a. The 259 claims filed as a result of the scheme orchestrated by CARAVEO were false, fictitious and fraudulent on their face because the inmate identities used to file the claims were obtained by CARAVEO for the sole purpose of filing false tax returns. In many instances the inmates whose identities CARAVEO used to prepare the false returns had been incarcerated during the years the returns were filed for. ████████

b. Each return submitted as a result of CARAVEO's scheme was identical with other respective returns for the same year. The wage amounts, EITC deduction, occupation, and refund amounts were identical. ████████

c. CARAVEO obtained identifying information from inmates he was incarcerated with at the time. In some instances the inmate were promised a small fee for the use of his name, date of birth, and SSN. At no time did CARAVEO tell the inmate that he would use their information to prepare and submit several false income tax returns. The inmates whose information CARAVEO used, without being given permission to file income tax returns, included.

- Brown, Spencer A.E. ████ ████
- Dallas, Jerome R ████
- Espinal ,George R ████
- Gallardo, Lawrence J ████
- Garcia JR, Joseph D ████
- Giron, Donnie R. ████
- Hannam, Adam E. ████
- Mousseau, Matthew J. ████
- Roebuck, David ████
- Romero, Joshua R. ████

35

Attachment 1, Objections to Presentence Investigation Report

CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.

- Sullivan, Connor M. ███
- Trujillo, Richard D ███

a. The false returns that were prepared as a result of CARAVEO's scheme showed a pattern of false information that included fabricated or inflated total wage figures (described as "HSH" or "household help" income generally between $7,300 and $8,400) that qualified clients for maximum or near maximum EITC amounts. Additionally, the returns listed dependents that were in actuality Colorado Department of Corrections inmates. The returns also listed repeating occupations such as "student" and "Laborer." ███

b. LUCERO was the primary individual that cashed refund checks for CARAVEO in 2009 and 2010. She did this by falsifying Power of Attorney Forms and presenting them to be used to cash the checks. ███

c. LUCERO was also tasked with finding addresses that could be used on the false returns. A majority of the returns filed used the addresses of individuals she knew in the cities of Delta and Colorado Springs Colorado. A large % of the refund checks generated as a result of CARAVEO's scheme were mailed to one of the addresses with ties to LUCERO. ███

d. Upon receipt of IRS correspondence or an income tax refund check the individual would then notify LUCERO so that she could make arrangements to have it mailed to her or pick it up in person. Once she took possession of a tax refund check LUCERO would cash it at a check cashing business using a false Power of Attorney form that was sent to her by CARAVEO or CHAVEZ. ███

e. LUCERO would then distribute the cash per CARAVEO's direction. Funds would be sent to CARAVEO and CHAVEZ either through Western Union wire

Attachment 1, Objections to Presentence Investigation Report

IRS_00002446

> **CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.**
> **DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.**

transfers or cash deposits into his prisoner J-Pay account. ▮▮▮▮▮▮

f.  Additionally, S. CARAVEO would deliver refund checks to LUCERO as she received them.  LUCERO would then cash the checks and give the money to S. CARAVEO. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Attachment 1, Objections to Presentence Investigation Report

IRS_00002447



**CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION. DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.**

CHRISTINA T PORTILLOS

Attachment 1, Objections to Presentence Investigation Report

IRS_00002448

CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.

a. Between January 26, 2010 and December 13, 2012 CARAVEO and LUCERO had thirty-eight (38) monitored phone conversations where PORTILLOS and her involvement in the tax scheme was discussed. Some of the more notable conversations are listed below:

   i. January 26, 2010, CARAVEO and LUCERO discuss tax scheme related mail being sent to PORTILLOS house in Colorado Springs, Colorado.

   ii. February 26, 2010, LUCERO informs CARAVEO that one of the refund checks is being sent to PORTILLOS house.

   iii. June 28, 2010, CARAVEO and LUCERO discuss PORTILLOS culpable role in the scheme.

   iv. August 6, 2010. CARAVEO speaks with LUCERO who is with PORTILLOS at the time. During the conversation CARAVEO speaks with PORTILLOS and thanks her for her help with the tax scheme.

   v. September 21, 2010, CARAVEO and LUCERO discuss PORTILLOS role in the scheme.

   vi. January 5, 2012, CARAVEO contacts LUCERO while she is at PORTILLOS house. CARAVEO has a brief conversation with PORTILLOS.

   vii. April 9, 2012, CARAVEO calls LUCERO who was recently visited by IRS-CI Agents. LUCERO, whom is at PORTILLOS house at the time has

Attachment 1, Objections to Presentence Investigation Report

IRS_00002449

> **CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.**
> **DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.**

been informed of the situation by LUCERO. ▮

    viii.  July 26, 2012, CARAVEO calls LUCERO while she's at PORTILLOS house. CARAVEO speaks with LUCERO then has a brief conversation with PORTILLOS. ▮

    ix.  November 2, 2012, LUCERO informs CARAVEO that the IRS "has been contacting her girls" concerning the tax scheme. CARAVEO tells LUCERO to "make sure nobody talks." LUCERO tells CARAVEO that she "instructed her people to say nothing." ▮

    x.  December 13, 2012, LUCERO tells CARAVEO that the IRS came to see PORTILLOS. LUCERO tells CARAVEO that "nobody is talking." ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

a. Appendix B contains a list of the returns associated with the violations recommended in this report. 72 of the 95 individuals whose identifying information was used to prepare the false returns were Colorado Department of Corrections inmates ▮

b. Each return submitted as a result of CARAVEO's scheme was identical with respect to year being filed. The wage amounts, EITC deduction, occupation, and refund amounts were identical ▮

c. S. CARAVEO verified that CARAVEO was the individual whose handwriting was on a majority of the Forms 1040A that were submitted to the IRS beginning in late 2008. ▮

d. During her December 2012 interview PORTILLOS confirmed that she lived at 1044

Attachment 1, Objections to Presentence Investigation Report

IRS_00002450

CAUTION: THIS PAGE CONTAINS SECRET GRAND JURY INFORMATION.
DISSEMINATE ONLY PURSUANT TO RULE 6(e), FED.R, CRIM.P.

Baltic Street, Colorado Springs, Colorado in 2009 and 2010.  At the time of her interview
PORTILLOS was still living at the Baltic Street address. ████████████████

e.  During her December 2012 interview PORTILLOS was asked how it was that so many
refund checks for different individuals could be mailed to her house.  PORTILLOS
response was that she had been having problems with her mail service.

f.  During her December 2012 interview PORTILLOS denied ever being asked to receive
mail for other individuals at her home. ████████████████

g.  During her December 2012 interview PORTILLOS denied having any knowledge as to
how LUCERO could come into possession of refund checks that had been mailed to her
house. ████████████████

h.  During her December 2012 interview PORTILLOS was asked if she had ever heard
LUCERO mention CARAVEO or CHAVEZ names.  PORTILLOS did not indicate that
she had heard CARAVEO's name but she was familiar with CHAVEZ's first name.
PORTILLOS thought that LUCERO had at one time dated a man named Eugene.

i.  Appendix S lists the thirty-six (36) false returns that were prepared and filed using
PORTILLOS address in Colorado Springs, Colorado.  False claims totaling $98,499 were
listed on the false returns.   As a result of PORTILLOS participation ten (10) refund
checks were issued and cashed totaling $23,294.  All 10 returns were cashed by
LUCERO. ████████████

Attachment 1, Objections to Presentence Investigation Report

IRS_00002451