IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 15-cr-149-RM-MJW-6

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

CRISTINA PORTILLOS,

    Defendant.
_____

**REPORTER'S TRANSCRIPT**
Motion Hearing
_____

      Proceedings before the HONORABLE RAYMOND P. MOORE,
Judge, United States District Court for the District of
Colorado, commencing at 1 p.m., on the 29th day of March, 2016,
in Courtroom A601, United States Courthouse, Denver, Colorado.

**APPEARANCES**

For the Plaintiff:          Martha Paluch & Bryan Fields
For the Defendant:          John Mosby

TAMMY HOFFSCHILDT, Official Reporter
901 19th Street, Room A251
Denver, Colorado, 80294
(303) 292-1088

Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

```
 1          (In open court at 12:58 p.m.)

 2          THE COURT:  Please be seated.  15-cr-149, United

 3   States versus Cristina Portillos.  Here for motions hearing.

 4   Take appearances, please.

 5          MS. PALUCH:  Good afternoon, Your Honor.

 6   Martha Paluch and Bryan Fields, appearing on behalf of the

 7   United States.

 8          THE COURT:  Good afternoon to both of you.  Mr. Mosby.

 9          MR. MOSBY:  Good afternoon, Your Honor.  John Mosby

10   and Cristina Portillos, on behalf of the Defendants.

11          THE COURT:  And good morning -- good morning -- good

12   afternoon to both of you, as well.

13          So I guess we are here, there are actually three

14   motions that are still on the record, so to speak.  One is

15   moot; and that is, Mr. Mosby filed, yesterday, a motion to

16   exclude Ms. Portillos' presence.  I have no difficulty with

17   your filing the motion.  My preference is that pretty much

18   always bring the Defendant in on motions, and so I asked and

19   thankful that you contacted your client and that she is here.

20          MR. MOSBY:  No, Your Honor, I always tell my client

21   they have to appear for every hearing.  It was my mistake,

22   because I got stuck in California last week, and I was out of

23   my office and, quite frankly, I did not tell her.

24          THE COURT:  Whatever it is, I have no problem, the

25   motion is moot, so it's denied as moot in light of the fact
```

1   that she is here, and I appreciate the fact that you let me

2   know, and you let her know.

3               MR. MOSBY:  It was all on me.

4               THE COURT:  That's fine.

5               THE COURT:  You want to fall on any swords?

6               MS. PALUCH:  No.

7               THE COURT:  That's what happens when you catch someone

8   completely off guard.

9               There are -- there are two motions that remain.  The

10  first is the motions -- Motion For *James* Hearing and the second

11  is a Motion To Suppress.  I want to deal with the motion for

12  the *James* hearing first, because it is a remnant, if you would,

13  from our last hearing.

14              At the last hearing, what I said is, I'm not going to

15  have a *James* hearing.  I'm going to do it on paper.  Give me a

16  proffer.  And Ms. Paluch, in fact, gave me -- has now filed a

17  proffer, and, in fact, has given me three versions of the same

18  *James* log, and just to be clear, for the sake of the record, my

19  understanding is this, the first proffer contained a log,

20  because the chart that was used to identify the various codes,

21  associated with the statements that were being proffered for

22  admission cut off certain matters.  It was given a second time

23  and then a third problem developed, and it was given a third

24  time.

25              It's the same log in all three instances, is it not,

 1    Ms. Paluch?

 2        *MS. PALUCH:*  With one correction, Your Honor.  The

 3    first time -- well, there was the first log.  The second log

 4    was a supplemental log, where we did add a few calls.  The

 5    third call is where we realized things were cut off and so we

 6    corrected it.

 7        *THE COURT:*  And so just to be clear **349** was the first

 8    *James* proffer, the supplemental log was **365** and then the

 9    corrected log was **374**.

10        *MS. PALUCH:*  That's correct, Your Honor.

11        *THE COURT:*  As I look at -- and Mr. Mosby filed a

12    response, an objection for the proffer, which is at **377**, and

13    the reality of it is this, as I understand it, there are

14    three -- I'm going to call them three, and then I will let you,

15    counsel, argue, briefly, but there are three objections that

16    are made.  One is specific to a statement of April 27, 2010.

17    That objection is to the insertion of Ms. Portillos' name in

18    the -- in the log.  I'm assuming that the log is referring to

19    some call, and for clarity you included who the call -- who the

20    reference was; is that right?

21        *MS. PALUCH:*  That was based on our evidence, based on

22    who the return was mailed to, but if I could just interject,

23    that wouldn't be something presented to the jury, obviously.

24    The jury would just see whatever the call says.  We just did

25    that for our internal purposes, why it was bracketed.

1          THE COURT:  All right.  So with regard to that

2   objection, it really is an objection to the insertion of

3   something that is not really going to be inserted in the

4   document that's given to the jury.  So the objection is

5   essentially moot.

6          The other two objections are as follows; one, there is

7   an objection that applies to every statement that is contained

8   within the *James* log, and that objection is that Ms. Portillos

9   was not a member of a conspiracy, and therefore the -- since

10  she is not a member of the conspiracy, these various

11  co-conspirator statements cannot be introduced against her.

12  There is the further statement that, in two instances, I

13  believe, and if I have missed one I will see where that is, but

14  with respect to statements under the dates of July 31, 2010,

15  and again there's a reference to page numbers, but we have

16  different proffers, so the page numbers are not what I'm going

17  to use.  I'm going to use the conversation dates, because I

18  think those are cleaner.  Let me see if I can find it.  There

19  is also a statement with respect to the conversation of July

20  2010, that the statements are not in furtherance of the

21  conspiracy.  So there is a -- a -- kind of, if you would,

22  standing objection across the entire scope of the proffered

23  statements that they are not -- that Ms. Portillos is not a

24  member of the conspiracy and therefore they are not admissible

25  against her, and there's a further statement, with respect to a

1    particular conversation -- or rather particular statements of

2    July 10, 2010, that those statements were not in furtherance of

3    the conspiracy.

4         So let me hear from you, Mr. Mosby, in case I have

5    done an injustice in my characterization, and in the event that

6    I haven't, then I will take argument on it, as it's been

7    presented to me.

8         MR. MOSBY:  I think you have the issues perfectly.

9    And you stated those two specific objections with respect to

10   the July 10th and the August 6th statement, and, you know, I'm

11   a fast learner, one thing I learned from the last hearing is

12   that I don't have to say a lot, because I think that you have

13   already expressed my objections in terms of it.

14        So with that said, are you asking me now or --

15        THE COURT:  Well, the only thing that we're a little

16   off on, is I'm looking at your proffer -- excuse me your

17   objections, and I am at page seven of 13 --

18        MR. MOSBY:  Okay.

19        THE COURT:  -- and I see -- and I am referring to the

20   **377-1**.  I said in my characterization that the *not in*

21   *furtherance objection* was raised with respect to the

22   conversation of July 31.  I understood you to just now be

23   suggesting that perhaps it was with respect to the August 6th,

24   but as I look at this, it's not the August 6th, it's twice

25   stated with respect to the July 31, because the July 31

1   conversation spans two pages.

2        *MR. MOSBY:*  Yes.

3        *THE COURT:*  Okay.  All right.  So, look, let me

4   just -- you know, I have read it all, I understand it, I think,

5   I just want to give you an opportunity to say anything more you

6   want to.

7        *MR. MOSBY:*  Well, no, I'm not going to, you know, take

8   up any unnecessary time.

9        *THE COURT:*  All right.

10        *MR. MOSBY:*  With respect to the one statement, I think

11   we're talking about, it is -- it is the *bonus* statements.

12        *THE COURT:*  Right.

13        *MR. MOSBY:*  That, you know, I tried to put that in

14   context, by putting in a transcript from an earlier hearing.  I

15   also noted in that hearing that when Mr. Caraveo is saying *give*

16   *her a bonus*, Ms. Lucero never tells the Defendant the amount of

17   bonus or never tells the Defendant, *The bonus is sort of like*

18   *for helping us out.*  At that point she changes the

19   conversation.  And what the Government did leave out, in their

20   proffer is that when Lucero tells Ms. Portillos, *You are going*

21   *to get a bonus*, they go then to the line that and says, *Oh I*

22   *like bonus*.  They leave out the fact that she says, *I'm going*

23   *to get a what*?  But, in any event, I do not think that this is

24   in furtherance of the conspiracy.

25        Then switching over, Your Honor, and we make a

specific objection to the August 6th statement, the one that we

talk about, you know, forget the language, *I finally get to say*

*hello to the motherfucking integral part of the MOB*.  I put

another transcript in to try to put that, make it a tip to put

that in context, that Lucero had been trying to get Mr. Caraveo

to take a romantic interest in Ms. Portillos, and basically, he

is telling her what he is going to say when he -- he meets her.

That statement, basically, is to capture her attention.  I do

not think it's in furtherance of the conspiracy.  And the

Government's position is this is him showing his gratitude or

thanking her for what she has done.  To put that in context,

they then submit, to you, a statement saying that even

Mr. Caraveo's wife didn't know what MOB means.  She thought it

money over bitches, okay.  And there's no evidence, none, that

the Defendant had any idea what he was talking about, nor is

that ever placed in context either.

     *THE COURT:*  All right.  Ms. Paluch.  And before you

get started there's actually two things that I want to pick at

you about, a little bit.

     *MS. PALUCH:*  Certainly.

     *THE COURT:*  All right.  The first is, it is not

critical to this motion at all, it's just things itch in my

brain and I want answers, and this is one of those moments.

     From the proffer, if I have got this right, what I'm

told is that there were a number of checks that were -- excuse

| | |
|---|---|
| 1 | me, that's wrong.  There were a number of returns that use |
| 2 | Ms. Portillos' address.  I want to say the number was 30-some |
| 3 | odd, somewhere in that neighborhood, and then there were nine |
| 4 | checks that were issued by the IRS, in response to the returns |
| 5 | using Ms. Portillos' address and all of those -- each of those |
| 6 | nine checks was cashed by Ms. Lucero? |
| 7 |      *MS. PALUCH:*  That's correct. |
| 8 |      *THE COURT:*  And then when I looked at the Indictment, |
| 9 | I'm sitting and saying, all right, there's Count 1, which is |
| 10 | the conspiracy, and then there are, looks like, seven counts. |
| 11 | What am I missing?  Where do the other two checks go?  What am |
| 12 | I missing?  Or what am I not putting my arms around? |
| 13 |      *MS. PALUCH:*  So if we could back up, 36 returns were |
| 14 | filed using the Defendant's address, of those 36, the IRS |
| 15 | issued 14 returns.  Now, out of the returns -- meaning refunds. |
| 16 | Five of those, the inmates that were listed on the returns owed |
| 17 | child support or other, what we were calling, non-IRS |
| 18 | obligations. |
| 19 |      *THE COURT:*  So no check issued. |
| 20 |      *MS. PALUCH:*  Right.  So the money went to offset those |
| 21 | other obligations.  So that was five of them, but that was |
| 22 | money generated based on false returns. |
| 23 |      *THE COURT:*  Fine. |
| 24 |      *MS. PALUCH:*  So then nine checks were mailed to the |
| 25 | Defendant's address. |

1    THE COURT:  Right.

2    MS. PALUCH:  So we have a total of, out of everything,

3    36 returns using the Defendant's address, out of that we will

4    stick with the nine checks for simplicity.  What we've alleged

5    in the Indictment, Your Honor, in the conspiracy, is that over

6    250 false returns were submitted in this case.

7    THE COURT:  Forget the conspiracy count.  All that I'm

8    saying is if there's nine checks, why are there seven

9    substantive counts?

10    MS. PALUCH:  Right.  We picked seven.  We picked seven

11    out of the nine.

12    THE COURT:  That's all I wanted an explanation of,

13    because it was not clear to me, and it looks like this is going

14    to trial, and I wanted to, as quickly as possible, kind of

15    understand what am I missing, and the answer is nothing.  You

16    picked seven of nine.  Okay.  You have the right to do that.

17    MS. PALUCH:  Exactly, Your Honor, and if I could just

18    follow up on that point.  We intend to present evidence on all

19    36.  The 36 are encompassed in that 250.  So all 36 returns

20    that used the Defendant's address, we intend to have those

21    certified returns admitted into evidence, we intend to offer

22    calls that pertain to all 36.

23    THE COURT:  All right.

24    MS. PALUCH:  Now, when we get to the 287 charges, you

25    know, my understanding is that the Court would redact, and we

1    are only intending to present evidence for the 287 charges,

2    just those counts in which the Defendant was charged.  But as

3    for the conspiracy, we set forth 38 -- we pick out 38 returns

4    in this case.

5              THE COURT:  Okay.

6              MS. PALUCH:  The seven are subsumed in that 38, and we

7    intend to present evidence on all 38.

8              THE COURT:  All right.  And then the last thing -- or

9    the second to the last thing that I wanted to ask, before

10   letting you talk, is I think I know what you are doing, but I

11   want to make sure I know what you are doing, because if I'm

12   wrong about what you are doing, then I have got an issue.  In

13   your *James* log, as you go through, the vast overwhelming

14   majority of these statements are telephone calls from the DOC

15   to somebody or another.

16             MS. PALUCH:  Correct.

17             THE COURT:  Then at some point, and it begins on the

18   date of July 25th, 2014, you have various statements laid out

19   in your *James* log that come from Caraveo debrief, of Palombo

20   debrief, Aragon deposition, a Guzman debrief, and then

21   Archuletta debrief.

22             Now, if -- I need to know what you are telling me,

23   because there's two ways to look at this.  If you are telling

24   me that you intend to introduce the statements made at the

25   debrief, then I'm going to tell you that you are going to have

1    to convince me that those are in furtherance of the conspiracy,

2    because they are not.  If you are telling me that the things

3    that were said during the debriefing, which referred back to

4    earlier statements, you intend to introduce those earlier

5    statements through witness testimony or some other means, then

6    I understand and I don't have a problem.

7         *MS. PALUCH:*  It's the latter.

8         *THE COURT:*  It's just I want to be absolutely clear

9    which of these two it is.

10        *MS. PALUCH:*  Correct, Your Honor, and I am glad we are

11   clarifying this.  What we wanted to do is give Defense Counsel

12   notice that when these witnesses take the stand, they are going

13   to testify about things that were said to them during the

14   course and in furtherance of the conspiracy, and that was the

15   point --

16        *THE COURT:*  So it's the statements referred to during

17   the debriefs and the deposition, as opposed to the statement

18   made during the debrief?

19        *MS. PALUCH:*  Absolutely correct, Your Honor.

20        *THE COURT:*  Then we are on the same page.

21        *MS. PALUCH:*  Okay.  As to the first call, Your Honor,

22   which we will call the *bonus call*, I believe the question to me

23   is how is this call in furtherance of the conspiracy?

24        *THE COURT:*  Well I mean that is -- well.

25        *MS. PALUCH:*  An as --

1          THE COURT:  Go ahead.  Yes.

2          MS. PALUCH:  So I have a number of bases of admission

3    which we have listed on the far right-hand column of our *James*

4    log and I am going to go through these.  The whole point of the

5    conspiracy was to pay people on the outside to receive checks

6    at their home and have them cashed and the money is disbursed,

7    as the Court is well aware.

8          So this statement about the debrief, and first I would

9    like to respond to counsel's statement that we had somehow

10   omitted something from the proffer.  What the proffer did was

11   we just described, in general, what the call was.  But in the

12   log itself, Your Honor, it's a complete version of that call

13   and it says, he -- he made the statement that Lucero didn't

14   tell Ms. Portillos what Raul said about the statement, is what

15   I understood him to say here, Lucero says, *Raul said he is*

16   *going to give you a bonus since you have been a good worker.*

17   *Ms. Portillos, He is going to give me a what?*  Lucero, *A bonus.*

18   Portillos*, Oh I like bonus*, and then it goes on to say, *Oh, she*

19   *likes bonus and she needs it too, it's her birthday.  Her*

20   *birthday is on the 8th*.

21         So here is our position, Your Honor, as to how this

22   statement is in furtherance.  It promotes the objectives of the

23   conspiracy.  It reveals the existence of the conspiracy.  It's

24   a statement that's intended to induce others to assist in

25   carrying out the objectives of the conspiracy, because if

1    Ms. Portillos is getting paid for her involvement, she is more

2    likely to continue in that involvement.  E, it identifies the

3    conspirators or the roles of the conspirator.  F, statements it

4    explains important events in the conspiracy.  G, it's designed

5    to give directions or facilitate the objectives of the

6    conspiracy.  He is directing Lucero to say, *Tell her I'm going*

7    *to give her a bonus*.  H, it keeps them -- it's a statement

8    that's designed to advise co-conspirators of the progress of

9    the conspiracy, keep them abreast of activities associated with

10   the conspiracy.  L, it promotes or prompts the listener to

11   respond in a way that facilitates carrying out the objectives

12   of the conspiracy, and it's the Government's theory, that by

13   paying people and telling Ms. Portillos she would be paid, it's

14   promoting her continued involvement.

15        So that is our position as to why this statement is

16   admissible.  She -- we believe the evidence set forth in our

17   proffer establishes that she is a member of this conspiracy.

18   This is a statement that was made during the course of the

19   conspiracy, and it's in furtherance of the conspiracy for the

20   reasons I have just set forth.

21        If the Court would like me now to address the August

22   6th call I can do that?

23        *THE COURT:*  Go ahead.

24        *MS. PALUCH:*  Okay.  The August 6th call is the call in

25   which -- it's a lengthy call, but it's also when Ms. Portillos

gets on the phone, and I am -- don't think -- if the Court

would like to hear the call, we certainly would play it for

you, but I don't believe that's necessary at this point.  We

can make the proffer.

I think the issue here is, I believe, counsel's

statement was this -- this entry is somehow --

THE COURT:  I'm smiling only because if I said, yeah,

I want to hear it, I don't see a computer where you could

actually play it for me.  You have got an agent nodding in the

back.  All right.  There we go.  Go ahead.

MS. PALUCH:  I think the assertion here is that

Caraveo was somehow hitting on Ms. Portillos and that the MOB

is somehow tied to this potential courting, if you will, of

her.  If that's going to be the Defense, in this case, the

Government will be prepared and will seek permission to provide

what we will call rebuttal romantic calls, because this was the

MO of Raul Caraveo he did this type of thing with numerous of

the other co-conspirators.  We have numerous calls, there are

over 3,000 calls in this case, which is why this *James* log took

forever to pull together.

He does this with other women.  He says numerous

inappropriate sexual things to the other women on the calls.

So I think it could turn into a mini trial of all of the -- if

we want to say -- wooing that Raul Caraveo was trying to do.

Now when the jury listens to the call, and they hear

1    him call her an integral part of the MOB, and she says, *Yes,*

2    *yeah, you know, what to do hijita.   Thanks a lot for*

3    *everything.   All right.   Oh no, yeah, I agree*, it's our

4    assertion that there's no confusion as to what is being said on

5    the tape and that's for the jury to decide.

6         I will move to now, Your Honor, is how we assert that

7    this is in furtherance.   A, it is a statement in which, anyway,

8    promotes the objectives of the conspiracy.   He is thanking her

9    for her participation.   It's a statement which reveals the

10   existence of the conspiracy.   It's a statement which is

11   intended to recruit or to induce others to assist in carrying

12   out the objectives of the conspiracy.   It identifies the

13   conspirators --

14        THE COURT:  I read it.   I mean, I read it.

15        MS. PALUCH:  Yeah.   So I guess what I'm saying is

16   we've set forth numerous bases for information for this call.

17        THE COURT:  All right.

18        MS. PALUCH:  Would the Court like further argument on

19   this call?

20        THE COURT:  No, no.   I am prepared to rule.   I have to

21   determine three things in order to permit, at this juncture,

22   these various statements to be admitted.   I have to conclude,

23   on the basis of what has been submitted to me, that there is a

24   conspiracy, that the speakers -- well -- and the Defendant

25   against whom it's offered against are members of the

1    conspiracy, and that the statements tendered are in furtherance

2    of the conspiracy, and I have to do so by a preponderance of

3    evidence, and I so find as to each of those.

4           Let me just say in broad terms the following, much of

5    what is being asked of me is to take the role of juror and

6    interpret calls.

7           Now, I grant you, that I have the right, and counsel

8    has the absolute right to ask me to put the statement -- to

9    provide the context, what he or she believes to be the context

10   for the statements, and that I should look at it in a proper

11   context.  I don't have any quarrel with that.  But where the

12   context does not necessarily resolve the matter, and what I

13   mean by that is where it is -- what's being said to me here is,

14   look, here is the context and here is how you should interpret

15   the statement.  Frankly, I'm not going to take that matter from

16   the jury.  I think that a prima facie case has been made that

17   there is a conspiracy, and there's certainly no objection made

18   as to the existence of the conspiracy.  There is no objection

19   made as to the -- as to the membership in the conspiracy of

20   everyone that is a named defendant in this matter, although

21   there is an objection to whether or not Ms. Portillos is a

22   member of the conspiracy.

23          I believe that a prima facie case exists.  I believe

24   that the Government has established, by a preponderance of

25   evidence, that, in fact, she is a member of the conspiracy.

1 Very simply, the facts upon which I rely on my determination

2 are the following, first, there are a number, 30-some-odd

3 returns that are filed using her address.  There are nine

4 checks that are mailed to that address, and each of those nine

5 checks ends up being cashed by a co-conspirator; I believe it

6 is Ms. Guzman.

7     *MS. PALUCH:*  Lucero, Your Honor.

8     *THE COURT:*  Lucero, I'm sorry.  Ms. Lucero, who cashes

9 each of those checks.  That, in and of itself, is strong

10 evidence of a more than a mere familiarity with each other, but

11 the evidence does not stop there.  There's evidence that this

12 conspiracy is being discussed, and you can call the July 31

13 call any number of things, but certainly as it pertains to the

14 conversation between Mr. Caraveo and Ms. Lucero.  There's clear

15 discussion about what it is about, and the fact that no one is

16 either -- Ms. Lucero has no discomfort, whatsoever, in

17 discussing matters with Mr. Caraveo in the presence of

18 Ms. Guzman -- excuse me -- in the presence of Ms. Portillos,

19 is, itself, some mild additional support, but let's not go

20 there.

21    What we have are statements that are presented to me,

22 and context claims aside, the statements are very specific, and

23 I have even been given a transcript, Mr. Caraveo says, *And tell*

24 *Cristina she is -- no, I don't want to make her feel like that,*

25 *but tell her she has been a good worker, so I'm going to give*

1    *her a little bonus.*  Lucero says*, Oh yeah.*  Caraveo responds,

2    *Yeah, tell her that.  Tell her.*  Ms. Lucero then says, *Raul*

3    *said he is going to give you a bonus since you have been a good*

4    *worker.*  Ms. Portillos responds, *He is going to give me a what*?

5    Ms. Lucero said, *A bonus*, and Ms. Portillos says, *Oh, I like*

6    *bonuses.*

7             While you can argue and will have the opportunity to

8    argue to a jury what that means, I take that as evidence that

9    the Government can rely upon in its claim that Ms. Portillos is

10   a member of the conspiracy.

11            Further, there is a subsequent conversation where

12   Mr. Caraveo, on August 6th, where Mr. Caraveo is, and again the

13   statement is, *Finally get to say what's up to one of the*

14   *mother-fucking integral parts of the MOB.  You feel me*?  He is

15   talking to Ms. Portillos.  She responds, *Yes*.  Again, one can

16   put whatever context one wants to or interpretation of this

17   that one wants to, and each side will get an opportunity to

18   argue that to the jury, but from the perspective of -- my

19   perspective, there is no indication of some confusion or lack

20   of understanding and towards the end Mr. Caraveo is thanking

21   her for -- he wanted to say thank you, and she responds, she

22   thanks him back, *Okay thanks*.

23            The conversations, even with the clarifications, slash

24   context being given to me by the Defendant, are enough to

25   suggest that when you put all of this together, there is

1   probable cause to believe that Ms. Portillos is a member of the

2   conspiracy.  Ultimately, of course, that is a question for the

3   jury to decide.  And then the last piece of it is this, and

4   that is, that she is interviewed by the agent, and again I'm

5   not going to read the exact transcript, but the gist of it is,

6   essentially, *Do you know anyone in prison*, and the answer is

7   various things, but it is not, *I know Mr. Caraveo*,

8   notwithstanding the fact that she has spoken to him

9   notwithstanding the fact that he has paid her a bonus for

10  whatever she believes that bonus to be for, and -- and so, when

11  I put all of those pieces together, I think that the Government

12  has met the burden it needs to meet in order to go forward in

13  terms of introducing these statements.

14        I find by a preponderance of the evidence there's a

15  conspiracy that the individuals identified in the Indictment,

16  including Ms. Portillos, are members of the conspiracy, and

17  then the final question is whether or not the statements that

18  are offered are in furtherance of the conspiracy.  I would note

19  that the furtherance argument is only raised in the written

20  objection, with respect to the July 31, 2010 conversation.

21  Orally, it appears as if Mr. Mosby has said that that further

22  conversation was also not in furtherance of the conspiracy.  I

23  will allow that additional objection, but, nonetheless, find

24  that both of these statements, both of these conversations were

25  in furtherance of the conspiracy, and again by a preponderance

1    of evidence.  In simplistic terms, when one is paying a

2    co-conspirator to do the deeds that are part of the conspiracy,

3    and by way of -- or at least paying for it -- at least

4    encouraging further cooperation by way of payment of a bonus,

5    that is, on multiple levels, in furtherance of the conspiracy

6    and basically, thanking, as is done in the August 6th

7    conversation, for one's participation, meets the furtherance

8    standard on a number of levels.  One could claim and argue,

9    fairly well, that these are statements to keep Ms. Portillos

10   close, to keep her cooperating, to encourage her to thank her,

11   there are -- there are, in fact, a multitude of bases, and so I

12   overrule the objection and note and conclude that the

13   Government has established the three predicates necessary by a

14   preponderance of evidence; that is, that there is a conspiracy,

15   that the declarants, as well as the individual against whom the

16   conversations are being offered; that being, Ms. Portillos and

17   members of the conspiracy, and that the tendered statements

18   are, in fact, in furtherance of the conspiracy, subject to the

19   clarification that I have with Ms. Paluch about the debriefing

20   statements, that it is not -- the statements made during the

21   debriefing, but rather the matters referred to that she

22   anticipates the witnesses will testify about, that are the --

23   the statements that I find to be in furtherance of the

24   conspiracy.

25            So any further record that either side wants to make

1   with regard to my ruling on this matter, and that, by the way,

2   resolves the motion for a *James* hearing and it was -- it's

3   resolved.

4         MS. PALUCH:  Yes, Your Honor.  Thank you.  There is

5   just one matter.  I apologize to test the Court's patience on

6   this.  Yesterday, I forwarded to Mr. Mosby a chart that showed

7   four corrections, they were of a date or off by a few seconds

8   in the excerpt.  In preparing for today's hearing, I found

9   where a line in the log should have been placed in-between

10  conversations.  So I have conferred with Mr. Mosby, and he has

11  no objection, and I would ask the Court's permission to file,

12  yet, another corrected supplemental log, and given the volume

13  of the calls in this case, I would ask for the Court's lenience

14  on that.

15        THE COURT:  Cathy, can you just let me see that?  Do

16  you have a copy?

17        MS. PALUCH:  I can certainly --

18        THE COURT:  I'm not going to keep it.

19        MS. PALUCH:  It has my markings on it, but

20  highlighted --

21        THE COURT:  I really don't care about your markings,

22  and all that I mean by that is I'm not really looking at those.

23  It's just --

24        MS. PALUCH:  And I -- in yellow, Your Honor, you will

25  see what the changes are.

1          THE COURT:  I got it.

2          MS. PALUCH:  There's also one change that's noted in

3    Mr. Mosby's filing, and that was -- and he had brought this to

4    my attention before, and it was bad on the Government's part,

5    but he pointed out that there's a call in the log dated January

6    26th, 2009.  It should be January 26 of 2010.  It's in

7    discovery, and I need make that correction, as well.

8          THE COURT:  All right.  And I will note a couple of

9    things; one, I grant you permission to file an amended --

10          MS. PALUCH:  Corrected.

11          THE COURT:  -- whatever you want to call it.  A second

12    corrected, second amended, whatever.  Notwithstanding that,

13    the -- the grant is with respect to the matters that are on the

14    document you have just given to me.

15          MS. PALUCH:  Correct.

16          THE COURT:  And what I would say is that nothing that

17    I have been told changes, in any way, my ruling, and I extend

18    the ruling to the corrected log, because what is being changed

19    is the date of the call, not the substance of the call, not the

20    bases upon which the Government is relying for it's various

21    claims of either the existence of the conspiracy, or in

22    furtherance of the conspiracy.  It is a technical accuracy and

23    nothing more than that, and it does not affect the substance of

24    any of the calls.  Given that my ruling is based on the

25    substance of the calls, rather than the particular date of the

1     call, whether it be, you know, the 10th of March, as opposed to

2     the 9th of March, I see my ruling as unaffected and extend the

3     ruling to the amended log, however, of course, if there is

4     anything in that amended log that has not been presented to me,

5     and does not fit this characterization, then, Mr. Mosby, I

6     would invite you to file, by supplemental pleading, with regard

7     to that.  But I'm not expecting that to happen, but, I'm not

8     precluding you from -- from fixing something if something gets

9     slipped in.

10          *MR. MOSBY:*  We talked about it.  She has represented

11    what it is.  I do have a couple items.

12          *THE COURT:*  Go ahead.

13          *MR. MOSBY:*  With respect to the debriefings, it's my

14    understanding those statements will not be allowed into

15    evidence?  But they can refer to matters in the past?  I want

16    to clear that up a little bit.

17          *THE COURT:*  Yeah.  I -- I want -- I think it's clear,

18    but let me just be crystal clear about exactly what it is I am

19    saying.  What I am -- and let me just use an example, there is

20    ... okay.  Under the log, under the date of August 19th, 2015,

21    at 10:07 a.m., and I just literally pulled this one, because

22    that's where my page opened.  There is a statement where Guzman

23    says, *Lucero said that he wanted me to cash the refund checks*

24    *and receive them at my house, that I would be getting 500 to a*

25    *thousand dollars every time I cashed a refund check.*

1          What I am saying and what I have ruled is that the

2    Government cannot call, I don't know who, the agent, who I

3    assume was present during the course of the debrief, and have

4    the agent say on August 19th, 2015, *Guzman told me during a*

5    *debriefing session that Lucero said that she wanted me to cash*

6    *the refund checks.*  They can't do that.

7          MR. MOSBY:  Got it.

8          THE COURT:  But if Guzman testifies, Guzman can say

9    *Lucero told me they wanted to cash the refund checks.*  In other

10   words, once it's past the time that the conspiracy has ended,

11   it's not in furtherance of the conspiracy.  So they can't

12   introduce the debriefing, as a statement in furtherance, but

13   the statements about which they debriefed, can be admitted into

14   evidence, assuming that the witness testifies.

15         MR. MOSBY:  Yeah.  I think if the witness testifies

16   there's no problem.

17         THE COURT:  Right.

18         MR. MOSBY:  And that raises another issue.  Many of

19   these statements, in the *James* proffer, if the witnesses

20   testify, at that point, I mean, we have no problem.

21         THE COURT:  Well, I get that.

22         MR. MOSBY:  Right.

23         MR. MOSBY:  So I mean, but I just wanted to make sure

24   that the statements, because the way I'm reading the *James* log

25   is, they want to offer in the statements themself.

1    THE COURT:  Well, I mean, the problem is, and this is

2    getting to be a one heck of a messy transcript when we say *the*

3    *statements*.

4        MR. MOSBY:  Okay.  The debriefings, themselves.

5        THE COURT:  Yeah.  And I cleared that up with

6    Ms. Paluch; that's not what she is going to do; that's not what

7    she is trying to do.  She is simply saying expect that these

8    statements that were referenced in the debriefing, expect those

9    statements to be introduced during the course of trial, through

10   live testimony, and my answer is, I'm fine with that, because

11   if there is a person who is going to present these statements

12   through live testimony, I find that the statements referenced

13   are in furtherance of the conspiracy, although the debriefing,

14   itself, was not.

15       MR. MOSBY:  Okay.  The only other matter that -- that

16   I would raise is, and I have been researching the law on

17   variance, and it just appears in the Indictment, when

18   Ms. Portillos was indicted, the allegations in the Indictment

19   itself, indicates that checks were received at 1044 Baltic

20   Street, and those checks were forwarded on by Ms. Portillos to

21   Ms. Lucero, and now it seems like that's been slightly changed

22   to reflect what the Court said today, that the checks came to

23   that address and they were cashed.  I think the difference

24   there is very material.  Because the difference in terms of her

25   having the checks in her hand, and forwarding those checks on

1      to Ms. Lucero would show one thing.  While I think the fact

2      that the checks were simply cashed by Ms. Lucero, may show

3      something different.  I think that's a change from the

4      Indictment.

5               THE COURT:  Every change from the Indictment is not

6      material.  There are immaterial and material variances.

7      Ultimately, there is no variance motion that is before me, but

8      I would say that I understand that from the Defendant's

9      perspective the fact that checks were cashed, may mean one

10     thing -- well, may present the possibility of certain

11     arguments, and the fact that certain matters were forwarded may

12     create another scenario, but from my perspective, you can argue

13     what you want to the jury, from my perspective, the ruling

14     would be the same, regardless of whether or not the checks were

15     forwarded to Ms. Lucero or were handed to Ms. Lucero or were

16     inexplicably cashed by Ms. Lucero.  The issue is, it is not the

17     case that in deciding whether or not the statement are

18     admissible as co-conspirator statements, it has to be nailed

19     down to the level that you're asking that it be nailed down to.

20               The question is simply whether, what is presented to

21     me establishes, by a preponderance, and whether the checks are

22     handed, forwarded or inexplicably cashed, it doesn't really

23     matter to me, because that -- either of those facts, coupled

24     with the rest of what has been presented to me, satisfies me by

25     a preponderance of the evidence that the Government has met its

 1   burden.  Okay.

 2           *MR. MOSBY:*  Okay.

 3           *THE COURT:*  Now, the second motion that we have is a

 4   Motion To Suppress, and in many respects it's the same thing

 5   with different dressing.  It is not what I -- it's labeled a

 6   Motion To Suppress.  It is not what I will call a motion to

 7   suppress.  It is what I would call a motion in limine, because

 8   what's being asked is to preclude the Government from making

 9   reference to certain matters in their opening statement, and

10   during the course of the trial, until they come up with

11   sufficient evidence to establish those facts, and it -- it is

12   almost, I exaggerate somewhat, but not much, it is almost a

13   statement that says, until the Government comes up with direct

14   knowledge, as opposed to circumstantial or other -- excuse

15   me -- direct evidence as opposed to circumstantial or other

16   evidence of Ms. Portillos' knowledge, they should not be

17   allowed to even argue or represent to the jury that she had

18   knowledge of one type or another.

19           I'm really not persuaded, but I will take argument on

20   it.  I mean, for the most part motions in limine or motions to

21   preclude the Government from referencing something during the

22   course of their opening statement tends to be something along

23   the lines of, you know, there's some evidence that would be

24   excludable on some bases of, I don't know, prejudice or

25   something like a 404(b), where it may not come in, and

1    ultimately, rather than taint the jury with things that may or

2    may not come in, this evidence, whatever its form, is going to

3    come in; whatever evidence the Government has with regard to

4    this.  So I don't really know what I'm being asked to do here,

5    other than to set the bar really high and say that the

6    Government must produce to the Defendant some satisfactory

7    level of proof of the knowledge of Ms. Portillos before I

8    should allow them to reference this in opening argument or in

9    questions with other witnesses.

10          At the end of the day, the Government -- from my

11   perspective, an opening statement can say what their evidence

12   is going to be, and they either get the evidence in or they

13   don't.  And if they don't, well, one can chase whatever theory

14   of trial advocacy one wishes to; meaning, maybe they would let

15   the jury down, and some people will argue maybe the jury

16   doesn't care, but it's not something that I need to resolve at

17   this juncture.  This is something that needs to be resolved in

18   two stages.  Stage one is opening statement, stage two is the

19   presentation of evidence.

20          In terms of the presentation of evidence, that's

21   something that's going to be reserved to the time of trial.

22   And in terms of opening statement, I don't see any reason that

23   I should preclude the Government from saying what it

24   anticipates its evidence would be, and if the Government

25   anticipates that its evidence would show knowledge on the part

1   of Ms. Portillos, whether that knowledge be -- whether the

2   Government's evidence in that regard is direct evidence or

3   circumstantial evidence, I'm not inclined to preclude them from

4   saying our evidence will show that she knew.  Now, whether they

5   can pull it off or not, we will see.  I tell the jury, as I

6   tell every jury, that opening statements aren't evidence, and I

7   don't see anything here that is sufficiently analogous to a

8   404(b) prejudicial type of evidence, or something that its

9   relevant is so tenuous that it may not come in; that I'm

10  somehow damaging the fairness of the trial by allowing the

11  Government to say, we anticipate that we're going to put on or

12  prove X, Y or Z.  I just don't get it.

13          But I will take argument.  I'm telling you this so

14  that you know what my positioning is.  Sometimes that chills

15  what lawyers say.  I'm not trying to do that.  But I want you

16  to know what my thinking is, so you can respond to it, if you

17  wish to.  Basically, I'm saying, *All right.  I get it.  Your*

18  *position throughout every motion you filed, and throughout the*

19  *trial, is going to be that Ms. Portillos didn't know.*  Okay.

20  And the jury is going to decide that.

21          *MR. MOSBY:*  As you indicated, and you are correct, it

22  should have been a motion in limine, but unfortunately this

23  Court only gave me permission to file one kind of motion.

24          *THE COURT:*  Well, you only asked me for one kind of

25  motion, but okay, I'm letting it in.

1    *MR. MOSBY:*  No, I understand.  I totally understand,

2    and I understand the Court's logic, and I understand exactly

3    what you are saying.  But -- and in many ways this was tied to

4    the *James* motion, also.

5           *THE COURT:*  Right.

6           *MR. MOSBY:*  And so a ruling on the *James* motion

7    basically ...

8           *THE COURT:*  Yeah, I agree with that.  All right.  I

9    don't need to hear from Ms. Paluch.  My ruling, as stated a

10   moment ago, is the basis for my ruling on the Motion To

11   Suppress, is denied.

12          We have -- I don't think there is -- I know there's

13   nothing else left, pending.  We have a trial prep on April 14,

14   and a jury trial on May 2nd.

15          Let me just say one thing, I suspect that there's

16   going to be a lot of disagreement about things at trial, and

17   that's why -- that's typical of trials.  I'm not suggesting

18   that there's anything wrong with that.  If you are going to use

19   transcripts, and I am not saying you should or should not, but

20   it certainly looks as if there are a number of transcripts, I

21   would hope that all of those, if you intend to use transcripts

22   at trial as demonstratives, that all of those either have been

23   provided or will be provided really, really soon, because what

24   I don't want is to have some objection to some line in some

25   transcript that pops up for the first time the morning of

1    trial.  I mean, if there's some issue with the transcript, I

2    want to have -- I want Defense Counsel to have sufficient time

3    to raise those issues with me, and I would hope that those

4    matters raised with me before trial, and if at all possible, by

5    the time of the trial-prep conference.

6         *MS. PALUCH:*  Yes, Your Honor.  If I could speak to

7    that.  All of the calls are in the process of being transcribed

8    in their entirety.  Those will all be -- some have already been

9    provided, but they will all be provided to Mr. Mosby, we hope,

10   by the end of next week.

11        *THE COURT:*  Okay.

12        *MS. PALUCH:*  I might be off by a day or two, but we

13   are hoping by the end of next week.  What we were going to

14   propose or discuss with Mr. Mosby, is once he has had a chance

15   to review those transcripts, he can let us know if he

16   stipulates to the accuracy of these transcripts or if he

17   disputes what the calls say.  He has all of the audios, so if

18   he believes the transcripts from Javernick are incorrect, that

19   we can have that discussion.  And I know in other trials there

20   have been parties that dispute about the Defense version of

21   what is said on the tape versus the Government's.  We are

22   hoping we can avoid that, but that's something that Mr. Mosby

23   and I can address --

24        At trial, we intend to mark the entire transcript.  We

25   intend to mark the audio.  All of the audios will be on disks.

1   Then we intend to mark the excerpt, and the excerpt is what

2   will be played for what we will be seeking permission for, is

3   playing the audio with the synched-up transcript, so that the

4   jury can follow along with the writing of what we believe the

5   audio is saying.

6        THE COURT:  Basically, you are doing this through

7   Sanction?

8        MS. PALUCH:  Correct.  Then those excerpts is what we

9   will be seeking for admission to the jury; to go back to the

10  jury.

11       THE COURT:  The audio excerpts?

12       MS. PALUCH:  The audio excerpts with the synced-up

13  transcript.

14       THE COURT:  And you better come up with some law to

15  show me that those transcripts are going back, because my

16  inclination is *uh-huh*.

17       MS. PALUCH:  Okay.  That's an issue that we have

18  addressed in the trial brief and --

19       THE COURT:  I'm just telling you, my -- my basic

20  position is that transcripts can be used during the course of

21  trial.  They are demonstrative, they are an aid, and I am not

22  sending them back.

23       MS. PALUCH:  Okay.  Is it your position then that the

24  audio goes back?

25       THE COURT:  Oh yeah, the audio absolutely goes back.

1          MS. PALUCH:  So we can certainly, if we feel we have a

2     different position, we will certainly present that to the

3     Court.

4          THE COURT:  Right.  And I am just raising it now, so

5     that both sides have an opportunity to talk about this and

6     think about this.  I just think that I -- you know, it may be

7     different.  It's interesting when you were discussing your

8     conversations with Mr. Mosby, you were saying he can stipulate

9     or not stipulate.  My view is, he can stipulate if he wants to,

10    and perhaps if there's a stipulation my thinking goes in

11    another direction.  But I'm not interested in whether he

12    stipulates so much as to whether he objects.  One doesn't have

13    to stipulate to not object.

14          I don't care how this gets worked out between you, I

15    just want to make sure that the morning of trial I'm not

16    confronted with, you know, 60 pages of stuff, and I am trying

17    to take a pencil and go, *No, he said her not huh*, and all of

18    the rest of this; that kind of silliness is what I'm trying to

19    avoid.

20          MS. PALUCH:  So we would hope, definitely, by the

21    trial-prep conference, we can present to you whether there is

22    any objection from the Defense to the transcripts that the

23    Government --

24          THE COURT:  We will see.  It's getting a little close

25    in terms of when.  I don't know how many pages of transcripts,

1    I just don't know what we're talking about, but I want to

2    encourage both of you to try and get on that now, rather than

3    May 1; that's all I'm saying.

4            *MS. PALUCH:*  Absolutely.  It's underway.

5            *THE COURT:*  Fair enough.

6            *MR. MOSBY:*  Yes.

7            *THE COURT:*  All right.

8            *MS. PALUCH:*  Your Honor, I have one issue, if this is

9    an okay time?

10           *THE COURT:*  Go ahead.

11           *MS. PALUCH:*  I would -- we read your trial procedures

12   and we see that you have a ten-page limit to your trial brief.

13   In the trial brief we are going to be addressing evidentiary

14   issues --

15           *THE COURT:*  How many do you want?

16           *MS. PALUCH:*  We would ask for 20.

17           *THE COURT:*  Okay.

18           *MS. PALUCH:*  Thank you.

19           *THE COURT:*  I mean, look, in general, one of the

20   things that I found out is that if you don't put page limits on

21   things lawyers go nuts.  I think they tend to go nuts more on

22   civil than on criminal.  But I don't find 20 pages in a trial

23   brief to be excessive.  So you can have that, and Mr. Mosby, if

24   you wish to file a trial brief, you may have 20 pages, as well.

25   There's no requirement that you do so.

 1          All right.  Anything else?

 2          MS. PALUCH:  Nothing further for the Government,

 3   Your Honor.  Thank you.

 4          THE COURT:  Anything else from, Mr. Mosby?

 5          MR. MOSBY:  No, Your Honor.

 6          THE COURT:  All right.  Then we will be in recess.  I

 7   thank you all.

 8          THE COURTROOM DEPUTY:  All rise.  Court is in recess.

 9      (Recess at 1:53 p.m.)

10

11                   **REPORTER'S CERTIFICATE**

12      I certify that the foregoing is a correct transcript from

13   the record of proceedings in the above-entitled matter.  Dated

14   at Denver, Colorado, this 17th day of October, 2016.

15

16                                    *S/Tamara Hoffschildt*
                                     Tamara Hoffschildt
17

18

19

20

21

22

23

24

25