IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 15-cr-149-RM-MJW-6

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

CRISTINA PORTILLOS,

    Defendant.
_____

**REPORTER'S TRANSCRIPT**
Motion Hearing

_____

        Proceedings before the HONORABLE RAYMOND P.
MOORE, Judge, United States District Court for the District of
Colorado, commencing at 10 a.m., on the 26th day of April, 2016,
in Courtroom A601, United States Courthouse, Denver, Colorado.

**APPEARANCES**

For the Plaintiff:          Martha Paluch & Bryan Fields
For the Defendant:          John Mosby

TAMMY HOFFSCHILDT, Official Reporter
901 19th Street, Room A251
Denver, Colorado, 80294
(303) 292-1088

Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

1           (In open court at 10:00 a.m.)

2           THE COURT:  Please be seated.  15-cr-149, United

3    States versus Cristina Portillos.  I will take appearances,

4    please.

5           MS. PALUCH:  Good morning, Your Honor.  Martha Paluch

6    and Bryan Fields appearing on behalf of the United States.

7           THE COURT:  Good morning to both of you.

8           MR. MOSBY:  Good morning, Your Honor.  John Mosby and

9    Cristina Portillos appearing on behalf of Defendant.

10          THE COURT:  Her?

11          MS. MORAN:  And Lisa Moran?

12          THE COURT:  Understood.  Good morning to all of you,

13    as well.

14          Well, things got a little messy, I suppose, but let me

15    just recap where we were.  Some time ago, not long ago, I don't

16    have the exact date in mind, there was a hearing on a motion

17    where the Government asked me to appoint counsel for various

18    witnesses that had indicated that -- well, that Mr. Mosby had

19    indicated that he intended to call as witnesses.  I talked to

20    both sides about that, and ultimately concluded that I was not

21    going to get involved in that at this juncture, because, well,

22    I didn't think that the record indicated that I needed to step

23    in.

24          What I mean by that is, there was no request for

25    counsel by anyone.  There was no indication, to me, as to what

1    their testimony was, or whether, you know, could or couldn't or

2    would or wouldn't put them in the posture of, perhaps, invoking

3    their Fifth or create -- or testifying in a manner that might

4    lead to a perjury charge or anything else.  And so,

5    essentially, I put it back to the lawyers saying counsel has

6    the right to interview witnesses and counsel -- the Government

7    has the right to advise people of the penalties of perjury, and

8    I believe that I also indicated that I didn't have a problem

9    with them advising that in the course of an interview they

10   wanted counsel, that the Court would consider that or words to

11   that effect.

12           I also spoke to Mr. Mosby about, you know, not calling

13   witnesses for the purpose of having them invoke their

14   Fifth-Amendment right, and he and I discussed various things

15   that -- well, limited by the fact that Mr. Mosby is under no

16   obligation to lay bare, if you would, his stragedy or theory at

17   this juncture.  He indicated the general agreement with the

18   notion of not trying to implicate them, but to point -- use the

19   witnesses to kind of lay out that -- their circumstances

20   mirrored Ms. Portillos', in terms of receiving checks and thing

21   along that line.

22           Well, after the hearing, the Government, apparently,

23   sends an agent, whose name escapes me, but I'm imagining that

24   that's her in the back.

25           *MS. PALUCH:*  Yes, she is here, Your Honor.  It's

1    Clarissa Coat Mohr, and she interviewed the witnesses,

2    Jennifer Leff, Jennifer Gallegos, Michelle Steinhaus and

3    Tonya Barrett, and in the course of her discussion with them,

4    advised them of several things, and I should say that I'm

5    informed, by having listened to, and I have listened to, the

6    audiotape, because all of these conversations were recorded.

7    Two were in person, I believe, and two were on the telephone.

8    I was provided with the tapes, and I have listened to the

9    entirety of them.

10           In essence, what the conversation was, was the

11   following, *I'm authorized by the Court to make contact with

12   you,* that's a little annoying, and what I mean by that, you

13   want to interview a witness, you interview the witness.  It's

14   not you are interviewing a witness, because I said you could.

15   I didn't weigh in on -- I certainly did -- I certainly did say

16   to you that you have the right to interview witnesses, but that

17   is different from me saying -- from me authorizing the

18   interview.  But I don't consider that to be terribly

19   meaningful.

20           I do note that there was, in one of these, and I can't

21   remember which, at the time, some suggestion or some statement

22   that *I'm a representative of the Court* or the *Government* or

23   whatever, and again an F.B.I. agent is not my representative,

24   not the Court's representative, and that should not happen.

25   But that's not the core of this.

1          The core of this is that in connection -- that each of

2     the interviews was essentially this; one, did you talk to

3     Agent Romero; or two, do you have any changes to what you said

4     to him; three, that Government -- excuse me, that Defense

5     Counsel has, you know, in a pleading filed with the Court, made

6     a suggestion that you may be involved, and I believe that is

7     the most common way that it is phrased, in a tax fraud

8     conspiracy, and then there was an advisement as to the right to

9     counsel, an advisement of the right not to incriminate, as well

10    as an advisement the penalties for perjury.

11         That resulted in Defense Counsel, after having been

12    contacted by two of the individuals, I believe it was

13    Ms. Steinhaus and Ms. Leff filing a motion with the Court

14    asking for this hearing, and asking for an order, which

15    basically said that they could raise these conversations at

16    trial, as well as requiring the Government to have the agent

17    available at trial.

18         Government filed a response.  The Defendant filed a

19    reply, and here we are.  So, Mr. Mosby, let me hear from you,

20    first.

21         *MR. MOSBY:*  Your Honor, there seems to be no doubt in

22    my mind that the conduct, that we're talking about is not

23    unintentional.  I am now left in a position that one lawyer has

24    called me and instructed me not to have any contact with his

25    client.  Another lawyer called me and I offered to send him

1    material, but he has not entered his appearance yet.

2            Your Honor, this gets to the essence.  It really does.

3    I mean, you were clear, when I walked out of this courtroom,

4    there was no doubt in my mind that you had set boundaries,

5    which could not be crossed, and it's very, very disturbing when

6    you are trying to defend an individual, because by attacking

7    me, they attack my client, but clearly time and time again,

8    it's almost as if it's scripted.  *Did you know that Defense*

9    *Counsel is implicating you in a tax fraud conspiracy*?  What

10   is -- what is the anticipated response to that?  Well, for two

11   witnesses, I get emails from them, and what do they want to

12   know?  Did you lie to us when you interviewed us or is the

13   Government lying to us, now?  And you know what, definitely the

14   Court said it was not getting in the weeds, but now I'm in the

15   weeds, by trying to, now, okay assure people that I have some

16   integrity left.  All right.  But even though I talked to one

17   Defense Counsel, and tried to explain to him the nature of the

18   predicament, there is no way.  What type of Defense Counsel

19   calls witnesses to the stand and says, *You are as guilty as my*

20   *client, aren't you*?  It doesn't happen.  And once I assured him

21   of that, he said, *It really doesn't matter John, because, even*

22   *though you are not going to implicate, I have talked to the*

23   *U.S. Attorney, and they say that they have a right to*

24   *Cross-examine, and they may bring up issues involving the*

25   *witness*; and that was the attorney for Ms. Steinhaus.  All

1   right.

2          *THE COURT:*  Who is?

3          *MR. MOSBY:*  It's K --

4          *THE COURT:*  Hold on.

5          *MR. MOSBY:*  It starts with K.

6          *THE COURT:*  It's Kornfeld.

7          *MR. MOSBY:*  Kornfeld.  But, you know, the more I

8   talked, the more I knew I was hitting a brick wall.  So

9   technically, now, two of my witnesses, one may be gone, one is

10  in doubt, because, Mr. Kornfeld is going to do his job.  He is

11  going to say what he told me, *Well, I believe you John, but, I*

12  *still have a job to do to protect my client and the Government*

13  *has now told me that they are going to Cross-examine.*

14          Your Honor, this is well planned.  The initial point

15  that was made in the motion, was to draw the Court in, and to

16  get the imprimatur of the Court, all right, to say that just

17  what was said.  The Court has authorized this.  This is not us.

18  The U.S. Attorney has been doing this, and they are probably a

19  lot better than me, for years.  They know they don't need

20  permission to talk to a witness, but what they wanted was

21  exactly the scenario that has come to bear.  They wanted the

22  scenario, that, Okay, Mr. Mosby, you are not going to do it,

23  but we have got our right to Cross-examine that they lied to

24  us.  They may be implicated.  Notwithstanding that when Agent

25  Romero interviewed three of these individuals, he didn't

AGENT MOHR - Direct

1   interview Ms. Gallegos, he told them all, *You have done nothing*

2   *wrong, as far as I'm concerned, it's over*.  When they ask him,

3   *Do I need a lawyer*?  He said, *No, you don't*.  All right.  But

4   now we have got the scenario that possibly, and I don't know

5   what Ms. Barrett is going to do.  I think she also submitted

6   papers to the Court through the attorney.  But, Your Honor, I

7   request permission to make a record by calling Ms. Coats to the

8   stand and asking her certain questions.

9            *THE COURT:*  Call her.

10           *MR. MOSBY:*  And she is here.

11           *THE COURT:*  Let's go.

12           *MR. MOSBY:*  Call Ms. Coats to the stand.

13           *THE COURT:*  My courtroom deputy will swear you in.

14      (**Agent Mohr** was sworn.)

15           *THE WITNESS:*  Yes, I do.

16           *THE COURTROOM DEPUTY:*  Please be seated.  Please state

17   your full name and spell your last name for the record?

18           *THE WITNESS:*  My name is Clarissa Lorraine Mohr,

19   M O H R.

20                        **DIRECT EXAMINATION**

21   *BY MR. MOSBY:*

22   *Q*   And Ms.-- you prefer Mohr or Coats?

23   *A*   I recently got married and changed my name in March, so my

24   last name is Mohr, M O H R.

25   *Q*   Ms. Mohr, where are you presently employed?

AGENT MOHR – Direct

1   A   IRS, criminal investigations.

2   Q   In what capacity?

3   A   I'm a special agent.

4   Q   How long have you been a special agent?

5   A   Since 1991.

6   Q   And since 1991, have you interviewed hundreds of witnesses?

7   A   Yes.

8   Q   Okay.  Now, it's true, isn't it, that on April 14th, 2016,

9   you interviewed Tonya Barrett and Jennifer Leff; isn't that

10  correct?

11  A   Yes.

12  Q   And it's also true, isn't it, that you told both of those

13  witnesses that the Defense Counsel for Cristina Portillos had

14  implicated them in a tax-fraud scheme?

15  A   My words were that Defense Counsel had suggested, in court

16  filings, that they may be involved with a conspiracy to commit

17  tax fraud.

18  Q   Okay.  And then on that following Monday, which I think was

19  April 18th or 19th, you contacted, also, Ms. Steinhaus; isn't

20  that correct?

21  A   I believe so.

22  Q   And you indicated to Ms. Steinhaus that Ms. Portillos'

23  attorney had implicated her in a tax-fraud conspiracy, didn't

24  you?

25  A   I said suggested in court filings.

AGENT MOHR – Direct

1   Q    Okay.  And then you also talked to a Michelle Steinhaus;

2   isn't that correct?

3   A    Yes.

4   Q    And you told her that in court filings she had been

5   implicated by Ms. Portillos' lawyer in a tax-fraud scheme;

6   isn't that correct?

7   A    Again, I said that the Defense Counsel for

8   Cristina Portillos had suggested in court filings that they may

9   be involved in a tax-fraud conspiracy.

10   Q    Now, it's true, isn't it, Ms. Mohr, you have never read any

11   pleading that I -- where I implicated anyone, have you?

12   A    Correct.

13   Q    You haven't seen any words that I put on paper that's

14   implicated anyone, have you?

15   A    I have not.

16   Q    Then who told you that?

17   A    I was on a conference call with the attorneys at the table.

18   Q    What are their names?

19   A    Bryan Fields and Marty Paluch.

20   Q    They told you that?

21   A    Yes.

22   Q    And you did -- you are an investigator; is that correct?

23   A    Yes.

24   Q    But you did no independent investigation of that, did you?

25   A    No.  No.

AGENT MOHR - Direct

1    Q   You didn't read the documents, yourself?

2    A   I did not.

3    Q   So you don't know if what you were telling the witnesses

4    was the truth, do you?

5    A   That's correct.

6    Q   But you told them anyhow, didn't you?

7    A   I -- I told about the suggestion; yes, I did.

8    Q   Okay.  Now, with respect to Ms. Barrett, Ms. Barrett even

9    told you and she asked you to allow her to submit the papers,

10   and then she would decide at a later date whether or not she

11   wanted an attorney, didn't she?

12   A   I -- I will have to listen to the recordings for the exact

13   wording.

14   Q   Okay.  Now, you realize that -- you realized, at the time,

15   that by telling these witnesses that the Defense Counsel had

16   suggested that they might be involved in a tax-fraud

17   conspiracy, that the probabilities were that they would want an

18   attorney, wouldn't they?

19   A   I don't know what they would want.

20   Q   Well, you have been an investigator since 1991; is that

21   correct?

22   A   Yes.

23   Q   Okay.  And you understand legal rights that individuals

24   have to be given when they are questioned, right?

25   A   When they are questioned?

AGENT MOHR - Cross

1    *Q*    When they are questioned by an investigator at the IRS, you

2    have certain rights that you have to give them, right?

3    *A*    Not unless they are a subject.

4    *Q*    But you knew -- did it ever cross your mind to go back, to

5    investigate, to make sure that what you were telling the

6    witnesses, was true?

7    *A*    I was asked to make contact in a fairly short timeframe,

8    and I have to rely on the attorneys providing me the

9    information.

10   *Q*    So you feel like you had no obligation to ascertain the

11   truth yourself?

12   *A*    What truth are you talking about?

13   *Q*    The truth that Defense Counsel never implicated anyone in a

14   tax-fraud conspiracy?

15   *A*    This was not my investigation.  I'm relying on the

16   attorneys who asked me to do -- make contact.

17   *Q*    So you were relying on the United States Attorney?

18   *A*    The attorneys at the table asked me to make contact with

19   these four witnesses.  Yes.

20           *MR. MOSBY:*  Thank you.

21                          **CROSS-EXAMINATION**

22   *BY MS. PALUCH:*

23   *Q*    Good morning, Agent Mohr.  Your Honor may I proceed?  Where

24   are you located, ma'am?

25   *A*    I'm in Colorado Springs, Colorado.

AGENT MOHR – Cross

1  Q   And where were the individuals that you met with on the

2  14th of April?

3  A   Two of them, on the 14th, were located in Colorado Springs,

4  Colorado.

5  Q   And then -- and you made phone calls to the other two

6  women?

7  A   Yes.

8  Q   And who is the case agent on this matter?

9  A   Special Agent Tony Romero.

10 Q   Okay.  And you were simply asked to make this contact in --

11 in con -- in connection with an upcoming trial; is that

12 correct?

13 A   That is correct.

14 Q   And the information that you knew about the case, you

15 received from myself and Mr. Fields and Agent Romero; is that

16 right?

17 A   Yes.

18 Q   Okay.  In your interviews with the four women, did it ever

19 come across to you that these women were intimidated or scared,

20 in your conversations with them?

21 A   No.

22 Q   How would you characterize your interaction with those

23 women?

24 A   Um, it was very calm, low key, nonthreatening, so --

25 Q   A friendly interaction?

AGENT MOHR - Cross

1   *A*   Friendly interaction.  I introduced myself, explained who I

2   was with, made the contact and explained that I understood that

3   was a trial coming up, and they may or may not have been served

4   with a trial subpoena.

5   *Q*   Did some of the witnesses express confusion as to why they

6   would be receiving an advisement as to the penalties of

7   perjury?

8   *A*   There was some confusion.  Their understanding was they

9   were being subpoenaed as a character witness.

10   *Q*   Okay.  And specifically, was that your understanding --

11   which witness indicated that, do you recall?

12   *A*   I believe it was the first witness, Tonya Barrett.

13   *Q*   Indicated she believed she was being called in this case as

14   a character witness, correct?

15   *A*   Yes, yes.

16   *Q*   And did that provide a basis for her confusion as to why

17   she was being advised as to the penalties of perjury?

18   *A*   Yes.

19   *Q*   Okay.

20        *MS. PALUCH:*  No further questions, Your Honor.

21        *THE COURT:*  Just to be clear -- you have any Redirect,

22   Mr. Mosby?

23        *MR. MOSBY:*  Yes.

24        *THE COURT:*  Just to be clear, the audio that I have

25   been provided, has that been filed conventionally?

1      *MS. PALUCH:*  Yes, Your Honor.

2      *THE COURT:*  Okay.  All right.

3      **REDIRECT EXAMINATION**

4      *BY MR. MOSBY:*

5    Q    Now, it's true, isn't it, that you told them that the Court

6    authorized you to be there, didn't you?

7    A    Yes.  That was my understanding, that there was a recent

8    hearing that allowed me to make contact.

9    Q    Is that yes, ma'am?

10   A    Yes.

11   Q    And you told them the penalty for perjury; is that correct?

12   A    Yes.

13   Q    And in fact, you told them that they may need a lawyer,

14   didn't you?

15   A    Not necessarily.  I advised them that they may be entitled

16   to hear their own constitutional rights from their own

17   attorney.

18   Q    And with respect to Ms. Barrett, you actually handed her

19   the paper, had her fill them out, and told them that you would

20   take them and submit them to the Court; is that correct?

21   A    Ms.?

22   Q    Ms. Barrett?

23   A    I provided her a financial affidavit and said that I would

24   wait, if she chose to fill it out.

25   Q    And you would submit it to the Court?

AGENT MOHR – Redirect

1    *A*   I would –– I submitted it to the Assistant United States

2    Attorney's office.

3          *MR. MOSBY:*  Thank you.

4          *THE COURT:*  All right, ma'am.  You may step down.

5    Mr. Mosby, you were in the middle of your argument when you

6    requested the opportunity to present evidence.  I have now

7    given you that opportunity.  You can continue with your

8    argument.

9          *MR. MOSBY:*  Okay.  Your Honor, to say that

10   witnesses –– and I think the Court recognized this, because the

11   Court looks at it from a larger perspective, to say that a

12   witness is not intimidated, but then I get two emails to say

13   *What's going on here*?  I mean, *Why are you telling me one thing*

14   *and they are telling me something else*?  And as I said, we're

15   at the point, now, we're saying witnesses were not being

16   intimidated, but I'm being told by a lawyer to have no further

17   contact with –– that Ms. Steinhaus.  I have been told by

18   another attorney that he is representing Ms. Barrett, and I had

19   to tell Ms. Barrett that because she had an attorney, out of an

20   abundance of caution I couldn't talk to her, from an ethical

21   concern.

22          I mean, the results have been achieved that was

23   originally sought.  We may be, and I hope these witnesses ––

24   and I don't know what the litmus test is for whether or not

25   witnesses have been intimidated.  I think that someone is

AGENT MOHR - Redirect

1    telling someone that they have the power of one of the highest

2    positions in the state that allow them to come talk to them,

3    and that they are working with the U.S. Attorney's Office, and

4    they are there to give them their rights to an attorney.  And

5    just to suggest, to even suggest, that somehow Ms. Portillos'

6    lawyer has misled them, has not been truthful with them, I mean

7    they have irreparably destroyed my credibility with the

8    witness, because I'm in a constant battle now to show them that

9    what I asked you, what I told you, you were going to testify

10   to, is true.  But then we're at the point where the U.S.

11   Attorney wanted us to get to.  I understand their right to

12   Cross-examine, but really, the U.S. Attorney has set this

13   scenario up.  Not that I am going to intimidate witnesses, but

14   they, through their Cross-examination, they will be asking

15   questions which might.

16        I never intimidated any witness in any Court filing.

17   I did my job.  And as the Court knows, and I don't have to tell

18   the Court what a prima facie case of selective prosecution is,

19   what you got to allege, and that's what I did, but there was no

20   accusation, as I would say, what type of lawyer ever makes an

21   accusation that other people are as guilty as your client?  No.

22   That's not the implication.  The implication is other people

23   did the exact same thing, they were not guilty of anything,

24   thus you are similarly situated with them.

25        Your Honor, I just think that this is a very sensitive

AGENT MOHR - Redirect

1    area.  As you noted, you noted at least three times in your

2    ruling, it's a very, very sensitive area, all right, and you

3    even mention that the Court of Appeals would look at this as a

4    certain way, but the right, the right to a fair trial, it is so

5    sacred, it is so unique, that even if there is a possibility,

6    and we have gone beyond the realms of possibility here, we are

7    into probabilities, that the Government has, and even

8    unintentionally, I think the Court's order, when you read it,

9    is saying, *There's boundaries now.  You got to be professional*

10    *in what you do*.  We have a witness saying, *I don't know if it's*

11    *true or not.  I just told them what I was told*.  Well,

12    sometimes when you make certain accusations, it is incumbent

13    upon you to make sure that what you are saying, because the

14    damage has been undone (sic) and the bell cannot be un-rung.

15         Your Honor, I think this crossed the line, the

16    boundaries, that this Court set.

17         *THE COURT:*  And what is it that you are asking me to

18    do?

19         *MR. MOSBY:*  Throw the case out, Your Honor.

20         *THE COURT:*  Okay.

21         *MS. PALUCH:*  Thank you, Your Honor.  In addressing our

22    motion, which we brought to the Court's attention about whether

23    or not counsel should be appointed for these witnesses, the

24    Court stated on page two, that*, With respect to this motion the*

25    *reason was that these women were looked at by the Government in*

1    *connection with this case, or statements were made to the*

2    *Government in connection with this case, and more than that,*

3    *were put forward by Mr. Mosby during his Motion to Dismiss, as*

4    *persons who were comparable, if not identical, to*

5    *Ms. Portillos, and they weren't charged and she was.  The*

6    *suggestion somehow being that they may be as guilty, if one*

7    *assumes guilt and I do not, but just for the purposes of having*

8    *this discussion, as guilty from the Government's perspective as*

9    *Ms. Portillos.*  That is the suggestion from Mr. Mosby's motion

10   that was discussed in open court, and was mentioned to these

11   witnesses.  That was the suggestion that we had an extremely

12   lengthy hearing on, when the Court addressed his

13   selective-prosecution motion, that is a hearing and all of the

14   evidence from that hearing was discussed in open court.  It is

15   no secret what Mr. Mosby has alleged, with these other women.

16   To suggest that this is somehow secret is simply not supported.

17            We -- we -- if we had some nefarious plan, Your Honor,

18   we wouldn't have put this in a motion, come to the Court and

19   said, *Look, given what's been argued about these women, we are*

20   *coming to the Court to see whether counsel should be appointed*

21   *for them.*  We didn't go out and make contact, and say, *Do you*

22   *understand you are implicated in some of these phone calls?*  We

23   came to the Court first.  We did nothing to go outside the

24   bounds of what the Court said in that hearing.  The whole basis

25   of that hearing on that motion was he has said in one pleading

AGENT MOHR - Redirect

1   that these women could have been prosecuted, yet the Government

2   didn't do so, and that was the basis for his selective

3   prosecution M.O.   To suggest that it's now secret, and he is

4   so, so worried that these women will hear what he has said

5   about them in the past is completely unfair to these women.

6          Ms. Barrett says in her email, *I thought you were*

7   *calling me as a character witness*.  Mr. Mosby told me that he

8   intends to call these women to show that they were used by

9   Ms. Lucero; the same manner in which he believes his client was

10  used.  I mean, which is it?  If he is talking about credibility

11  for him, with these witnesses --

12         *THE COURT:*  I'm not going down that rabbit hole.

13         *MS. PALUCH:*  Right.  But I'm saying it's unfair,

14  Your Honor, to put all of this on the Government that we

15  somehow went outside the bounds.  It was very detailed.

16  Agent Mohr had very limited -- if I could just finish my

17  argument.  Agent Mohr had very limited information.  What she

18  was told -- and I understand the Court's concern as far as

19  authorization, but the point there was, we came to you first,

20  and you said in the hearing, as the Government points out in

21  its motion, it has every right to interview these witnesses.

22  You may interview them.  You may tell them they have the right

23  to appointed counsel.  You may tell them about the penalties of

24  perjury.  We did all of those things.

25         The only thing at issue in this hearing, right now, is

AGENT MOHR - Redirect

1   whether in saying there was a suggestion, that they may have

2   been implicated in this conspiracy, was that somehow creating a

3   chilling affect?  Now, that statement is a correct statement.

4   It is a correct statement of what has been discussed in open

5   court.  There's nothing secret about what's been discussed in

6   open court.

7          Mr. Mosby is very upset that there was talk about a

8   pleading, and that pleading was redistributed.  We had an open

9   hearing about that, Your Honor.  We've discussed it numerous

10  times here in that courtroom.

11         You know, the Court has heard those audios.

12  Agent Mohr could not have been more polite or more pleasant.

13  There's nothing that she said that goes outside of what the

14  Court said was possible, and, in fact, we took the language

15  from the Court -- from the Court saying there has been a

16  suggestion in Mr. Mosby's Motion To Dismiss that these people

17  are just as guilty as Ms. Portillos, according to the

18  Government's perspective.

19         Agent Mohr said, you are entitled --

20     THE COURT:  If we were going to be that particular

21  about who said what, the words, quote, *According to the*

22  *Government's perspective*, unquote, were never communicated to

23  the witnesses.

24     MS. PALUCH:  That's correct, Your Honor.  That is

25  correct.  But if you look at everything that was said to these

AGENT MOHR - Redirect

1  witnesses, and let's go to the chilling part.  Ms. Leff said

2  she has no need.  She did not fill out an affidavit.  She did

3  not indicate that she was interested in an attorney.

4  Ms. Gallegos said I have nothing to be afraid of, that she is

5  fine with testifying, providing Mr. Mosby can get her to

6  court--

7          THE COURT:  Let me interrupt you for one minute.  This

8  is not relevant to the motion, but when I listen to

9  Mary Gallegos, I don't think that woman has a clue as to who --

10  who has subpoenaed her or not subpoenaed her or how she is

11  going to get here.  I don't know whose witness she is, but

12  whoever's witness she is, needs to be in touch with her,

13  because I think she is waiting for, I don't know, a ride or

14  something.  It's -- it was very evident to me that she is

15  not -- that she was under the impression that both sides had

16  subpoenaed her, and I think she got that impression because

17  whatever subpoena she received has, not surprisingly, U.S.

18  District Court on it, and that is causing her to think that, I

19  don't know -- I'm not sure what she thinks, to be honest with

20  you.  But I'm just noting, whoever wants her, needs to talk to

21  her.

22          MS. PALUCH:  Right.  Your Honor, she originally was on

23  the Government's witness list, and she was subpoenaed by the

24  Government.  It's my understanding she was told she is no

25  longer a Government witness and that she was then subpoenaed by

23

AGENT MOHR - Redirect

1   Mr. Mosby.

2           THE COURT:  Okay.

3           MS. PALUCH:  I will have Agent Romero follow up to

4   make sure that that information was conveyed to Ms. Gallegos,

5   that she is not a Government witness.

6           But getting back to the remedy that he is seeking.

7   Whether there is any chilling.  Now let's back up for a bit for

8   Ms. Steinhaus' attorney, Mr. Kornfeld.  To tell Mr. Mosby that

9   *I'm appointed now and that you should deal with me and not call*

10  *my client directly*, that's standard protocol.  There's nothing

11  chilling about that, to say, *If you want to talk to my client,*

12  *get ahold of me*.  Mr. Kornfeld is doing his job.  He has been

13  appointed to represent this woman, and he has indicated you

14  shouldn't be reaching out to my client.

15          So the Government submits that there was nothing

16  improper said during these limited hearings.  As we all know,

17  the Government is entitled to interview these witnesses.  There

18  would have been nothing improper for the Government to point

19  out to Ms. Barrett, certain information we have in our

20  possession that calls into question her prior statements that

21  she knows nothing about this conspiracy, and we're entirely --

22  it's entirely appropriate for us to Cross-examine these

23  witnesses.  If they take the stand and they say they know

24  nothing about this conspiracy, and for us to Cross-examine them

25  about information in our possession.

AGENT MOHR - Redirect

1          Now, there's one point that I need to circle back to,

2    and much is being made of the fact that at the time these women

3    were interviewed, Agent Romero did believe that they were

4    victims, and he didn't believe that they were involved, at that

5    time, and for them to be told that, at the time, that's where

6    they were in the investigation.  You know, preparing the *James*

7    log and pulling out all of the information of every single

8    call, it paints a picture that these women were involved, but

9    as I explained to the Court, in the last hearing, I don't

10   believe I could prove it beyond a reasonable doubt, because

11   they didn't get on the phone and talk with people like -- like

12   Ms. Portillos, and we've already plowed this ground.  But that

13   doesn't limit the Government, at all, in our Cross-examination,

14   and that's why we brought this issue to the Court's attention,

15   because we didn't want this to go down the road, have these

16   women take the stand, I stand up and Cross-examine them about

17   information we have, and then we have someone invoking, and

18   that's full circle, that's how this all was presented to

19   Your Honor, and to suggest that there's something so improper

20   about letting witnesses know what Mr. Mosby has said about them

21   in the past, you know, he wants it both ways.  He wants to say

22   and ride this horse that these women could have been

23   prosecuted, but yet they weren't, and then he wants to go to

24   these women and say, *You are only being called in this trial as*

25   *character witnesses*.  Well, which is it?  Which is it?

AGENT MOHR - Redirect

1    So, again, when the Court listens to those audios, and

2    I understand and I take to heart the Court's concerned about

3    the agent being a representative of the Court.  She clearly

4    knows she wasn't.  She caught that afterwards and said, *of the*

5    *Government*.  She was being a representative of the Government

6    in interviewing these witnesses.

7    As far as agent interviews of prospective witnesses

8    go, I would be hard pressed to find a more polite, pleasant

9    professional interview that took place.  There is nothing in

10   those interviews that rises to the level to provide this

11   Defendant with the request that she is seeking, and we ask that

12   the Court deny the motion.

13   *THE COURT:*  I will give you rebuttal, Mr. Mosby.

14   *MR. MOSBY:*  Your Honor, what the Government is now

15   saying is that after these witnesses were interviewed, that the

16   Government may think now they are guilty, but the truth is,

17   what they told the witness is that *Mosby thinks you are guilty*.

18   Your Honor, that's unfair, and that's a statement that goes

19   beyond the boundaries that this Court set.  There was no need.

20   They could have achieved the same purpose, with the same

21   latitude that the Court gave them, without impugning that, *It's*

22   *not the Government that thinks you are guilty, it's that the*

23   *Defense Counsel and he is bringing you in and he is going to*

24   *set you up and throw you under the bus, so you should know*

25   *this.*  And let me make one point clear, I have never -- I have

AGENT MOHR - Redirect

1    talked to every witness in the case, except one, I have never

2    told anybody, *I'm calling you as a character witness*, that's

3    simply not true.  I told them the questions I would ask them.

4    I told them why I'm calling them, and I told them what I was

5    not going to ask them, but I have never told anyone that.

6         Ms. Mohr never told them the truth, that, *After your*

7    *interview, the Government has had a chance, since filing a*

8    *James motion now, to think that you may be guilty*, she could

9    have told them that, *and that's why you need a lawyer*.  No.

10   *You need a lawyer, because that Defense Counsel is making*

11   *suggestions, that you are guilty*, and that's just not fair.

12        THE COURT:  All right.  Ultimately, these issues end

13   up being difficult, because there is, in fact, a right to

14   advise, but not a right to chill, and where is the line between

15   the two?  In this case, I don't think the line was crossed.

16   That is not to say that there aren't some things that I am less

17   than happy about.  I have already mentioned the fact that, you

18   know, you don't need to say that the Court has authorized, and

19   then go forward, as if somehow you are speaking for me.  I

20   speak for me, and I don't want anyone, whether it be an

21   attorney or an agent or an investigator presenting as speaking

22   for me, but having said that, do I view there being some

23   attempt to deceive, with regard to that?  No, I don't.  I think

24   that there's been explained, the Government came to me and I

25   said you can go and talk to the witnesses, but that was not an

AGENT MOHR - Redirect

1    authorization, in my mind.  It was a recognition of the fact

2    that you have the right to talk to a witness, so it is what it

3    is.

4          Am I happy about the fact that there's a suggestion

5    that in certain pleadings filed that, *You may be involved in*

6    *this conspiracy*?  I'm not happy about the imbalance of that,

7    because, as is clear, since we have been talking about these

8    issues, I think it's a factually accurate statement.  It's not

9    a lie to say, and I am fleshing this out, that the argument for

10   selective prosecution was, in fact, dependent upon the -- a

11   construct, which was that there was a group of persons who were

12   equally -- of equal culpability, whatever that may be, and that

13   those that were white were not prosecuted and that

14   Ms. Portillos being Hispanic, was, and so I'm not -- and I am

15   not suggesting that Mr. Mosby did anything wrong by that.  I

16   mean, that's the position you pretty much got to take if you

17   are going to take that motion down -- down the pathway.

18         I do note that taking that -- filing that motion has

19   caused what is clearly discernible to me; and that is, there is

20   a degree of mutual prickliness between the opposing benches,

21   because each, in some way, feels that their individual

22   character has been impugned, either because they are racially

23   motivated or because they are, you know, misleading witnesses,

24   or whatever it may be, and both sides need to kind of just stop

25   with the -- with letting that stuff get under your skin.  I

AGENT MOHR - Redirect

1    mean, to some extent, it is natural that it do so, but, on

2    another level, it really doesn't help to be talking about, you

3    know, this on a personal level.

4         Having said that, here's the basis on which I conclude

5    that there was not anything intimidating or designed to or

6    having the effect of chilling the witness.  It was -- as I have

7    said, I have listened to the interview.  The transcripts are

8    available -- the transcripts -- the tape, the audio is

9    available.  It could be no more low key.  I want to say that

10   the longest one was 15 minutes, the shortest one was somewhere

11   in the nature of, and I don't have the timing off the top of my

12   head, but I want to say eight minutes.  They were all in that

13   8- to 15-minute range.  There was never any suggestion that you

14   not testify -- that a witness not testify.  There was never any

15   tension or suggestion that one was being intimidating or that

16   the witnesses were intimidated.  There was a conversation, and

17   the conversation was fairly simple.  As I said, it was the part

18   that I am not fan of, which is, *I'm authorized to contact you.*

19   *Do you remember speaking to Agent Romero?  Do you have any*

20   *changes to that*?  There was the suggestion -- or the statement

21   that there was a suggestion in pleadings that you may be

22   involved, and then an advisement of your right to counsel, an

23   advisement of the penalties of perjury, but there was not

24   anything that I would or could fairly conclude was pressure on

25   the part of the witness, and I will not presume pressure or an

AGENT MOHR - Redirect

1    improper violation of counsel's -- of the Defendant's right to

2    due process, by virtue of the fact that they were advised of

3    the rights that they are entitled to be advised of.  The right

4    to counsel.  The right not to incriminate themselves.  Excuse

5    me.  And the right to -- and the knowledge of what the

6    penalties of perjury are.

7           I also note, although it is not particularly

8    important, that the ultimate point is the Defendant denied some

9    evidence?  Or potentially denied some evidence?  And I am not

10   suggesting that there is even an answer to that, at this

11   juncture.  I mean, I don't know what witnesses will or will not

12   testify.  I have not been told that any witness will not

13   testify.  I also am acutely aware of the fact that if the basic

14   issue is that Ms. Portillos was not the only one to receive

15   mail from the jail, that that is a fact that is well known to

16   Agent Romero, as well as others who would be testifying during

17   the course of the trial.

18          So I am not in a posture where I believe; one, that

19   there was, notwithstanding the fact that, you know, some things

20   could have been said differently, I am not finding that there

21   was intimidation of witnesses or a chilling imposed on them by

22   advising them of the right to obtain counsel or of the

23   penalties of perjury.  There was not.  In my listening of that,

24   of those conversations, any attempt to dissuade the witness

25   from testifying or to influence the witness' testimony, and

1    there's nothing that's been brought before me to suggest that

2    that, in fact, even occurred.  There were queries that were

3    made by witnesses to Defense Counsel about what's going on

4    here?  Okay.  I don't dispute that or deny that, but that is a

5    long way from intimidation of witnesses or improper denial of

6    the due-process right to a fair trial, and as a consequence, I

7    deny the motion at this juncture.

8            Is there anything else in this matter --

9            MR. MOSBY:  A couple of things, Your Honor.

10           THE COURT:  -- we need to talk about.  Yeah.

11           MR. MOSBY:  I have -- I'm getting the transcriptions

12   off the tape and would like permission to -- once I get them, I

13   can't get them until next week, because they have got a ten-day

14   turnaround, unless you pay a thousand dollars, so I would ask

15   for permission that once I get those transcripts to submit them

16   to make -- to complete the record?

17           THE COURT:  You may.

18           MR. MOSBY:  Thank you.

19           THE COURT:  I will tell you, I'm not -- I mean the

20   audio is already in the record.

21           MR. MOSBY:  Well, I have never understood that

22   nontraditional, so I mean, I don't know how that works.

23           THE COURT:  The way I will put it to you is this, I

24   have no problem with you submitting a Defense-submitted

25   transcription of the audio, but I note that my ruling is based

AGENT MOHR - Redirect

1    on my hearing the audio transcript, and even if the Government

2    or you gave me a transcript, I would be listening to the tape.

3    There is nothing that is, in my view, difficult to hear or

4    understand, so there's nothing about the provision of a

5    transcript that would be likely to change my -- not likely,

6    that would change my ruling, because I heard everything, but I

7    give you -- grant you the right to complete your record.

8         MR. MOSBY:  That's all I'm talking about.

9         THE COURT:  That's fine.

10        MR. MOSBY:  Okay.  And the other thing, you know, as

11   usual, once we start getting prepared for trial, your clarity

12   comes into sight and you understand things a little bit

13   different.  It appears, you know, from my reading, Your Honor,

14   and maybe counsel can stipulate to this, but it appears that

15   the Statute of Limitations on the 18 U.S.C. 287 claim is five

16   years, and I would just like to know from counsel, is there any

17   dispute to that?

18        MS. PALUCH:  Five years on the 287 charge is correct,

19   Your Honor.

20        THE COURT:  Okay.

21        MR. MOSBY:  Okay.

22        MS. PALUCH:  The conspiracy count --

23        MR. MOSBY:  No, no.  I'm not talking about the

24   conspiracy.  I understand the last overt act.  I'm only talking

25   about the 286 and the 287.

AGENT MOHR - Redirect

1      THE COURT:  And I will await whatever -- since there

2   is agreement of counsel on that point, I will await whatever

3   comes of that, at some juncture down the road.

4      MR. MOSBY:  Yeah.  Came up --

5      THE COURT:  I'm not asking you to make any motion or

6   not make any motion.  You asked, they answered and I will wait

7   and see where we go from there.

8      MR. MOSBY:  Thank you.

9      THE COURT:  All right.  We will be in recess.

10     THE COURTROOM DEPUTY:  All rise.

11   (Recess at 10:50 a.m.)

12                    **REPORTER'S CERTIFICATE**

13   I certify that the foregoing is a correct transcript from

14   the record of proceedings in the above-entitled matter.  Dated

15   at Denver, Colorado, this 17th day of October, 2016.

16

17                                   *S/Tamara Hoffschildt*
                                   Tamara Hoffschildt

18

19

20

21

22

23

24

25