IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 15-cr-149-RM-MJW-6

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

CRISTINA PORTILLOS,

    Defendant.
_____

**REPORTER'S TRANSCRIPT**
Testimony of Michelle Steinhaus - Excerpt of Proceedings
_____

    Proceedings before the HONORABLE RAYMOND P. MOORE, Judge, United States District Court for the District of Colorado, commencing at 9 a.m., on the 4th day of May, 2016, in Courtroom A601, United States Courthouse, Denver, Colorado.

**APPEARANCES**

For the Plaintiff:        Martha Paluch & Bryan Fields
For the Defendant:       John Mosby

TAMMY HOFFSCHILDT, Official Reporter
901 19th Street, Room A251
Denver, Colorado, 80294
(303) 292-1088

Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

1    (The following is an excerpt of the proceedings held
2 in this matter.)
3    *THE COURT:* All right.  Then we're left with the
4 Motion To Quash, with respect to Michelle Steinhaus.
5    What I have done is continued this matter, if you
6 would.  It was originally brought up at 8:30 on Monday, the
7 first day of trial, and I continued it here for an examination
8 outside of the presence of the jury.  Call her.
9    *MR. MOSBY:* At this time we call Michelle Steinhaus.
10    *THE COURT:* And you can come up here, Mr. Kornfeld.
11    *MR. KORNFELD:* Thank you, Your Honor.  I was going to
12 ask, just logistically, what you want me to do?
13    *THE COURT:* Thank you.  You can come up and we will
14 get you a chair.
15    *THE COURTROOM DEPUTY:* Raise your right hand, please.
16    (**MICHELLE STEINHAUS** was sworn.)
17    *THE WITNESS:* I do.
18    *THE COURTROOM DEPUTY:* Please have a seat.
19    *THE COURT:* And here is the way I want to do this, I
20 want to have you conduct your examination, if you wish to --
21 I'm not saying that you need to advise her with respect to
22 every question, but if you wish to advise her, simply do so,
23 and I am speaking to Mr. Kornfeld, obviously, at this juncture.
24    Ma'am, you either answer the question or if -- or you
25 may invoke and when we see where we are after the Examination,

1  and the Cross-examination, we will then decide what it is that
2  we're going to do, with regard to this witness.
3          Do you have any other or more preferred approach or
4  procedure, Mr. Mosby?
5          *MR. MOSBY:* No, sir.
6          *THE COURT:* How about you, Ms. Paluch?
7          *MS. PALUCH:* I am sorry, Your Honor.
8          *THE COURT:* That's all right. I'm saying, is the
9  suggested course of proceedings appropriate, in your opinion,
10 or are you requesting anything differently what I'm proposing?
11         *MS. PALUCH:* No, Your Honor. Thank you.
12         *THE COURT:* All right. Go ahead.
13         *MS. PALUCH:* Your Honor, though I do have one thing,
14 should the witness be put under oath?
15         *THE COURT:* I'm sorry, go ahead.
16         *THE COURTROOM DEPUTY:* She was.
17         *MS. PALUCH:* Thank you.
18                        **DIRECT EXAMINATION**
19 *BY MR. MOSBY:*
20 *Q*  Ma'am, state your full name, please.
21 *A*  My name is Michelle Steinhaus.
22 *Q*  And, Ms. Steinhaus, where do you reside?
23 *A*  I live in Eckert, Colorado.
24 *Q*  How long have you lived there?
25 *A*  Almost five years.

1   *Q*   Where did you live in January of 2009?

2   *A*   In Delta.

3   *Q*   And what was the address there?

4       *MR. KORNFELD:* I'm going to, at this point, advise the

5 witness to invoke her Fifth Amendment Privilege and not answer

6 that question.

7       *THE COURT:* And, ma'am, are you invoking?

8       *THE WITNESS:* Yes, I am, Fifth Amendment.

9       *THE COURT:* Next question.

10   Q   (By Mr. Mosby) Do you know an individual by the name

11 of Pam Lucero?

12       *MR. KORNFELD:* Same advisement.

13       *THE WITNESS:* I invoke my Fifth Amendment.

14       *THE COURT:* Next question.

15   Q   (By Mr. Mosby) How long have you known Pam Lucero?

16       *MR. KORNFELD:* Same advisement.

17       *THE WITNESS:* I invoke my Fifth Amendment.

18       *THE COURT:* Next question.

19   Q   (By Mr. Mosby) How did you first meet Pam Lucero?

20       *MR. KORNFELD:* Same advisement, and obviously counsel

21 will ask the questions I'm going to advise this witness not to

22 answer any questions having to do with an individual name

23 Pam Lucero.

24       *THE COURT:* Understood. Do you invoke your Fifth

25 Amendment Privilege?

1     *THE WITNESS:* Yes, I do.

2     *MR. MOSBY:* I will say the questions all have to do

3  with Pam Lucero, so I'm not going to waste this Court's time.

4     *THE COURT:* All right. Then the question is, clearly,

5  we have a circumstance where the relevant inquiry is that I

6  should be making a determination as to whether or not there is

7  a substantial and real possibility of criminal exposure and

8  whether or not she has a valid privilege to invoke. If you

9  disagree with the validity of her invocation of the privilege,

10 Mr. Mosby, I will hear you as to why I should conclude that she

11 does not have a valid privilege, and for purposes of the

12 record, and only for purposes of the record, I am mindful of

13 the various things and positions that have been taken by the

14 respective parties, both during the course of this trial, as

15 well as during the course of an earlier Motion To Dismiss, as

16 to which pleadings were filed, and a in-court hearing was held.

17     So the -- all of that is before me, and I am mindful

18 of it. I will take your argument.

19    *MR. MOSBY:* Your Honor, we would state the questions

20 indicate there is no question that will be asked of this

21 witness to implicate her in any crime. In fact, as I go

22 through my questions, these are all the exact same questions

23 that I am -- that she was asked by Agent Romero over the phone.

24 I do not intend to go outside of the scope of the questions

25 that she has been asked by Agent Romero or ask anything other

1  than this.  You know, to ask someone, do they know a person, to
2  ask someone how long they have known that person, to ask
3  someone the nature of their association does not, in any way,
4  implicate this person or put her in any jeopardy.  And at this
5  point in time, I don't think any of the questions I have asked,
6  and where there has been a direction to the witness to invoke
7  her Fifth, are sustainable.  I mean, *Do you know Pam Lucero*?  I
8  don't understand how that, in any way.  It should also note, in
9  a very, very strange way, what this Court said earlier about
10 Statute of Limitations.  I mean, there is a real substantial
11 possibility here, because some of the conduct --
12         *THE COURT:*  Doesn't have anything to do with the
13 conspiracy charge.
14         *MR. MOSBY:*  Well, Your Honor, I don't know if there is
15 any evidence, at least I have no evidence, and I am not going
16 to ask her any questions related to the conspiracy charge, and
17 you are right, so at this time, Your Honor, I just don't see
18 what question I have asked that would, in any way, put this
19 lady at harm or jeopardy.  All right.  Or any way violate their
20 due process.
21         Now, I will also note that during the testimony of
22 Agent Romero, in this case, he indicated there was no evidence
23 of wrongdoing on the part of of Ms. Steinhaus, as I said, you
24 know, I mean, I'm not going to call a witness --
25         *THE COURT:*  I mean, that's an interesting

1    characterization of the evidence.  Frankly, that whole exchange
2    was making me want to rip my ears from my head from both sides,
3    because I don't know why you both kept chasing this, but
4    ultimately what the testimony was, is that at the time of the
5    interview, he did not have -- he did not believe or at that
6    point in time, believe that he had evidence of guilt.  The
7    issue of Fifth Amendment is not one that is for the agent to
8    decide.  It is not a question of whether, even if he believed X
9    or Y or Z, that I have to accept that, or that the witness has
10   to accept that, as true.
11           I heard that testimony, that testimony is not
12   particularly compelling to me.  Let me hear from you
13   Ms. Paluch.
14           *MR. FIELDS:*  Your Honor, may I?
15           *THE COURT:*  Yes, absolutely.
16           *MR. FIELDS:*  As to the -- sorry, Your Honor.  Thank
17   you.  I believe Mr. Mosby said that he was going to ask
18   questions that were the same as the questions that were asked
19   on the telephone.  The obvious difference here is that we are
20   in a court of law and Ms. Steinhaus is now under oath.  So the
21   question presented here is, could any of her answers provide a
22   link in a chain that could lead to her prosecution?  As to that
23   question, she has been advised and she has invoked the Fifth
24   Amendment.  So on that record, I believe that she does have
25   valid grounds to quash the subpoena.  But I would note that as

1    far as we're concerned, we are somewhat neutral in this

2    dispute, Your Honor, if Ms. Steinhaus wants to testify --

3        *THE COURT:*  Oh yeah, you are neutral.  Go ahead.  Tell

4    me another one.

5        *MR. FIELDS:*  Your Honor, I say that truthfully.  The

6    Defendant has a right to call her to the stand.  All that we

7    wanted was that she would have counsel, that was the purpose of

8    our earlier motion.  She now has counsel.

9        *THE COURT:*  I understand that.

10       *MR. FIELDS:*  So I just want to make that very clear,

11   that we -- there's been no intimidation.  There's nothing from

12   the Government.  There's no threat of prosecution here.  The

13   issue is, could, theoretically, an answer provide a link in a

14   chain that might lead to a prosecution?

15       *THE COURT:*  Understood. Let me do this.

16   Ms. Steinhaus, would you step down and go back to your seat?

17   Mr. Kornfeld, if you would go to the podium and make what

18   record you feel is appropriate in this circumstance.

19       *MR. KORNFELD:*  All right.  Your Honor, on behalf of

20   Ms. Steinhaus, I'm very comfortable saying I don't have a dog

21   in this hunt.  My only concern is the most narrowed concern

22   probably of anybody here; and that is, protecting her privilege

23   and her rights and her potential criminal liability, and I do

24   have some concerns in that regard, and they are three fold.

25   Number one, is, of course, as the Court has articulated, as one

1  of the touch points here; and that is, could any of her

2  statements furnish a link in the chain implicating her in the

3  charged conspiracy. That's number one. And I agree with the

4  Court's analysis, that, you know, believe me, I'm the person

5  with the least knowledge of the evidence. I'm acutely aware of

6  that. But I'm certainly not comfortable that a statute, the

7  statute has run on the conspiracy --

8      *THE COURT:* The statute has not run on the conspiracy.

9      *MR. KORNFELD:* Exactly. The other thing is, she has

10 made prior statements, and -- including statements to a Federal

11 Agent when she was not represented, and that could potentially,

12 depending on the testimony, Mr. Mosby discusses what he is

13 going to ask on Direct; A, I have no control over that; and B,

14 I certainly have no control over what is asked on Cross in an

15 attempt to impeach.

16     So I have in the -- in the, sort of, group or

17 constellation of concerns, I believe that depending on the

18 testimony 18 U.S.C. Section 1001 could be implicated. And then

19 third, of course, because, as counsel points out, she would be

20 under oath in a court of law, as opposed to when she gave

21 statements either -- before she was represented -- either to

22 Agent Romero or to the investigator for Ms. Portillos, we're in

23 a different playing field here because she is, in fact, under

24 oath. So perjury is the third concern.

25     Now, the concern is not an abstract concern,

1   Your Honor.  I have focused on a few things.  The first thing I
2   focused on is exactly what the Court noted; and that is, that
3   pleading statements by Ms. Portillos through counsel, in which,
4   in **Document 201,** in the Motion For Selective Prosecution, it's
5   basically said, and I am paraphrasing, *My client did the same*
6   *thing, as Ms. Portillos and the other folks that have been*
7   *charged with a Federal offense*; number one; and number two,
8   *That Ms. Portillos (sic) could have been charged, had the*
9   *Government decided to charge her.*  So I was --
10              *MR. MOSBY:*  Steinhaus.
11              *MR. KORNFELD:*  Steinhaus.  Excuse me.  So I was
12  acutely aware of that statement, and obviously my radar started
13  beeping a little bit.  And then I looked at some of the prior
14  statements, and obviously I'm not here to share my thought
15  process, my work product or my attorney-client communications,
16  but I looked at those carefully and discussed those carefully.
17  And then, thinking ahead, if I were the prosecutor, and I were
18  trying to impeach, I looked at some of the statements that I am
19  aware of, which are noted in the *James* log, which implicate or
20  reference Michelle or Shelly, or the girls, or other things
21  that I think a reasonable interpretation of those statements,
22  you know, again potentially implicate my client.
23              So those made me extremely cautious.  So because of
24  all of those things, I do believe that Ms. Steinhaus does, in
25  fact, have a good-faith basis to invoke her privilege.  I have

1  so instructed, obviously. I have taken, perhaps, a very
2  conservative view, but that is the view that I take of these
3  things. I don't want to get, literally or figuratively within
4  the zip code, and that pertains to this case, literally, and
5  that's where -- and that's where I'm coming from. And
6  obviously, again, it's not meant as anything other than me
7  doing my job to protect my client's rights and I appreciate --
8    *THE COURT:* No one is suggesting --
9    *MR. KORNFELD:* No, no, no. I know that, and I
10 obviously am respectful of what all of the lawyers have to be
11 doing to do their job. So that's my record on it. I feel,
12 obviously, if the Court -- if this were -- if the Court wanted
13 more detail, you know, I --
14   *THE COURT:* Look, I would want more detail if it were
15 a case where I did not have the benefit of the motion to which
16 you refer, coupled with the trial that has -- has gone on. I
17 do not need more detail to rule.
18   *MR. KORNFELD:* Thank you, Your Honor.
19   *THE COURT:* You can return to your seat.
20   *MR. KORNFELD:* Thank you, Your Honor.
21   *THE COURT:* Obviously, there are a couple of tensions
22 here. One is the witness' right not to incriminate herself,
23 and she has that right, and the other consideration, of course,
24 is the Defendant's right and ability to present a defense.
25 With regard to -- I don't see them as tugging against each

1  other in this case.  Much of what is sought to be asked, at

2  least as by what was explained to me from the podium, has

3  already been introduced into evidence in this trial through

4  Agent Romero, but even were that not the case, Ms. Leff has

5  indicated that she intends to testify, and so I do not view

6  this as a preclusion of the opportunity to present a defense.

7  Even if that were squarely front and center, the question

8  becomes, *Does the witness have a right to invoke the Fifth in*

9  *this case*?  And my answer is, *She does*.  One perusing the

10 record here will find that the parties are, at various point in

11 time, somewhat mercurial; in that, at different points in time

12 it seems as if the Defendant has suggested that, as has been

13 noted by Mr. Kornfeld, that Ms. Steinhaus is guilty of an

14 offense.  Certainly, at -- at other points in time, the

15 Government has suggested that there may be, in fact, matters

16 that occur during the course of Cross-examination, here, which

17 would implicate her in the conspiracy, and at other points in

18 time the Government suggests that the evidence is different as

19 to Ms. Steinhaus than as to Ms. Portillos.  Regardless of those

20 factual matters, both sides, during the course of these

21 proceedings, have made it clear that there is a -- that the

22 standard is met, that there's real and substantial possibility

23 of implicating herself in a conspiracy as to which the Statute

24 of Limitations has not run.  I find that there's a real

25 possibility of criminal exposure for Ms. Steinhaus, should she

1 testify in this case. Exposure, at the very least, with

2 respect to the conspiracy. And counsel, Mr. Kornfeld, is in a

3 better position than I to advise with respect to perjury and

4 one thousand one false statement, but certainly if her

5 testimony differed from -- well, it's a Hobson's choice, I

6 suppose it depends on what the true facts are, if her testimony

7 is consistent with what she said before and that is proven

8 wrong, then there is perjury, and if her testimony is

9 inconsistent with what she said before, then there's the

10 possibility of a thousand and one, but those are a little more

11 distant to me than the conspiracy issue.

12 There is exposure. Both sides have taken the position

13 at various points in time, that there is a potential for

14 exposure for Ms. Steinhaus, in this matter. I find that she

15 has been represented by counsel. She has been represented by

16 counsel who has performed more than just an off-the-cuff

17 assessment. He has met with her. He has considered this

18 matter legally. He has looked at pleadings that have been

19 filed. He has considered evidence that is known to him, and he

20 has advised her and advised me that it is his professional

21 belief that she has the right to exercise the Fifth Amendment

22 Privilege against self-incrimination, in this case.

23 The only thing I heard to the contrary is, *Well, all I*

24 *was going to do was ask what she was asked before*, and that

25 does not, in any way, shape or form change the scale, if you

1  would.  It does not, in any way, shape or form wipe away the
2  possibility that the substantial and real possibility of
3  criminal exposure, were this woman were to testify.  The fact
4  that others may take different positions, that's up to them,
5  that's up that their advice and that's up to their counsel, and
6  I am not going to assume that the details are the same for each
7  and every one of these witnesses that has come before me.  I'm
8  referring to Ms. Leff.  I'm sorry, is it Let?
9         *MR. FIELDS:*  Leff.
10        *THE COURT:*  Spell it.
11        *MR. FIELDS:*  L E F F, Your Honor.
12        *THE COURT:*  Leff, Steinhaus, Barrett and Gallegos, all
13 right.  On the record before me, I conclude that the witness
14 does have a valid right to the Fifth Amendment Privilege
15 against self-incrimination.  She would exercise that right with
16 respect to any questions that are pertinent to this trial,
17 therefore, the only thing that could occur is -- by calling
18 her, is to have her exercise her Fifth Amendment Right in front
19 of the jury, and to provide no substantive information that is
20 usable during the course of this trial.  I therefore -- and
21 noting that it is improper to call a witness solely for the
22 purpose of having that witness invoke in front of the jury, I
23 therefore grant the Motion To Quash The Subpoena To Testify, by
24 Michelle Steinhaus.  Subpoena to -- well, yeah.  The Motion To
25 Quash **427** -- I'm sorry, it's getting late -- is hereby granted,

1    and she is excused from testifying in this trial.

2           I will let you make whatever record you want to.

3           *MR. MOSBY:*  Just for the record, the Court has

4    indicated a number of times that this counsel has indicated

5    that other people were guilty, like his client.  You know, I

6    think the record can be read that -- and the Court knows what a

7    prima facie case of selective prosecution is.  What you are

8    required to allege.  But what I allege is there were other

9    people who could have been charged, like my client, and I

10   have -- and I have said, also, there's a reply in that motion,

11   also, that no one talks about, and if you read the reply, it

12   also said that every individual, Ms. Leff, Ms. Steinhaus,

13   Ms. Barret and my client, were told that they had done nothing

14   wrong, and they that they did nothing wrong.  So the

15   implication --

16          *THE COURT:*  The fact that they were told something by

17   an agent is not binding on the Government.  It is not binding

18   on anyone.  And the fact that you said that they could be --

19   how -- what is the words that you prefer over mine?

20          *MR. MOSBY:*  Could have been charged.

21          *THE COURT:*  Yeah.  Could have been charged, that is a

22   basis for the invocation of privilege.  If she could be

23   charged, then she has a right to invoke the privilege against

24   self-incrimination.  And my only point is that both sides have

25   suggested to me, long before this Motion To Quash was filed,

1    that that was, in fact, true; that there was a substantial and
2    real possibility, depending upon the development of evidence,
3    that she could be charged.
4         *MR. MOSBY:* Well, this Court leaves no doubt as to
5    what is said. I am just making the record.
6         *THE COURT:* All right. Fair enough, sir. All right.
7    We're done. Unless -- I don't want to cut you off. Are you
8    done?
9         *MR. MOSBY:* Me? Oh yeah.
10        *THE COURT:* Okay. All right. Mr. Fields, do you have
11   anything you want to make, by way of a record?
12        *MR. FIELDS:* No, Your Honor. Nothing from the
13   Government. Sorry. Just had to do with Mary Gallegos.
14        *THE COURT:* If you guys want to be friendly, I'm fine
15   with that.
16        *MR. MOSBY:* Why be enemies.
17        *THE COURT:* I order you both to sing me a Bieber song.
18   You don't want to do that? Come on. You look more like him.
19   All right. Mr. Kornfeld, you are now excused.
20        *MR. MOSBY:* The Bieber song doesn't fit you.
21        *THE COURT:* No, it doesn't fit me. Doesn't fit me
22   real well. Let's talk, with them excused, a little bit about
23   where we see tomorrow going, because, for planning purposes,
24   again, I understand that you needn't show your hand, but in a
25   general sense, are you going to be putting evidence?

1      *MR. MOSBY:* Yes, Your Honor.

2      *THE COURT:* Okay.

3      *MR. MOSBY:* And you know, Your Honor, it's going to be
4   quick. And I am -- we are going to start at 9. I'm going to
5   get my witnesses. I don't know how long Cross-examination is
6   going to be, but they are going to be short.

7      *THE COURT:* All right.

8      *THE COURT:* So what I'm figuring is, if that's the
9   case, there's -- you should presume that you are going to close
10  tomorrow afternoon.

11     *MR. MOSBY:* Yes.

12     *THE COURT:* And we will fit an advisement,
13  jury-instruction conference in there, somewhere. I have
14  received the Government's additional instruction, paren,
15  without the last paragraph of that standard instruction, closed
16  paren, but I fixed that. And if you have any other
17  instructions that you want to submit, please get them here
18  either tonight or first thing tomorrow morning, because I can't
19  give you an exact time as to when that instruction conference
20  is going to be, so, but I will consider any additional
21  instructions. All right.

22     *MS. PALUCH:* Your Honor, I was just going to state
23  that paragraph you are referencing was deleted because it's
24  included in one of the other instructions, but I was just
25  making a record for that.

1  *THE COURT:* I'm having my fun with you, and I am not
2  suggesting that you were trying to ... gain an advantage that
3  you were -- well, or do anything wrong. I'm just noting that
4  it jumped out at me that there was a paragraph missing.
5  *MS. PALUCH:* Certainly, Your Honor.
6  *THE COURT:* Okay. We will be in recess.
7  *THE COURTROOM DEPUTY:* All rise. Court is in recess.
8  (Recess at 4:27 p.m.)

9  **REPORTER'S CERTIFICATE**

10  I certify that the foregoing is a correct transcript from
11  the record of proceedings in the above-entitled matter. Dated
12  at Denver, Colorado, this 17th day of October, 2016.
13
14  *S/Tamara Hoffschildt*
    Tamara Hoffschildt
15
16
17
18
19
20
21
22
23
24
25