FILED  
**United States Court of Appeals**  
**Tenth Circuit**

**November 16, 2017**

**Elisabeth A. Shumaker**  
**Clerk of Court**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CRISTINA PORTILLOS,

    Defendant - Appellant.

No. 16-1323  
(D.C. No. 1:15-CR-00149-RM-6)  
(D. Colo.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **KELLY**, **McKAY**, and **McHUGH**, Circuit Judges.

_____

Defendant-Appellant Cristina Portillos was convicted of conspiracy to file false claims for a refund, 18 U.S.C. § 286 (Count 1), and aiding and abetting the filing of false claims for refunds, 18 U.S.C. §§ 2(a), 287 (Counts 17 and 30). She was sentenced to 21 months on each count, to run concurrently, as well as three years' supervised release on each count, also to run concurrently. On appeal, Ms. Portillos challenges the district court's denial of discovery and an evidentiary hearing on her selective and vindictive prosecution claims, and she further claims a violation of her due process right to call witnesses in her defense. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

Ms. Portillos and seven other defendants were indicted based on their involvement in an income tax fraud scheme in which prisoners would obtain identifying information from other inmates and inmates' relatives to generate false tax returns.  1 R. 40–60.  Several nonincarcerated members of the conspiracy provided addresses for the receipt of refund checks; the refund checks were then cashed and distributed among the conspirators.  Id. at 41–45.  Ms. Portillos allowed her address to be used on several of the false tax returns and forwarded the refund checks she received to a coconspirator.  Id. at 43.  After a jury trial, she was convicted for her involvement in the scheme.  Id. at 152.

Prior to trial, Ms. Portillos filed a motion alleging selective and vindictive prosecution and requesting discovery and an evidentiary hearing on her claims.  2 R. 22.  Her selective prosecution claim focused on four unindicted women whose addresses were also used for some of the false returns.  Id. at 22–44.  Ms. Portillos (who is Mexican American) alleged that these four women (who are white) were similarly involved in the tax fraud scheme but were not indicted, evincing a racially motivated prosecution.  Id. at 25, 44.  In her vindictive prosecution claim, Ms. Portillos alleged that her prosecution was in retaliation for her refusal to cooperate with the government during its investigation.  Id. at 51–52.  The district court denied Ms. Portillos's motion, finding that differences in the evidence explained the decision to indict Ms. Portillos (and not the other women) and that no evidence suggested that

the government prosecuted Ms. Portillos merely for her refusal to cooperate. 3 R. 178–80. Accordingly, neither discovery nor an evidentiary hearing was ordered.

After the district court denied her motion, Ms. Portillos informed the government that she intended to call the four unindicted women as defense witnesses. 1 R. 81. The government requested that the court appoint counsel for each witness, reasoning that the witnesses might either incriminate themselves or subject themselves to perjury charges during questioning about their involvement in the tax fraud scheme. Id. at 81–83. The district court denied the request but noted that the government could interview the witnesses and had the right to advise them of their right to an attorney and warn them about the penalties for perjury. Id. at 124, 130.

An IRS agent interviewed the four potential witnesses, telling each that the court had authorized the interview and that Ms. Portillos was suggesting that they might be involved in the tax fraud scheme. 1 Aplt. App. 152, 155, 165, 170, 182, 185, 196, 203. The agent also informed each witness of her right to testify, of her right to counsel, and of the penalties for perjury. Id. at 155–56, 160, 170–71, 185–87, 202–05. After the interviews, two of the witnesses requested and received court-appointed counsel. 1 R. 99.

Ms. Portillos then filed a motion alleging that the IRS agent had interfered with the witnesses' decisions to testify, thus infringing on Ms. Portillos's right to a fair trial, id. at 91–92, and she moved to dismiss the indictment against her, 3 R. 237. After listening to recordings of the interviews, the court denied the motion. Id. at

3

247, 249. It held that the interviews did not have the effect of chilling the witnesses, finding no suggestion that the witnesses were discouraged from testifying. Id. at 247.

At trial, one of the witnesses who received appointed counsel invoked her Fifth Amendment privilege and was excused from testifying. 1 R. 150. None of the other unindicted women did the same.[1] See id. Of those three, Ms. Portillos called only one to testify.[2] See Courtroom Min., ECF No. 439.

## Discussion

On appeal, Ms. Portillos challenges the district court's denial of her motion for discovery and an evidentiary hearing on her selective and vindictive prosecution claims. She also challenges the district court's denial of her motion alleging witness interference and a denial of due process.

A.   Selective Prosecution

A district court's grant or denial of a defendant's selective prosecution discovery motion is reviewed de novo. United States v. Deberry, 430 F.3d 1294, 1298 (10th Cir. 2005). Defendants seeking discovery on a selective prosecution claim "must produce 'some evidence' of both discriminatory effect and discriminatory intent." United States v. Alcaraz-Arellano, 441 F.3d 1252, 1264 (10th Cir. 2006) (quoting United States v. Armstrong, 517 U.S. 456, 470 (1996)). "To

---

[1] One of the unindicted women initially indicated that she would also invoke her Fifth Amendment privilege but eventually decided not to. 1 R. 150.

[2] This witness was appointed counsel by the court in connection with her testimony at trial. Min. Order, ECF No. 455.

establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." Armstrong, 517 U.S. at 465. A claimant must also show "that discriminatory intent was a 'motivating factor in the decision' to enforce the criminal law against the defendant." Alcaraz-Arellano, 441 F.3d at 1264 (quoting Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1168 (10th Cir. 2003)). "Discriminatory intent can be shown by either direct or circumstantial evidence." Id.

Even if Ms. Portillos were able to show that the four unindicted women were similarly situated to her (which the government contends she has not done), she has made no showing of discriminatory intent. As proof of discriminatory intent, she primarily relies on a comment made by the district court judge: "There is something there from which one could draw at least an inference of some kind of a racial decision." 3 R. 175. That comment, however, was made in reference to whether Ms. Portillos had shown that similarly situated individuals of a different race were not prosecuted, which goes to discriminatory effect. See id. at 174–75. It does not address discriminatory intent.

Ms. Portillos claims that discriminatory intent can be inferred from discriminatory effect. Although intent can be shown by circumstantial evidence, the evidence here is not "a clear pattern, unexplainable on grounds other than race." Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266 (1977). And Ms. Portillos cannot rely solely on evidence of discriminatory effect when there is direct evidence of the motivation for prosecuting her. See Alcaraz-Arellano, 441

5

F.3d at 1265.  The district court found that the government prosecuted Ms. Portillos because it had additional evidence of her guilt.  3 R. 175–78.  Consequently, Ms. Portillos cannot establish discriminatory intent by showing discriminatory effect alone.

Ms. Portillos further attempts to show discriminatory intent by arguing that although the government claimed it did not have enough evidence to obtain convictions, it had impeachment evidence against the unindicted women.  In addition to this not necessarily being an inconsistent position, it does not address discriminatory intent.  To be inconsistent, the impeachment evidence would have to be enough to indict the women.  If this were so, it could show that the women were similarly situated to Ms. Portillos, which could support discriminatory <u>effect</u>, not <u>intent</u>.  As Ms. Portillos did not produce any evidence of discriminatory intent, she was not entitled to discovery or an evidentiary hearing, and we need not address the discriminatory effect element of her selective prosecution claim.  See <u>Alcaraz-Arellano</u>, 441 F.3d at 1266 ("Having held that [the defendant] failed to present evidence satisfying <u>Armstrong</u>'s discriminatory-intent prong, we need not address whether the evidence he presented satisfied the discriminatory-effect prong.").

B.     <u>Vindictive Prosecution</u>

"This court reviews the district court's factual findings on prosecutorial vindictiveness for clear error, and reviews de novo its legal conclusions."  <u>United States v. Sarracino</u>, 340 F.3d 1148, 1177 (10th Cir. 2003) (emphasis omitted).  To establish a claim for vindictive prosecution, the defendant must prove "either (1)

actual vindictiveness, or (2) a realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness." United States v. Raymer, 941 F.2d 1031, 1040 (10th Cir. 1991). "Thereafter, the burden shifts to the prosecution to justify its decision with legitimate, articulable, objective reasons." Id. "In determining whether the government has engaged in prosecutorial vindictiveness, this court must determine whether the prosecution engaged in conduct that would not have occurred but for the prosecution's desire to punish the defendant for exercising a specific legal right." Sarracino, 340 F.3d at 1178. Vindictiveness may not be presumed from the mere appearance of vindictive motives, id. at 1177–78, and "the Supreme Court has generally rejected the presumption of prosecutorial vindictiveness in the pretrial context," United States v. Lampley, 127 F.3d 1231, 1245 (10th Cir. 1997).

Ms. Portillos claims that she was prosecuted in retaliation for exercising her Fifth Amendment right against self-incrimination by not cooperating with the government during its investigation of the tax fraud scheme. However, the district court made a factual finding that the decision to prosecute was made based on the evidence, not for refusing to cooperate, 3 R. 179–80, and Ms. Portillos has not explained how that finding constituted clear error. Moreover, even if Ms. Portillos were able to meet her burden of proving vindictiveness, the government has justified its prosecutorial decision with evidence of Ms. Portillos's guilt. See United States v. Peters, 625 F.2d 366, 369 (10th Cir. 1980) (holding that a defendant's refusal to cooperate during an investigation was insufficient to establish vindictiveness where there was probable cause to charge the defendant). Given probable cause, the

decision to prosecute is a matter of discretion, see Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978), and no evidence suggests that Ms. Portillos would not have been prosecuted had she cooperated. Consequently, the district court did not err when it denied Ms. Portillos discovery and an evidentiary hearing on her vindictive prosecution claim.

C.   Witness Interference

"We review de novo a defendant's claim that the prosecution and district court deprived the defendant of the defendant's constitutional right to present a defense by using undue influence to dissuade witnesses from testifying." United States v. Pablo, 696 F.3d 1280, 1295 (10th Cir. 2012). "A criminal defendant's right to present a defense is essential to a fair trial." United States v. Serrano, 406 F.3d 1208, 1214 (10th Cir. 2005). That right, "however, is not absolute"; courts have held that "a defendant's right to present a defense does not include the right to compel a witness to waive his Fifth Amendment privilege." Id. at 1215. "That said, the government cannot substantially interfere with a defense witness's decision to testify." Id. For example, in Webb v. Texas, 409 U.S. 95 (1972), the Supreme Court held that a defendant's due process rights were violated where a judge "gratuitously singled out . . . one witness for a lengthy admonition on the dangers of perjury." 409 U.S. at 97. There, the Court found that "the judge's threatening remarks, directed only at the single witness for the defense, effectively drove that witness off the stand, and thus deprived the petitioner of due process of law." Id. at 98.

8

Webb's due process analysis requires a case-by-case inquiry regarding "whether the government actor's interference with a witness's decision to testify was 'substantial.'" Serrano, 406 F.3d at 1216 (quoting United States v. Crawford, 707 F.2d 447, 449 (10th Cir. 1983)). "Interference is substantial when the government actor actively discourages a witness from testifying through threats of prosecution, intimidation, or coercive badgering." Id. "The potential for unconstitutional coercion by a government actor significantly diminishes, however, if a defendant's witness elects not to testify after consulting an independent attorney." Id. (emphasis omitted).

While the district court did not approve of the IRS agent telling the witnesses that she had court authorization to talk to them, it denied Ms. Portillos's motion to dismiss because there was never any suggestion that a witness should not testify. 3 R. 245, 247, 249. The court found the interviews unremarkable and not intimidating — describing them as "low key" — and ruled that informing the witnesses of their right to counsel, of their right not to incriminate themselves, and of the penalties for perjury did not have the effect of chilling the witnesses. Id. at 247–48. The district court's assessment of the interviews compels the conclusion that they were not coercive. Cf. Serrano, 406 F.3d at 1212 n.1 (10th Cir. 2005) (rejecting the notion that a prosecutor raised witness self-incrimination solely to gain tactical advantage at trial, noting that prosecutors have an ethical obligation to advise unrepresented witnesses of their possible need for counsel and of their right against self-incrimination). Ultimately, only one of the witnesses invoked her Fifth Amendment

privilege at trial, and that decision was made after consulting an independent attorney, which weighs against a finding of coercion. See id. at 1216.

Furthermore, a defendant must make a plausible showing that a witness's testimony would have been material and favorable to his or her defense, and not merely cumulative to other witnesses' testimony, before he or she can demonstrate a denial of due process. United States v. Caballero, 277 F.3d 1235, 1241 (10th Cir. 2002). It is not enough to show "the mere potential for favorable testimony" or to "merely point to any conceivable benefit" from a witness's testimony. Id. (first quoting United States v. Iribe-Perez, 129 F.3d 1167, 1173 (10th Cir. 1997)). Ms. Portillos has not explained how the single witness to invoke the Fifth Amendment would have helped her defense. Instead, she merely characterizes the witness's testimony as "critical" and states that the testimony "could have aided Portillos and allowed her to argue that she . . . was not part of the conspiracy." Aplt. Br. at 40, 42. This is not enough to plausibly show materiality, especially considering that the three other unindicted women were still available to testify, and Ms. Portillos called only one of them. Consequently, even if Ms. Portillos could show that the government interfered with her ability to call witnesses in her defense, she has failed to show prejudice from the interference. The district court did not err when it held that Ms. Portillos was not denied her due process right to a fair trial.

AFFIRMED.

                Entered for the Court


                Paul J. Kelly, Jr.
                Circuit Judge